# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON, a deceased minor,

                     *Plaintiff*,

     vs.

TIKTOK INC. AND BYTEDANCE, INC.,

                     *Defendants*.

Case No.: 2:22-cv-01849-PD

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Joseph E. O'Neil
Katherine A. Wang
**CAMPBELL CONROY & O'NEIL, P.C.**
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
Telephone: (610) 964-1900
Facsimile: (610) 964-1981

Geoffrey M. Drake (*Pro Hac Vice pending*)
TaCara D. Harris (*Pro Hac Vice pending*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Albert Giang (*Pro Hac Vice pending*)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Counsel for TikTok Inc. and ByteDance Inc.*

July 18, 2022

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT .........................................................................................................5

I.    Defendants Are Not Subject to Personal Jurisdiction in Pennsylvania. ...............................................................................................5

      A.    General Jurisdiction Does Not Exist Because Defendants Are Not "At Home" In Pennsylvania.................................................... 6

      B.    Specific Jurisdiction Does Not Exist Because Defendants Did Not Direct Relevant Activity To Pennsylvania In Connection With Plaintiff's Claims. ................................................................ 7

II.    Plaintiff's Claims Are Barred by Section 230 ...............................................11

III.    Plaintiff Cannot State Essential Elements of Any of Her Claims. ...............18

      A.    TikTok Is Not A "Product" Or A "Seller" For Strict Product Liability (Count I).......................................................................... 19

      B.    Plaintiff Does Not State a Negligence Claim Because She Does Not Sufficiently Allege A Duty Owed by Defendants (Count II). ............................. 21

      C.    Plaintiff is Not Entitled to Relief Under the UTPCPL (Count III) or the CLRA (Count IV). ........................................................... 23

      D.    Plaintiff Is Not Entitled To Relief For Wrongful Death (Count V) or Under Pennsylvania's Survival Act (Count VI). ................................................... 25

CONCLUSION ....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................18, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................18, 19

*Bilt–Rite Contractors, Inc. v. Architectural Studio*,
  866 A.2d 270 (Pa. 2005)........................................................................................21

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)........................................................................................6

*Boring v. Google, Inc.*,
  362 Fed. Appx. 273 (3d Cir. 2010)........................................................................21

*Boring v. Google, Inc.*,
  598 F. Supp. 2d 695 (W.D. Pa. 2009)........................................................21, 22

*Burger King Corp. v. Rudzewicz¸*
  471 U.S. 462¸ 475 ........................................................................................8

*Churchill Vill., L.L.C v. Gen. Elec. Co.*,
  169 F.Supp.2d 1119 (N.D. Cal. 2000)........................................................24

*City of Rome v. Glanton*,
  958 F. Supp. 1026 (E.D. Pa. 1997)........................................................23

*D'Jamoos, ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
  566 F.3d 94 (3d Cir. 2009) ........................................................................8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................................6, 7

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 835 (2006) ........................................................................24

*Day v. TikTok, Inc.*,
  No. 21 C 50129, 2022 WL 595745 (N.D. Ill. Feb. 28, 2022) ........................13

*Doe v. Facebook, Inc.*,
  No. 2019-16262 (151st Dist. Ct., Harris Cty., Tex. Oct. 4, 2019) ....................20

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ........................................................................17, 18

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021)................................................................16

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) .........................................................................24

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ....................................................................17, 22

*Dyroff v. Ultimate Software Grp., Inc.*,
  No. 17-cv-05359-LB, 2017 WL 5665670 (N.D. Cal. Nov. 26,
  2017) ...................................................................................................................22

*Est. of B.H. v. Netflix, Inc.*,
  2022 WL 551701 (N.D. Cal. Jan. 12, 2022)................................................20, 22

*Ferrington v. McAfee, Inc.*,
  2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .....................................................24

*Fields v. Twitter, Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th
  Cir. 2018) ......................................................................................................17, 18

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ...........................................................................16, 17

*Fragale v. Wells Fargo Bank*,
  480 F. Supp. 3d 653 (E.D. Pa. 2020)..................................................................21

*Grant St. Grp., Inc. v. D & T Ventures, LLC*,
  No. 10-CV-1095, 2012 WL 13689 (W.D. Pa. Jan. 4, 2012) ..............................10

*Green v. AOL*,
  318 F.3d 465 (3d Cir. 2003) ................................................................12, 14, 18

*Hepp v. Facebook*,
  14 F. 4th 204 (3d Cir. 2021) ................................................................................9

*Institutional Invs. Grp. V. Avava, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ..............................................................23

*James v. Meow Media, Inc.*,
  300 F.3d 683 (6th Cir. 2002) ............................................................20

*Kabbaj v. Google, Inc.*,
  592 Fed. Appx. 74 (3d Cir. 2015).......................................................2

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...........................................................23

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014)..........................................................15

*Kurz v. Holiday Hosp. Franchising, LLC*,
  No. 19-2129, 2019 WL 5068646 (E.D. Pa. Oct. 9, 2019)....................6

*Lewis v. Google, Inc.*,
  No. 20-1784, 2021 WL 211495 (W.D. Pa. Jan. 21, 2020) ..................14

*Lucas v. Lane*,
  No. CIV.A. 87-5346, 1987 WL 28352 (E.D. Pa. Dec. 16, 1987) ........7

*Marcum v. Columbia Gas Transmission, LLC*,
  No. 19-3873, 2019 WL 6217878 (E.D. Pa. Nov. 20, 2019)................23

*Metcalfe v. Renaissance Marine, Inc.*,
  566 F.3d 324 (3d Cir. 2009) ................................................................6

*O'Connor v. Sandy Lake*,
  496 Fed. 312 (3d Cir. 2007).................................................................7

*Obado v. Magedson*,
  612 Fed. Appx. 90 (3d Cir. 2015).............................................2, 11, 16

*Parker v. Paypal, Inc.*,
  No. 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017)................2

*Pathfinder Software, LLC v. Core Cashless, LLC*,
  127 F. Supp. 3d 531 (M.D.N.C. 2015) ...............................................10

*Rodgers v. Christie*,
  795 F. Appx. 878 (3d Cir. 2020) ...................................................................19, 20

*Rush v. Savchuk*,
  444 U.S. 320 (1980).........................................................................................8

*Snyder v. ISC Alloys, Ltd.*,
  772 F. Supp. 244 (W.D. Pa. 1991).................................................................19

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012)............................................................24

*Tincher v. Omega Flex, Inc.*,
  104 A.3d 328 (Pa. 2014).................................................................................19

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ..............................................................1, 5, 8, 10

*Tulewicz v. Se. Pa. Transp. Auth.*,
  606 A.2d 427 (Pa. 1992).................................................................................25

*Valentino v. Phila. Triathlon, LLC*,
  150 A.3d 483 (Pa. Super. 2016) .....................................................................25

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
  75 F.3d 147 (3d Cir. 1996) ...............................................................................6

*Walden v. Fiore*,
  571 U.S. 277 (2014).......................................................................................7, 9

*Winter v. Facebook, Inc.*,
  No. 21-CV-1046 JAR, 2021 WL 5446733 (E.D. Mo. Nov. 22,
  2021) ......................................................................................12, 13, 15, 22

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) ...................................................................20, 21

*Ziencik v. Snap, Inc.*,
  No. 21-49, 2021 WL 4076997 (W.D. Pa. Sept. 8, 2021) ...........................*passim*

**Statutes**

47 U.S.C. § 230 ......................................................................................*passim*

## INTRODUCTION

This lawsuit arises from the tragic death of Nylah Anderson, who died from self-strangulation after allegedly seeing a user video that encouraged participation in a "blackout challenge"—whereby participants choke themselves through various means until they pass out.  Compl. [Doc. No. 1] ¶¶ 1, 64, 86.  Defendants TikTok Inc. ("TTI") and ByteDance Inc. ("BDI") take these issues seriously and extend their deepest condolences to Nylah's family.  But a careful review of the Complaint makes clear that Plaintiff's legal theories—based on user-generated videos and content created by third parties that TikTok allegedly failed to remove—cannot be heard in this jurisdiction, are preempted by law, and fail to state a claim.[1]

*First*, this Court lacks personal jurisdiction over Defendants for these claims.  Neither Defendant is "at home" in Pennsylvania, nor have they taken any actions directed at Pennsylvania to "purposely avail" themselves of Pennsylvania law in connection with Plaintiff's Complaint.  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003); *Ziencik v. Snap, Inc.*, No. 21-49, 2021 WL 4076997, at *4 (W.D. Pa. Sept. 8, 2021).

*Second*, Section 230 of the federal Communications Decency Act ("CDA") bars Plaintiff's state-law claims.  For more than two decades, Congress has broadly

---

[1] Defendants generally deny all allegations in the Complaint and only accept them as true for purposes of this Motion to Dismiss.

immunized Internet-based platforms—including the TikTok platform—for liability that stems from content created and developed by third-party users.  47 U.S.C. § 230(e)(c); *e.g.*, *Obado v. Magedson*, 612 Fed. Appx. 90, 93 (3d Cir. 2015).  Here, Plaintiff's core theory is that Defendants employ an algorithm that "presents" or "recommends" user-generated content on For You Pages ("FYP")—including videos depicting dangerous activity such as choking or blacking out that "encourage" users to create, share, and/or participate in these "challenges."  Compl. ¶¶ 3, 62, 82, 83.  She faults Defendants for failing to provide safeguards "to prevent circulation of dangerous and deadly videos."  *Id*. ¶¶ 107, 127.  But those allegations are traceable to whether and how TikTok selects, presents, recommends, aggregates, or fails to monitor/remove user content—quintessential publisher functions that well-established law immunizes and protects.  Courts in this circuit routinely grant motions to dismiss suits alleging analogous claims as barred by Section 230.  *See, e.g.*, *Kabbaj v. Google, Inc.*, 592 Fed. Appx. 74 (3d Cir. 2015) (finding CDA barred plaintiff's claims against Google, Amazon, and Yahoo); *Obado*, 612 Fed. Appx. at 93 (affirming dismissal of Google, Yahoo, and other internet sites based on Section 230 immunity); *Parker v. Paypal, Inc.*, No. 16-4786, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) (same).

*Finally*, separate from Section 230 immunity, Plaintiff cannot state a claim for any of the individual causes of action in the Complaint because:

- TikTok is not a "product" or a "seller" subject to strict product liability (Count I);

- Defendants have no legal duty of care to protect against third-party depictions of dangerous activity that would give rise to a negligence claim (Count II);

- Defendants did not engage in any "unfair or deceptive" conduct—and Plaintiff does not otherwise state a claim—under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III) or the California Consumer Legal Remedies Act ("CLRA") (Count IV); and

- Plaintiff's derivative wrongful death (Count V) and survival (Count VI) claims—which both require the existence of an underlying tort—also fail and should be dismissed.

Because these legal defects cannot be cured by amendment, Plaintiff's claims should be dismissed with prejudice.

## BACKGROUND

TikTok is a video-sharing platform that millions of Americans use to create, share, and/or view short-form videos on their mobile devices. Compl. ¶ 50. As alleged by Plaintiff, TikTok uses an algorithm that is "a recommendation system that delivers content to each user that is likely to be of interest to that particular user," and provides an FYP that shows user videos recommended by the algorithm. *Id.* at ¶ 3. The TikTok platform is made available in the United States by TTI. Decl. ¶ 8 (Exhibit A). Although BDI is also named as a Defendant, the Complaint pleads no facts specific to BDI.

Plaintiff asserts that her daughter, Nylah, died after seeing a user video allegedly through her FYP that encouraged participation in a "blackout challenge"—whereby participants choke themselves through various means until they pass out.[2] *Id*. ¶¶ 1, 64, 84.  Plaintiff concedes that this "involve[s] *users* filming themselves engaging in behavior that mimics and often times 'one-ups' *other users* posting videos performing the same or similar conduct."  *Id*. at ¶ 61 (emphases added). Indeed, the Complaint includes a list of so-called "challenges"—all of which involve third-party participants and users who create and post content of themselves engaging in potentially dangerous activities.[3]  *Id*. at ¶ 63.  The Complaint does not (and cannot) allege that Defendants created or otherwise contributed content to these user-generated videos.

---

[2] Unintentional strangulation deaths of youth from participation in "choking games" date back to at least 1995, including online versions of blackout challenges on websites such as YouTube dating back to 2007 or earlier.  *See, e.g.*, The Centers for Disease Control and Prevention, *CDC Study Warns of Deaths Due to the "Choking Game"*, https://www.cdc.gov/mmwr/preview/mmwrhtml/mm5706a1.htm (last visited July 14, 2022); Linkletter, et al., *The Choking Game and YouTube: A Dangerous Combination*, 49 Clinical Pediatrics, 274 (2010),  https://publish.uwo.ca/~pakvis/LinkletterChokingGame.pdf (last visited July 18, 2022) (noting that choking game videos are "often viewed on the video-sharing Web site YouTube," but that "[t]he choking game is not new activity").

[3] The Complaint adds allegations about the general impact of "social media" on children's mental health and claim that such technology is designed "to addict users" (*see id.* ¶¶ 31-42, 107, 127, 142, 165), but does not allege that Nylah herself suffered from any mental health issues or that such issues somehow caused the act of strangulation allegedly after watching a specific user video. To the contrary, the Complaint states that "Nylah was an active, happy, healthy and incredibly intelligent child" (*id.* ¶ 12).

At bottom, Plaintiff seeks to hold Defendants liable for failing to remove third-party user content, such as videos depicting dangerous activity like choking or blacking out—*e.g.*, claiming that Defendants "took no and/or completely inadequate action to extinguish and prevent the spread of the Blackout Challenge"; "failed to change, update, and/or correct their algorithm to prevent it from presenting users, specifically children, with the dangerous and deadly Blackout Challenge"; and "fail[ed] to timely remove all dangerous and deadly videos." *Id.* ¶¶ 75-76, 127.  As detailed below, these claims are all barred by Section 230 and should be dismissed.

## ARGUMENT

### I.     Defendants Are Not Subject to Personal Jurisdiction in Pennsylvania.

While Nylah's death was a tragedy, settled law requires dismissal of this Complaint first and foremost because this Court lacks personal jurisdiction over Defendants in this action.  Both are out-of-state defendants, and none of the allegations plead that Defendants purposefully directed any activities to Pennsylvania or that the Complaint's allegations bear a strong relationship to Defendants' purposeful activities in the forum. *E.g., Toys "R" Us, Inc.*, 318 F.3d at 454; *Ziencik*, 2021 WL 4076997, at *4.

District courts generally have personal jurisdiction to the same extent as state courts in the same district.  *See* Fed. R. Civ. P. 4(k)(1)(A).  Pennsylvania's long-arm statute "coextends" with the Due Process Clause of the Fourteenth Amendment,

which allows for two forms of personal jurisdiction: general or specific. *See, e.g.*, *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). General jurisdiction is an exceptional form of jurisdiction that only applies to defendants "at home" in a given state, subject to any claims regardless of where they arose. Specific jurisdiction, on the other hand, focuses on the particular claims brought by Plaintiff and requires that the claims arise out of Defendants' contacts with the state where the suit is pending. Plaintiff bears the affirmative "burden of demonstrating the facts that establish personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-31 (3d Cir. 2009) (cleaned up).

### A. General Jurisdiction Does Not Exist Because Defendants Are Not "At Home" In Pennsylvania.

Defendants are not subject to general jurisdiction in Pennsylvania, which exists only "when [the corporation's] affiliations with the State are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business . . . ." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 137). General jurisdiction lies elsewhere only in "exceptional case[s]." *Kurz v. Holiday Hosp.*

*Franchising, LLC*, No. 19-2129, 2019 WL 5068646, at *3 (E.D. Pa. Oct. 9, 2019) (quoting *Daimler*, 571 U.S. at 139 n.19).

Here, TTI is a California corporation with its principal place of business in California. BDI is a Delaware corporation with its principal place of business in California. Neither is "at home" in Pennsylvania, and Plaintiff has pled no facts that would support general jurisdiction over either. Compl. ¶¶ 13, 17. A "mere conclusory allegation" about "systematic" contacts is plainly insufficient to establish an "exceptional case" of general jurisdiction. *See Lucas v. Lane*, No. CIV.A. 87-5346, 1987 WL 28352, at *3 (E.D. Pa. Dec. 16, 1987).

**B.   Specific Jurisdiction Does Not Exist Because Defendants Did Not Direct Relevant Activity To Pennsylvania In Connection With Plaintiff's Claims.**

Nor are Defendants subject to specific jurisdiction for Plaintiff's claims. Specific jurisdiction requires "an affiliation between the forum and the underlying controversy"—a nexus that must be based only "out of contacts that the '*defendant* himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 & n.6 (2014) (cleaned up). And "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. That requires Plaintiff to show that (1) each Defendant "purposefully availed" itself of the forum, (2) the claims arise out of or relate to those activities, and (3) exercising personal jurisdiction is reasonable. *O'Connor v. Sandy Lake*, 496 F.3d 312, 317 (3d Cir.

2007); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (factor "must be met as to each defendant").

The gravamen of Plaintiff's claims is based on *third-party users'* actions:  the Complaint alleges that Nylah downloaded the TikTok app on her smartphone, created her user profile, and accessed content on the app in Pennsylvania.  Compl. ¶¶ 23-27.  But the Complaint does not allege any active participation by Defendants in connection with Nylah's actions, or any other conduct by Defendants directed at Pennsylvania related to the allegations in the Complaint.  Indeed, Plaintiff does not even allege any contacts between BDI and Pennsylvania whatsoever.

Allegations about a plaintiff or other third party—such as Nylah's activity in Pennsylvania—cannot establish that *Defendants* "purposefully directed [their] activities" towards Pennsylvania.  *D'Jamoos*, *ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009).  The Complaint itself asserts that "millions" of users in the United States and "billions" throughout the world have downloaded and used the TikTok app, Compl. ¶¶ 43-44; Decl. ¶¶ 9-10, where *users* choose where they download, access, or use an app.  Unilateral user decisions do not equate to purposeful availment in Pennsylvania (or elsewhere), or otherwise would create impermissibly limitless jurisdiction.  *See, e.g.*, *Burger King Corp. v. Rudzewicz*¸ 471 U.S. 462¸ 475 (defendant cannot be "haled into a jurisdiction" by the "unilateral activity" of others); *Toys "R" Us*, 318 F.3d at 454 ("mere operation

8

of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.").  There are no allegations about purposeful contacts that *Defendants* affirmatively created with Pennsylvania.  *See Walden*, 571 U.S. at 289 (specific jurisdiction "must arise out of contacts that the '*defendant* himself' creates with the forum State").

Nor does the Complaint establish the second requirement of relatedness, which requires pled facts establishing "*a strong 'relationship* among the defendant, the forum, and the litigation,'" sufficient to show that any contacts arise out of or relate to her claim.  *Hepp v. Facebook*, 14 F. 4th 204, 208 (3d Cir. 2021) (emphasis added).  In fact, Plaintiff pleads no facts about Nylah's circumstances that relate to Defendants' purposeful contacts, let alone facts sufficient to establish a "strong relationship."   Nor is the location of the injury sufficient to establish this jurisdictional nexus, where "Defendant[s] did not expressly aim its tortious conduct at the forum state."  *Zeincik*, 2021 WL 4076997, at *4.  To the contrary, Plaintiff alleges that videos showing various dangerous "challenges" are filmed and/or viewed by users worldwide, Compl. ¶¶ 43, 61, 63—even alleging that users as far as Oklahoma, Australia, and Italy viewed and/or participated in blackout challenge videos.  *Id.*  ¶¶ 67-70.  While such allegations do not qualify under the first requirement as *Defendants'* purposeful availment, they *do* preclude any suggestion under the second requirement that relevant conduct was targeted at and created a

strong relationship to Pennsylvania.   *See Zeincik*, 2021 WL 4076997, at *4 (declining specific jurisdiction despite more allegations of contacts, where alleged tortious conduct "could have occurred in any state").

As for the third requirement of reasonableness, both the Third Circuit and other district courts have rejected similar attempts to exercise sweeping personal jurisdiction over nonresident web-based companies.   The Third Circuit has explained that the "mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc.*, 318 F.3d at 454; *see also e.g., Grant St. Grp., Inc. v. D & T Ventures, LLC*, No. 10-CV-1095, 2012 WL 13689, at *6-7 (W.D. Pa. Jan. 4, 2012) ("The mere fact that [defendant] may have provided a 'highly interactive' tax portal website or interactive websites … does not automatically confer personal jurisdiction.").   This is consistent with other courts that similarly have held that mere accessibility of a website or app is not enough to demonstrate purposeful availment of the forum State's laws by the operator. *See, e.g.*, *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 543 (M.D.N.C. 2015) ("The fact that North Carolina residents can download the [WhatsApp] application does not" give rise to jurisdiction over the company "as the application is available to [] smartphone and tablet users all over the world").

The Western District of Pennsylvania recently addressed this very issue in *Ziencik v. Snap, Inc*. There, the court found it lacked personal jurisdiction over Snap,

10

a communications platform, because, among other things: (i) Snap did not have any officers or a registered agent in Pennsylvania, and it was headquartered in California; (ii) Snap's only contact with plaintiffs was initiated by plaintiffs; and (iii) Snap did no more "than exist as an application that people can download while located in Pennsylvania." 2021 WL 4076997, at *4.  Just as in *Ziencik*, Defendants do not have any offices or registered agents in Pennsylvania and are headquartered in California. Decl. ¶¶ 3-4, 6.  Defendants operate and administer the TikTok platform outside of Pennsylvania and do not maintain any servers in Pennsylvania.  Decl. ¶¶ 6, 8.  And Plaintiff's allegations make clear that Nylah initiated contact with TikTok and, otherwise, the TikTok platform merely exists as an application that people can download throughout the world (not just Pennsylvania).  Compl. ¶¶ 23-27, 43. Because the Court lacks personal jurisdiction over Defendants, it should dismiss.

## II.     Plaintiff's Claims Are Barred by Section 230

If this Court does not dismiss for lack of personal jurisdiction, it should still dismiss as a matter of law.  Plaintiff's claims—all of which relate to whether and how TikTok presented, recommended, or failed to remove user content—are barred by Section 230 of the CDA.  *See, e.g.*, *Obado*, 612 Fed. Appx. at 93 (dismissal under Rule 12(b)(6) for Section 230 immunity).  Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."   47 U.S.C.

§ 230(c)(1).  The statute adds preemptive bite to this prohibition, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).

"The majority of federal circuits, including the [Third] Circuit, have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Winter v. Facebook, Inc.*, No. 21-CV-1046 JAR, 2021 WL 5446733, at *3 (E.D. Mo. Nov. 22, 2021) (cleaned up) (citing cases, including *Green v. AOL*, and dismissing claims that TikTok was "liable for not removing the content/accounts posted/held by" users).  That broad immunity bars a wide range of theories traceable to "publisher" acts and omissions, such as "deciding whether to publish, withdraw, postpone, or alter content."  *Green v. AOL*, 318 F.3d 465, 471 (3d Cir. 2003).  Here, the requirements for Section 230 immunity are met because: (1) TikTok is the "provider or user of an interactive computer service"; (2) it allegedly published "information provided by another information content provider"; and (3) the Complaint seeks to "treat[]" TikTok "as the publisher or speaker" of that third-party content.  47 U.S.C. § 230(c)(1).

***TikTok Is an Interactive Computer Service Provider.***  There is no reasonable dispute that TikTok is a "provider . . . of an interactive computer service," as confirmed in other federal decisions.  47 U.S.C. § 230(c)(1); *see Winter*, 2021 WL

5446733, at *4 ("TikTok [is an] 'interactive computer service.'"); *Day v. TikTok, Inc.*, No. 21 C 50129, 2022 WL 595745, at *1 (N.D. Ill. Feb. 28, 2022) (TikTok immune under § 230). Here, the Complaint alleges that "TikTok is a video sharing social media app" that operates through the internet, thereby establishing this element. Compl. ¶ 50.[4]

***Plaintiff's Claims Arise from Third-Party Content.*** Plaintiff's claims fundamentally relate to content provided by another content provider—the third-party users who "create, share, and view" content on the TikTok platform, including any videos "challenging" other users or depicting dangerous user activities. *See id*. ("TikTok is a[n] . . . app . . . which allows and encourages *users* to create, share and view short video clips" (emphasis added)); *id.* ¶ 61 (alleging challenges involve "users filming themselves" and "often times 'one-up[ping]' other users posting videos performing the same or similar conduct"). Although Plaintiff attempts to label these disparate user videos as "the TikTok Blackout Challenge," Plaintiff does not allege that TikTok created or developed any of this content (because it did not) and, in fact, any such suggestion would be belied by Plaintiff's other allegations that third-party users create such video content.

---

[4] The Complaint does not include any factual allegations specific to BDI. To the extent Plaintiff seeks to hold BDI responsible for owning or operating the TikTok platform, BDI also qualifies as the "provider" of TikTok's interactive computer service, 47 U.S.C. § 230(c)(1).

In fact, nowhere does Plaintiff allege that TikTok provided, created, or developed any relevant content that Nylah may have viewed from other users or attempted to film herself.  Even generic references to "addiction" to various forms of "social media"—none of which link to Nylah's particular circumstances or death—are still inextricably intertwined with content supplied by users, who are other "information content providers" under Section 230.[5]  A website does not create or develop content "when it merely provides a neutral means by which third parties can post information of their own independent choosing online."  *Lewis v. Google, Inc.*, No. 20-1784, 2021 WL 211495, at *2 (W.D. Pa. Jan. 21, 2020) (cleaned up).

**Plaintiff's Claims Treat Defendants as Publishers**.  In promulgating Section 230, Congress enacted a policy "not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing obscene or defamatory material written or prepared by others."  *Id*. (citation omitted). "Publisher" activity protected by Section 230 includes everything from "deciding whether to publish, withdraw, postpone or alter content."  *Green*, 318 F.3d at 471;

---

[5] The policy rationale behind broad CDA immunity is that countless websites and platforms permit third-party users to post content, and Plaintiff does not—and cannot—allege that TikTok is the only website or platform where third parties have posted, or can post, user-generated content about choking or blackout challenges. *See, e.g.*, Background, p. 4 n.1 *supra*; Chan, *Kids Are Playing the 'Choking Game' to Get High. Instead, They're Dying*, TIME (Mar. 12, 2018), https://time.com/5189584/choking-game-pass-out-challenge/ (discussing evolution of the choking game from "spread through word of mouth" to online spread on YouTube and Facebook).

*see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("[T]he very essence of publishing is making the decision whether to print or retract.").

All of Plaintiff's theories against TikTok are based on functions performed as a "publisher" of third-party content. From the start, the Complaint repeatedly asserts—often using euphemisms such as "push," "show," "promote," "algorithm," or "recommend"—that TikTok selects, presents, and recommends material to users.[6] Those are quintessential functions of a publisher. So too is Plaintiff's corollary theory that TikTok failed to remove harmful content, including videos depicting dangerous user conduct. Compl. ¶ 127; *Winter*, 2021 WL 5446733, at *6 (dismissing claims that "TikTok wrongfully refused to remove content/accounts").

Each of Plaintiff's state-law causes of actions thus inherently requires the court to treat TikTok as the "publisher or speaker" of content provided by another. 47 U.S.C. § 230(c)(1). Counts I through IV are all premised on Plaintiff's theory that TikTok's app and algorithm "determine[] the videos and content that each user" sees; "recommend[] inappropriate, dangerous, and deadly videos"; fail to "prevent circulation of dangerous and deadly videos"; and "promote[] the circulation of dangerous and deadly videos and challenges." Compl. ¶¶ 102, 107; *see also id.*

---

[6] *E.g.*, Compl. ¶ 56 ("show users videos and content"); ¶ 66 ("promote the dissemination of the deadly Blackout Challenge"); ¶ 67 ("app and algorithm recommended the Blackout Challenge"); ¶ 81 ("pushed exceedingly and unacceptably dangerous challenges and videos").

¶¶ 127, 142, 165.[7]  These are simply variations on TikTok's publisher functions. Applying well-established CDA principles, courts have repeatedly dismissed similar claims as barred by Section 230 based on a platform's use of algorithms to promote content.  *See*, *e.g.*, *Obado*, 612 Fed. Appx. at 94 (3d Cir. 2015) ("allegation that the defendants manipulated search engines to maximize search results relating to the alleged defamatory content does not affect their immunity from suit"); *Force v. Facebook, Inc.*, 934 F.3d 53, 66-67 (2d Cir. 2019) (holding that Facebook's use of algorithms did not "render[] it a non-publisher," including because "arranging and distributing third-party information inherently forms 'connections' and 'matches' among speakers, content, and viewers of content").

Likewise, Counts I through IV also include "design" allegations that boil down to claims that TikTok designed the platform to encourage users to view more third-party content, including dangerous "challenges."[8]  But when "the nature of the alleged design flaw in this case—and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content," Section 230 bars the claim.  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021) (CDA bars

---

[7] Counts V and VI are derivative of the other Counts in the Complaint.

[8] *See, e.g.*, Compl. ¶ 107 (platform and algorithm are "intended to addict users and manipulate them into participating in dangerous and deadly challenges"); ¶ 127 ("[i]ntentionally addicting users to the TikTok app"); ¶ 142 ("Defendants' products were designed and intended to addict users"); ¶ 165 ("Defendants' products carried a risk of addiction and dependence").

claim premised on failure to design platform to prevent and remove harmful third-party content); *see also, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008) (dismissing case "predicated solely on MySpace's failure to implement basic safety measures to protect minors").

    ***Plaintiff's Nominal Effort to Disavow Section 230 Lacks Merit***.  Plaintiff cannot avoid Section 230 by invoking algorithmic recommendations of third-party content via the FYP.  Compl. ¶¶ 3-5, 107, 127, 132.  App "recommendations" are "not content in and of themselves" but are "tools meant to facilitate the communication and content of others."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019).  And algorithms reflect TikTok's choice to "automate [its] editorial decision-making"—and are themselves protected publisher functions.  *Force*, 934 F.3d at 67.  "By recommending" content to users, including through "algorithms," online platforms are "acting as a publisher of others' content."  *Dyroff*, 934 F.3d at 1098.  Even the allegation that TikTok "promoted" certain content cannot escape Section 230, which specifically protects "'features that are part and parcel of the overall design and operation of the website'" with respect to publishing—whether characterized as rewards, recommendations, or any other features that Plaintiff alleges.  *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018).

Section 230 also bars Plaintiff's theories based on TikTok's alleged "failure to provide adequate warnings"—including Plaintiff's claims about inadequate parental controls and inadequate monitoring.  Compl. ¶¶ 107, 119-120, 127.  Many courts have rejected similar allegations that would require a platform to post a warning about third-party content or implement age verification, reasoning it is a form of editing that implicates Section 230's protections.  *See Green*, 318 F.3d at 472 ("Section 230(c)(2) … allows AOL to establish standards of decency without risking liability for doing so."); *Myspace*, 528 F.3d at 419–22 (dismissing allegations of inadequate safety features, including age verification to prevent a minor from communicating with adults, which were "directed towards … publishing, editorial, and/or screening capacities"); *Fields*, 217 F. Supp. 3d at 1126 (failure to warn theory barred where it required defendant to "monitor[] and "police" individual accounts).

## III.  Plaintiff Cannot State Essential Elements of Any of Her Claims.

Even if Plaintiff could somehow evade the broad threshold immunity provided by the CDA, the Complaint fails to plead any cognizable claims.  To survive a motion to dismiss under Federal Rule of Civil Procedure 8(a), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).  Here, Plaintiff does not and cannot plead facts sufficient to support any of the causes of action, which requires dismissal with prejudice of the entire Complaint.

> ### A.      TikTok Is Not A "Product" Or A "Seller" For Strict Product Liability (Count I).

The TikTok platform and other digital apps are intangible programs that display content.  TikTok is not a "product" or a "seller" that can be liable for strict product liability.  Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts, which imposes liability on "[o]ne who *sells* any *product* in a defective condition unreasonably dangerous to the user or consumer or to his property."  Restatement (Second) of Torts § 402A(1) (1965); *see Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014) (strict liability requires "a seller (manufacturer or distributor) placed on the market a product in a defective condition") (internal quotation marks omitted).  Courts have uniformly interpreted "product" under Section 402A to mean "finished items with a *tangible* form," excluding ideas, services, or other intangible items from the definition.  *Snyder v. ISC Alloys, Ltd.*, 772 F. Supp. 244, 251 (W.D. Pa. 1991); *see also Rodgers v. Christie*, 795 F. Appx. 878, 880 (3d Cir. 2020) (similar limitation under New Jersey law).  These limitations exist "both as a definitional matter and because extending strict liability to the distribution of ideas would raise serious First Amendment concerns."  *Rodgers*, 795 F. App'x at 880.

Applying these principles, courts have held consistently that video games, books, other apps, and other video streaming services are not "products" subject to strict product liability. The Third Circuit recently held that an "algorithm," as with other "information, guidance, ideas, and recommendations," is not a "product" subject to strict product liability. *Rodgers*, 795 F. Appx. at 880. Other courts have held that Instagram, Netflix, and video games are also not "products." *See, e.g.*, *Doe v. Facebook, Inc.*, No. 2019-16262 (151st Dist. Ct., Harris Cty., Tex. Oct. 4, 2019) (Instagram is "not a product" under Texas law adopting Restatement (Second) of Torts); *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (rejecting strict-product liability claims against Netflix); *James v. Meow Media, Inc.*, 300 F.3d 683, 700–01 (6th Cir. 2002) ("video games, movies, and internet sites" are not "products").

For example, like the claims against Netflix in *Estate of B.H.*, Plaintiff's suit "is premised on the content and dissemination" of video content. If a video service and a video game are not "products," neither is a short-form video platform like TikTok. The policy considerations that motivated those courts to cabin the definition of "products" similarly apply here. Unlike a faulty car or power tool, there is nothing inherently physically harmful about an intangible app. Moreover, strict product liability law "do[es] not take into consideration the unique characteristics of ideas and expressions." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th

Cir. 1991).  The "transmission of words is not the same as selling items with physical properties," yet imposing strict liability on content "could seriously inhibit those who wish to share thoughts and theories."  *Id.* at 1035, 1036 n.6.

### B.   Plaintiff Does Not State a Negligence Claim Because She Does Not Sufficiently Allege A Duty Owed by Defendants (Count II).

Plaintiff fails to state a claim for negligence because she pleads no facts to establish a cognizable duty of care—an essential element of negligence that can be decided as a matter of law.  *Fragale v. Wells Fargo Bank*, 480 F. Supp. 3d 653, 660-61 (E.D. Pa. 2020) (granting motion to dismiss negligence claim for lack of duty).  "Simply stating that there is or ought to be a duty is not enough; the duty alleged must be one recognized by law."  *Boring v. Google, Inc.*, 598 F. Supp. 2d 695 (W.D. Pa. 2009) (dismissing negligence claim for lack of duty) (reversed in part on other grounds in *Boring v. Google, Inc.*, 362 Fed. Appx. 273 (3d Cir. 2010); *see also Bilt–Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 280 (Pa. 2005) (declaring it "well established that 'a cause of action in negligence requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to the damages suffered by the complainant'") (citation omitted).

Plaintiff makes bare assertions that Defendants have duties to take certain actions—for example, to operate the app and algorithm so as not to "expose users to harm, injury, and/or death"; "to monitor the videos and challenges shared"; and "to protect vulnerable users."  Compl. ¶¶ 118, 119, 122.  But websites do not owe a legal

duty to users to modify content. *See, e.g.*, *Boring*, 598 F. Supp. at 695 (allegations insufficient to state a negligence claim where Plaintiff generally alleged that internet search engine "has a duty of care to the public to utilize proper internal controls" and "has a duty to utilize proper methods and controls"); *Dyroff*, 934 F.3d at 1101 (websites do not owe a legal duty to users when they "facilitate[] communication, in a content-neutral fashion, of [their] users' content"). Nor do websites owe a legal duty to users to prevent self-harm. *See Est. of B.H.*, 2022 WL 551701, at *3-4.

Plaintiff provides no explanation (because there is none) for how the nature of the relationship between Plaintiff and Defendants should give rise to a duty of care or how the public interest would be served by imposing such a sweeping duty, particularly when Congress has immunized platforms from taking on such obligations or failing to prevent harms relating to third-party content. *See Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 WL 5665670, at *14 (N.D. Cal. Nov. 26, 2017) (collecting authority "that a website has no 'special relationship' with its users"); *Winter*, 2021 WL 5446733, at *6 (rejecting duty of care and dismissing claim that TikTok was negligent by failing to prevent cyberbullying because "[S]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit").

**C.      Plaintiff is Not Entitled to Relief Under the UTPCPL (Count III) or the CLRA (Count IV).**

Plaintiff fails to adequately state a violation under section 201 of the UTPCPL or section 1750 of the CLRA.   In fact, Plaintiff pleads *no* facts to show that Defendants engaged in "unfair or deceptive acts" under either statute, much less facts that meet the heightened specificity required by Rule 9(b) for claims sounding in fraud.   *See* Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake"); *Marcum v. Columbia Gas Transmission, LLC*, No. 19-3873, 2019 WL 6217878, at *2 (E.D. Pa. Nov. 20, 2019) (applying Rule 9(b) standard to UTPCPL claim of fraudulent concealment); *Institutional Invs. Grp. V. Avava, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (a plaintiff "must plead the who, what, when, where, and how" of a UTPCPL claim based in fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) particularity requirements apply to CLRA claims). The Complaint identifies zero fraudulent statements by TikTok, let alone specifying the "who, what, when, where, and how" of an alleged fraud.   *Id*. at 1124.

Further, Plaintiff makes the conclusory claim that TikTok "concealed, suppressed, or omitted" certain information related to the TikTok app and algorithm, Compl. ¶¶ 142, 165, but pleads no facts that Plaintiff [or Nylah] justifiably relied on any alleged statement or omission by TikTok.   *See City of Rome v. Glanton*, 958 F. Supp. 1026, 1038–39 (E.D. Pa. 1997) (noting a "duty to speak" under the UTPCPL

arises only in limited circumstances where "one party is the only source of information to the other party, or the problems are not discoverable by other reasonable means); *Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 835 (2006) ("to be actionable," fraudulent omission claim under the CLRA "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) (affirming dismissal of CLRA claim where plaintiff did not allege he relied on any representation).

The CLRA claim is also doomed because: (1) the requirements for a "sale" of "goods" do not apply to the free download/usage of an intangible app, *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) ("CLRA's express limitation of goods to 'tangible chattels' must be given meaning, [and] exclude[s] software from the Act's coverage."); (2) Plaintiff lacks standing for "lost money or profits" under the CLRA, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (dismissing CLRA claim where plaintiffs "received the PSN services free of cost"); and (3) Plaintiff does not explain why the CLRA extends to Nylah's usage in Pennsylvania (Compl. ¶¶ 23-27), *Churchill Vill., L.L.C v. Gen. Elec. Co.*, 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000) ("California law embodies a presumption against the extraterritorial application of its statutes.").  The UTPCPL and CLRA claims should be dismissed.

**D.    Plaintiff Is Not Entitled To Relief For Wrongful Death (Count V) or Under Pennsylvania's Survival Act (Count VI).**

Given the defective claims above, Plaintiff's derivative claims for wrongful death and survival—which both require the existence of an underlying tort—also fail and should be dismissed. *See Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483, 493 (Pa. Super. 2016) ("Pennsylvania case law has long held that a wrongful death claimant's substantive right to recover is derivative of and dependent upon a tortious act that resulted in the decedent's death"); *Tulewicz v. Se. Pa. Transp. Auth.*, 606 A.2d 427, 431 (Pa. 1992) ("A survival action … 'merely continues in [the decedent's] personal representatives the right of action which accrued to the deceased at common law because of the tort'") (cleaned up).

## CONCLUSION

TikTok and ByteDance respectfully request that the Complaint be dismissed.

Dated: July 18, 2022                    Respectfully submitted,

                                        */s/ Joseph E. O'Neil*_____
                                        Joseph E. O'Neil
                                        Katherine A. Wang
                                        Albert Giang (*Pro Hac Vice pending*)
                                        Geoffrey Drake (*Pro Hac Vice pending*)
                                        TaCara Harris (*Pro Hac Vice pending*)

                                        *Counsel for TikTok Inc. and ByteDance Inc.*