## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON, a deceased minor** | |
| *Plaintiff,* | **No. 2:22-cv-01849-PD** |
| **v.** | |
| **TIKTOK, INC. AND BYTEDANCE, INC.** | |
| *Defendants*. | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS</u>

Robert J. Mongeluzzi
Jeffrey P. Goodman
Samuel B. Dordick
Rayna McCarthy
**SALTZ MONGELUZZI & BENDESKY, P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 496-8282
rjmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com
rmccarthy@smbb.com

Mark A. DiCello
**DICELLO LEVITT GUTZLER LLC**
Western Reserve Law Building
7556 Mentor Avenue
Mentor, Ohio 44060
Tel.: (440) 953-8888
madicello@dicellolevitt.com

Dated: August 1, 2022

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ....................................................................................... 1

ARGUMENT ...............................................................................................2

    I.     Defendants Are Subject to Specific Personal Jurisdiction in
          Pennsylvania.................................................................................. 2

    II.    Plaintiff's Claims Are Not Barred by the CDA .......................... 9

          A.   Plaintiff Does Not Treat Defendants as Publishers or Speakers ...... 10

          B.   Defendants' Case Law is Readily Distinguishable ......................... 15

    III.   Plaintiff Has Adequately Stated Claims For Relief .................................. 18

          A.   Legal Standard ................................................................... 18

          B.   The TikTok App and Algorithm Are "Products" ............................. 19

          C.   Defendants Owed Nylah Anderson a Duty ...................................... 24

CONCLUSION ...........................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Schwartz v. Abex Corp.*,
106 F.Supp.3d 626 (E.D. Pa. 2015)................................................................25

*Aetna Cas. & Sur. Co. v. Duncan*,
972 F.2d 523 (3d Cir. 1992) ...........................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................19

*Estate of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022).................................................23

*Barker v. Lull Engineering Co.*,
573 P.2d 443 (Ca. 1978) ................................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)......................................................................................3, 4

*ByteDance Inc. and TikTok Inc. v. Triller, Inc.*,
United States District Court for the Northern District of California,
Case No. 3:20-cv-7572 ...................................................................................21

*In re Craftmatic Sec. Litig.*,
890 F.2d 628 (3d Cir. 1989) ...........................................................................4

*Dauphin Deposit Bank and Trust Co. v. Toyota Motor Corp.*,
596 A.2d 845 (Pa. Super. 1991) .....................................................................25

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ..................................................................*passim*

*Doe v. Twitter, Inc.*,
555 F. Supp. 3d 889 (N.D. Cal. 2021)............................................................16

*Dryoff v. Ultimate Software Group, Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ......................................................................17, 18

*Erie Ins. Co. v. Amazon.com, Inc.*,
   925 F.3d 135 (4th Cir. 2019) ...................................................................................14

*Est. of Alex through Coker v. T-Mobile US, Inc.*,
   313 F.Supp.3d 723 (N.D. Tex. 2018) .....................................................................21

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th
   Cir. 2018) ...............................................................................................................16

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ..............................................................................15, 16

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
   141 S.Ct. 1017 (2021) ...................................................................................*passim*

*Green v. AOL*,
   318 F.3d 465 (3d Cir. 2003) ....................................................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984).................................................................................................3

*Holbrook v. Prodomax Automation Ltd.*,
   2021 WL 4260622 (W.D. Mich. Sept. 20, 2021) ...................................................22

*Inman v. Technicolor USA, Inc.*,
   2011 WL 5829024 (W.D. Pa. Nov. 18, 2011)..................................................18, 19

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945).................................................................................................3

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*,
   65 Fed. App'x 803 (3d Cir. 2003) ...........................................................................4

*Kabbaj v. Google Inc.*,
   592 Fed. App'x. 74 (3d Cir. 2015) ..........................................................................15

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) .......................................................................*passim*

*Maynard v. Snapchat, Inc.*,
    870 S.E.2d 739 (Ga. 2022) ...................................22

*O'Connor v. Sandy Lake*,
    496 F.3d 312 (3d Cir. 2007) ...........................3, 6

*Obado v. Magedson*,
    612 Fed. App'x. 90 (3d Cir. 2015) .......................15

*Parker v. Paypal, Inc.*,
    2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ..................15

*Phillips v. Cricket-Lighters*,
    841 A.2d 1000 (Pa. 2003) ...................................25

*Rodgers v. Christie*,
    795 Fed. App'x. 878 (3d Cir. 2020) ......................23, 24

*Snyder v. ISC Alloys, Ltd.*,
    772 F.Supp. 244 (W.D. Pa. 1991) ...........................22

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984) ...............................3

*Tincher v. Omega Flex, Inc.*,
    104 A.3d 328 (Pa. 2014) ..............................*passim*

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ...........................7, 8, 9

*Winter v. Facebook, Inc.*,
    2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) ..................15

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1989) ...........................23

*Ziencik v. Snap, Inc.*,
    2021 WL 4076997 (W.D. Pa. Sept. 8, 2021) ..................8, 9

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F.Supp. 1119 (W.D. Pa. 1997) .......................7, 8

**Statutes**

18 U.S.C. § 2333 ...................................................................................15

47 U.S.C. § 230(c)(1) ..........................................................................9, 10

CDA ............................................................................................*passim*

47 U.S.C. § 230(e)(c) .........................................................................2, 9, 10

**Other Authorities**

Federal Rule 8(a)(2) ..............................................................................18

Restatement of Torts ...............................................................................19

Restatement (Second) of Torts § 388...................................................25

## **INTRODUCTION**

On December 7, 2021, 10-year-old Nylah Anderson was asphyxiated when she attempted to perform a viral TikTok challenge known as the "Blackout Challenge" which encouraged Nylah to choke herself until passing out.  Compl. [D.E. 1] ¶ 1.  Nylah suffered in the pediatric intensive care unit and eventually succumbed to her injuries and died on December 12, 2021.  *Id.* ¶ 2.  Defendants, TikTok, Inc. and ByteDance, Inc. (collectively "Defendants") sent the dangerous Blackout Challenge directly to 10-year-old Nylah through her For You Page ("FYP") on the TikTok app.  *Id.* ¶ 3.  Defendants' app utilizes an algorithm, which acts as a "system that delivers content to each user that is likely to be of interest to that particular user" and "each person's feed [also known as the FYP] is unique and tailored to that specific individual."  *Id.* ¶ 3.  This algorithm then places content on the users FYP so that it is immediately seen by the user.  The TikTok algorithm thus (1) determined that the dangerous and deadly Blackout Challenge was likely to be of interest to 10-year-old Nylah Anderson, and (2) sent her the challenge by directly putting it on her FYP.  *Id.* ¶ 4.

On May 12, 2022, Plaintiff filed suit against Defendants.  *See generally* Compl.  Plaintiff's Complaint is crystal clear: Defendants' liability in this matter is based on their own independent conduct as designers, manufacturers, sellers and/or distributors of their dangerously defective products—TikTok and its algorithm—

and their own independent acts of negligence.  *See, e.g. Id.* ¶¶ 7, 104, 126.  Despite this, Defendants attempt to rewrite Plaintiff's Complaint as seeking to hold Defendants liable for the content created by third-parties.  *See* Def. Mem. [D.E. 12-1] p. 8 (arguing that "[t]he gravamen of Plaintiff's claims is based on *third-party users'* actions").  Plaintiff does no such thing and Defendants' attempts are a transparent effort to shoehorn this case into the immunity provisions of Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(e)(c).  The CDA is entirely inapplicable to Plaintiff's claims against Defendants.

In addition to the demonstrably incorrect argument that they are immune under Section 230 of the CDA, Defendants' motion also challenges this Court's personal jurisdiction, argues that TikTok and its algorithm are not "products" subject to strict product liability, and that Defendants owed no duty to Nylah Anderson. Defendants are wrong on all fronts, and their motion to dismiss should be denied.

## **ARGUMENT**

### I.    **Defendants Are Subject to Specific Personal Jurisdiction in Pennsylvania.**

This Court has specific personal jurisdiction over Defendants TikTok, Inc. and ByteDance, Inc. because (1) they purposefully directed their activities to Pennsylvania, and specifically to Nylah Anderson, (2) Plaintiffs' claims arise out of and/or relate to these purposeful and targeted activities, and (3) assertion of personal jurisdiction comports with fair play and substantial justice.  *E.g., Ford Motor Co. v.*

*Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1024 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Due Process clause requires defendants be given "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign[.]" *Burger King*, 471 U.S. at 471-72 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). This "fair warning" requirement is satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum…and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (citation omitted); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "The contacts needed for [specific] jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co.*, 141 S.Ct. at 1024 (citing *Burger King Corp.*, 471 U.S. at 475). The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Id.* (citations omitted).

The Third Circuit requires Plaintiff show: (1) Defendants "purposefully availed" themselves of Pennsylvania; (2) the claims arise out of or relate to those activities; and (3) exercising personal jurisdiction is reasonable. *O'Connor v. Sandy Lake*, 496 F.3d 312, 317 (3d Cir. 2007). A court may look to facts beyond the complaint in deciding whether a plaintiff has established personal jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984).

There is no question that Defendants[1] purposefully availed themselves of Pennsylvania.  Nylah and her mobile device through which she used TikTok were located in Chester, Pennsylvania.  Compl. ¶¶ 8, 9.  The moment TikTok was downloaded, Defendants reached into Pennsylvania and entered into a contract[2] with Nylah Anderson concerning her use of Defendants' "Platform" and "related websites, services, applications, *products* and content[.]"  *See* **Exhibit A**, TikTok

---

[1] Defendants incorrectly assert that "Plaintiff does not even allege any contacts between [Defendant ByteDance, Inc.] and Pennsylvania whatsoever.  However, the Complaint is clear on the very first page that the use of the term "TikTok Defendants" throughout the Complaint refers collectively to both TikTok, Inc. and ByteDance, Inc.  Compl. p. 1.  This case is in the pleadings stage, and Plaintiff does not have personal knowledge of the division in responsibility and ownership of the product at issue—the TikTok app and its algorithm—between TikTok, Inc. and ByteDance, Inc, and the law does not require this.  *See In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989) ("[P]laintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs [at the pleading stage].").

Plaintiff also alleged that Defendant ByteDance, Inc. "was acting by and through its…agents" and that ByteDance, Inc. "through their agents" are both strictly liable and negligent.  Compl. ¶¶ 20, 105, 107, 109, 127, 129.  One such agent through which ByteDance, Inc. was acting is its subsidiary, Defendant TikTok, Inc.  *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x 803, 808 (3d Cir. 2003) (holding that an "agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside the limited agency setting.").  Plaintiff "is not required to have extensive proof at the complaint stage" of such an agency relationship between ByteDance, Inc. and TikTok, Inc.  *Id.*

[2] Under Pennsylvania law, "[c]ontracts of a minor, other than contracts for necessities, are voidable by the minor, not void[]" and "a minor can render a contract a nullity by disaffirming it at any point up until a reasonable time after the minor attains his or her majority."  *Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992) (citations omitted).  Although the enforceability of this contract is suspect and likely to be litigated in this action, for jurisdictional purposes its existence cannot be ignored.  The Supreme Court has emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.  *Burger King*, 471 U.S. at 473.

Terms of Service, ¶ 1 (emphasis added).  The Terms of Service expressly incorporate the Privacy Policy.  *Id.* ¶ 2; *see also* **Exhibit B**, TikTok Privacy Policy.

The Privacy Policy reveals that as soon as Nylah cracked the door open by downloading TikTok and agreeing to the Terms of Service, Defendants blew the door off its hinges and began a systematic collection and utilization of a *massive* amount of Nylah's Pennsylvania-based personal data.  The shocking scope of data harvested by Defendants is detailed in Defendants' Privacy Policy.  *See* **Ex. B**.

This gargantuan amount of data is then utilized to target users with specific videos and advertisements designed to keep the user fully engaged.  User engagement drives revenues mostly generated by advertisements.  Defendants purposefully availed themselves of Pennsylvania by harvesting data from Nylah's Pennsylvania-based mobile device; from her Pennsylvania-based IP address and network activity; from her body, image, and characteristics, including "biometric identifiers and biometric information" while she was located in Pennsylvania; from her approximate and precise Pennsylvania-based location data; and the list goes on. *See* **Ex. B**.  Defendants' extraction of Nylah's Pennsylvania-based data was not "random, isolated, or fortuitous."  *Ford Motor Co.*, 141 S.Ct. at 1024.  Instead, Defendants utilized the data it purposefully gathered to satisfy their primary business objectives including to "send promotional materials", "measure and understand the effectiveness of the advertising", "conduct product development", and relevant here,

"make suggestions and provide a customized ad experience" and "provide you with…personalized content."  *See* **Ex. B**.

The geographic location of a user is critical to TikTok's decisions of what promotional materials to send to a user.  This is why a user located in the Philadelphia area will receive advertisements concerning Philadelphia sports, Philadelphia concerts and other Philadelphia events.   By contrast, a user in Los Angeles or Miami will receive material targeted to those regions.   Defendants cannot have it both ways.   They cannot rely on a user's geographic location as a central aspect of their business model but then claim that their connection to that user's location are simply fortuitous.  Compl. ¶¶ 23-29.

Defendants' purposeful availment of Pennsylvania is based on their systematic, targeted, and intentional actions by reaching into Pennsylvania to extract a huge amount of data from Nylah which Defendants' product ultimately used to deliver the Blackout Challenge directly to Nylah's FYP on her phone in Pennsylvania.  Compl. ¶ 27; *see also id.* ¶¶ 26, 80-84, 93.  The first requirement for specific personal jurisdiction is satisfied.  *O'Connor*, 496 F.3d at 317.

The second requirement for specific personal jurisdiction—that Plaintiff's claims arise out of or relate to Defendants' Pennsylvania contacts—is easily satisfied here.  *Ford Motor Co.*, 141 S.Ct. at 1024.  Tik Tok utilized the data Defendants purposefully harvested from Pennsylvania to deliver the Blackout Challenge directly

to Nylah's FYP.  Nylah fell victim to Defendants' targeted Pennsylvania-based actions, participated in the challenge and died as a result. Compl. ¶¶ 26, 27, 77-99.

The final requirement for specific personal jurisdiction—that exercise thereof be reasonable—is likewise satisfied.  The Supreme Court has repeatedly defined the framework under which it is reasonable for a product designer/manufacturer to be subjected to suit in a given State:

> If the sale of a product of a manufacturer or distributor…is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in several or all other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Ford Motor Co.*, 141 S.Ct. at 1027 (citation omitted); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1126-27 (W.D. Pa. 1997) (holding that when a defendant makes a conscious choice to conduct business with the residents of a forum state "it has clear notice that it is subject to suit there" and if defendant was not amenable to jurisdiction in Pennsylvania, "it could have chosen not to sell its services to Pennsylvania residents.").  Technology readily exists whereby an app can be inaccessible in certain geographic locations.   If Defendants wanted to avoid Pennsylvania jurisdiction, they could have utilized this blocking capability.

The case law relied on by Defendants is readily distinguishable.  Defendants rely on the Third Circuit's holding in *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) that "mere operation of a commercially interactive web site

should not subject the operator to jurisdiction anywhere in the world."  The TikTok app and Defendants' intentional data harvesting from Pennsylvania residents, including Nylah Anderson, is a far cry from the twenty-year-old website at issue in *Toys "R" Us* which was merely accessible from Pennsylvania.  The website at issue in *Toys "R" Us* was identical for all users regardless of from where it was accessed.  This is not the case for Defendants' product, which is specifically tailored to each individual user.

Contrary to defendants' argument, *Toys "R" Us* actually supports Plaintiff's position.  *Id.* at 452 (holding if a defendant web site operator "intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site" the purposeful availment requirement is satisfied); *see also Zippo*, 952 F.Supp. at 1126 (defendant purposefully availed itself of doing business in Pennsylvania when it "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing this would result in Pennsylvania business contacts).  Defendants' conduct here goes *far* beyond that which was found sufficient in *Zippo*.

Defendants rely heavily on *Ziencik v. Snap, Inc.*, 2021 WL 4076997, *1 (W.D. Pa. Sept. 8, 2021), but this case is highly distinguishable.  In *Ziencik*, plaintiffs filed suit against Snap, Inc. ("Snap", the maker of the Snapchat app) alleging that they suffered emotional and physical injuries as a result of threats sent directly to them

by third parties through the Snapchat app.  *See* **Exhibit C**, *Ziencik* Notice of Removal, ¶ 1.  These threats were direct messages sent by third parties that did not involve data collection or a targeting algorithms.  The district court found that "[t]he only contacts between Defendant and Plaintiffs were…initiated by Plaintiffs[]" and "Plaintiffs provide no evidence that Defendant does more than exist as an application that people can download while located in Pennsylvania."  *Ziencik*, 2021 WL 4076997 at *4.  Here, on the other hand, Defendants' contacts are far more extensive than Nylah's initial download and use of TikTok.  While Defendants try to align themselves with the defendant in *Ziencik* as merely being "an application that people can download while located in Pennsylvania[,]" this does not reflect the reality of Defendants' product or data collection efforts.  *See* **Ex. A**; **Ex. B**.

Respectfully, Defendants' motion should be denied.  However, should the Court not be convinced that specific personal jurisdiction exists, Plaintiff requests the opportunity to conduct jurisdictional discovery.  *See Toys "R" Us*, 318 F.3d at 456 (district court erred in denying the plaintiff jurisdictional discovery).

## II.    Plaintiff's Claims Are Not Barred by the CDA.

"In 1996, when the internet was young and few of us understood how it would transform American society, Congress passed the CDA."  *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1090 (9th Cir. 2021) (citing 47 U.S.C. § 230).  Section 230 of the CDA provides, in pertinent part, "[n]o provider or user of an interactive computer service

shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). By its terms, Section 230 of the CDA "provides immunity to [an interactive computer service provider] as a publisher or speaker of information originating from another information content provider." *Green v. AOL*, 318 F.3d 465, 471 (3d Cir. 2003).

Plaintiff's claims will only be barred under Section 230 if they seek to treat Defendants "as the publisher or speaker" of third-party content. 47 U.S.C. § 230(c)(1); *Green*, 318 F.3d at 470-71. Plaintiff's claims do not treat Defendants as the publisher or speaker of the Blackout Challenge video. Instead, they seek to hold Defendants directly liable as product designers, manufacturers, and sellers.

### A. **Plaintiff Does Not Treat Defendants as Publishers or Speakers.**

In the context of the CDA, "[a] clear illustration of a cause of action that treats a website proprietor as a publisher is a defamation action founded on the hosting of defamatory third-party content." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016) (citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)). However, where a plaintiff's claim is not founded on the defendant's quintessential publisher actions, i.e., editing, monitoring, or removing third-party content, the CDA is inapplicable. *Id.*; *Lemmon*, 995 F.3d at 1092.

Plaintiff is not seeking to hold Defendants liable as speakers or publishers. Plaintiff's claims arise from Defendants' duty to design and produce a safe, non-

defective product under Pennsylvania law.  *See, e.g., Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 384-94 (Pa. 2014) (holding product designers, manufacturers, and sellers have a duty to design, manufacture, and produce non-defective products). Defendants' duty relevant to Plaintiff's product liability claims "'has nothing to do with' its editing, monitoring, or removing of the content that its users generate" and the CDA is thus inapplicable.[3]  *Lemmon*, 995 F.3d at 1092.  Had a TikTok employee, in an effort to carry out his official job responsibilities, spied on 10-year-old Nylah and then used the information gained to determine that Nylah was likely to view and partake in dangerous challenges that involved choking activity, and texted a Blackout Challenge video link to her and said, "try this," no one would suggest the CDA bestows immunity.  This is precisely what TikTok did, and simply because TikTok utilized sophisticated automated (and defective) technologies to accomplish this action does not bring Plaintiff's claims under the CDA.

The CDA's inapplicability to Plaintiff's claims is confirmed by *Internet Brands*, 824 F.3d 846 and *Lemmon*, 995 F.3d 1085—two seminal cases outright ignored by the TikTok Defendants.  In *Internet Brands*, the plaintiff was a model who posted information about herself to the Model Mayhem website.  824 F.3d at

---

[3] Defendants focus on factual allegations in Plaintiff's Complaint concerning Defendants' failure to remove the dangerous Blackout Challenge.  Plaintiff's legal theories against Defendants are not based on whether Defendants should have removed the Blackout Challenge videos and are instead premised on their roles as product designers, programmers, manufacturers, and distributors.

848. Two rapists used the Model Mayhem website to lure plaintiff to a fake audition, where they drugged her, raped her, and recorded her for a pornographic video. *Id.* Plaintiff filed suit against Internet Brands as the operator of the website, alleging that it knew about the rapists but failed to warn her, and asserting negligence under California law based on that failure to warn. *Id.* The district court dismissed the action believing the claim was barred by the CDA, and plaintiff appealed. *Id.*

The Ninth Circuit framed the essential question as "whether Plaintiff's failure to warn cause of action 'inherently requires the court to treat' Internet Brands 'as a publisher or speaker' 'of information provided by another information content provider.'" *Id.* at 850 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-02 (9th Cir. 2009)). The *Internet Brands* court held that the plaintiff's claims were fundamentally different, and that "[t]he duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content." *Id.* at 851. Indeed, "[a]ny obligation to warn could have been satisfied without changes to the content posted by the website's users[.]" *Internet Brands*, 824 F.3d at 851. The plaintiff was thus not seeking to treat Internet Brands as a publisher or speaker and the CDA was inapplicable. *Id.*

In *Lemmon*, teenagers were killed in a car accident while traveling at excessive speeds. 995 F.3d at 1088. Plaintiffs, parents of the deceased teenagers,

alleged that the popular social media app, Snapchat, encouraged such reckless driving through the "Speed Filter" which enabled users to record and share their real-life speed. *Id.* The parents brought wrongful death actions against Snap, Inc., alleging negligent design of the Snapchat app. *Id.* at 1087. The district court dismissed the plaintiffs' complaint on the grounds that the claims were barred by the CDA, and plaintiffs appealed. *Id.* at 1090. On appeal, the Ninth Circuit engaged in a thorough analysis of whether the plaintiffs' product design claims sought to treat defendant Snap, Inc. as a "publisher or speaker." *Id.* at 1091-93. The *Lemmon* court made clear that its focus was on whether "the duty the plaintiff alleges" stems "from the defendant's status or conduct as a publisher or speaker[]" or if the duty stems from elsewhere. *Id.* at 1091 (citation omitted). The court held that the plaintiffs' product liability claims did ***not*** seek to treat Snap, Inc. as a publisher or speaker:

> ***The duty underlying such a claim differs markedly from the duties of publishers as defined in the CDA.*** Manufacturers have a specific duty to refrain from designing a product that poses an unreasonable risk of injury to consumers. Meanwhile, entities acting solely as publishers— *i.e.*, those that review material submitted for publication, perhaps edit it for style or technical fluency, and then decide whether to publish it— generally have no similar duty.
>
> ***It is thus apparent that the Parents' amended complaint does not seek to hold Snap liable for its conduct as a publisher or speaker. Their negligent design lawsuit treats Snap as a products manufacturer, accusing it of negligently designing a product*** (Snapchat) with a defect (the interplay between Snapchat's reward system and the Speed Filter). Thus, the duty that Snap allegedly violated "springs from" its distinct capacity as a product designer….Snap's alleged duty in this case thus

"has nothing to do with" its editing, monitoring, or removing of the content that its users generate through Snapchat.

*Id.* at 1092 (emphasis added) (internal quotations and citations omitted); *see also Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 139 (4th Cir. 2019) ("While the [CDA] protects interactive computer service providers from liability as a publisher of speech, it does not protect them from liability as the seller of a defective product.").

Plaintiff's claims here, like those in *Internet Brands* and *Lemmon*, have "nothing to do with" Defendants' editing, monitoring, or removing third-party user content. Instead, just like in *Lemmon*, Plaintiff's claims spring from Defendants' duty to design a safe, non-defective product under Pennsylvania law and, like in *Internet Brands*, Plaintiff alleges Defendants are liable for failure to warn stemming from their product liability duty. *Id.* ¶ 107(y-z). The fact that the TikTok Defendants could have satisfied their duty (to design and supply safe, non-defective products under the consumer expectation and/or risk-utility standards) *without altering the content generated by third-parties* cements that Plaintiff is not seeking to treat Defendants as publishers or speakers. *Lemmon*, 995 F.3d at 1092.

Importantly, *Lemmon* and *Internet Brands* were decided under California law. *Tincher* is the progeny of California product liability law. In *Tincher*, the Pennsylvania Supreme Court repeatedly relied on California product liability law, particularly *Barker v. Lull Engineering Co.*, 573 P.2d 443 (Ca. 1978), in determining

14

the modern framework of Pennsylvania product liability law. *Tincher*, 104 A.3d at 368, 389, 391-92. Both *Lemmon*, 995 F.3d at 1092 and *Internet Brands*, 824 F.3d at 851, the most on-point cases, were decided under California law and hold that Plaintiff's product liability and failure to warn claims fall outside the CDA. *Lemmon* and *Internet Brands* carry tremendous weight under Pennsylvania law.

### B. Defendants' Case Law is Readily Distinguishable

Defendants rely on a number of cases in which the court dismissed a plaintiff's claims on grounds of CDA immunity. Each of these cases is highly distinguishable. Defendants cite *Obado v. Magedson*, 612 Fed. App'x. 90 (3d Cir. 2015); *Winter v. Facebook, Inc.*, 2021 WL 5446733, *1 (E.D. Mo. Nov. 22, 2021); *Kabbaj v. Google Inc.*, 592 Fed. App'x. 74 (3d Cir. 2015); and *Parker v. Paypal, Inc.*, 2017 WL 3508759, *1 (E.D. Pa. Aug. 16, 2017). These are all primarily ***defamation*** cases in which a plaintiff sought to hold the defendants liable for the allegedly defamatory content posted by a third party. None of these cases is on point.

Defendants cite *Force v. Facebook, Inc.*, 934 F.3d 53, 66-67 (2d Cir. 2019) for the proposition that Facebook's use of algorithms did not render it a non-publisher. In *Force*, the plaintiff brought federal ***anti-terrorism*** claims against Facebook seeking to hold it liable for Hamas's acts of international terrorism under 18 U.S.C. § 2333. *Force*, 934 F.3d at 61. The plaintiff argued that Facebook's use of algorithms transformed Facebook into a non-publisher. *Id.* at 65-66. The *Force*

plaintiff's claims, however, clearly were treating Facebook as a publisher.  Plaintiff here does not suggest that Defendants' use of algorithms alone brings this case outside the CDA.  Instead, Plaintiff notes that the algorithm took the affirmative step of sending the dangerous content to the user, which fundamentally treats Defendants as product designers subject to product liability outside the scope of the CDA entirely, which was not at all the issue in *Force*.[4]

Defendants rely on *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021).  In *Doe*, two minors were solicited for sex trafficking and were manipulated into providing pornographic videos of themselves which were posted on Twitter years later.  *Id.* at 894.  Plaintiffs asserted claims against Twitter, including claims for products liability, negligence per se, and negligent infliction of emotional distress.  *Id.* at 929-30.  The *Doe* court summarized the products liability claim as alleging that Twitter's design did not enable efficient reporting of child sexual abuse material or immediate blocking/removal thereof.   *Id.* at 930.   The *Doe* court distinguished plaintiffs' claims from those in *Lemmon* and found that to meet the obligation plaintiffs sought to impose, "Twitter would have to alter the content

---

[4] Defendants' reliance on *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) is distinguishable for substantially the same reasons.  Like the plaintiff in *Force*, the *Fields* plaintiff sought to hold Twitter liable for ISIS's terrorism under 18 U.S.C. § 2333, part of the Anti-Terrorism Act, on the theory that Twitter provided material support to ISIS by allowing its members to sign up for Twitter accounts and send messages.  Plaintiff's claims here treat Defendants as product designers and suppliers, not as the pure publishers that the *Force* and *Fields* plaintiffs treated those defendants.

posted by its users, ***in contrast to the design defect*** alleged in Lemmon." *Id.* at 930 (emphasis added).

Here, just as in *Lemmon* and opposite of the claims at issue in *Doe*, Defendants would not be required to alter any content posted by its users in order to comply with their product liability duties. Indeed, the Blackout Challenge can exist on TikTok without necessarily exposing TikTok to liability. However, Defendants' product functioning to send that challenge to a 10-year-old is an affirmative step (not a publisher action) which is not afforded any protections by the CDA.

Defendants also rely on *Dryoff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) to suggest that because TikTok makes "recommendations" to "facilitate the communication and content of others" it is immune under the CDA. This is wrong, and *Dryoff* is plainly distinguishable. In *Dryoff*, the plaintiff's son overdosed on drugs after a social networking website allowed the decedent to connect and communicate directly with the drug dealer who sold the fatal narcotics. *Id.* at 1094-95. The *Dryoff* plaintiff did not argue the CDA was inapplicable but instead that defendant's actions transformed it into an "information content provider" which is not immune under the CDA. *Id.* at 1096. This is not at all what Plaintiff is alleging here. The *Dryoff* court's focus was on whether the defendant was an "information content provider" under the CDA whereas here, the fundamental issue is whether Plaintiff's product liability claims

are subject to the CDA at all (they aren't). *Dryoff* did not involve product liability claims and also predates the Ninth Circuit's decision in *Lemmon*, which held the CDA did not apply to product liability claims. *Dryoff* is irrelevant.

The gravamen of Plaintiff's claims arises from Defendants' liability for designing, developing, and supplying a defective and dangerous product. *Internet Brands* and *Lemmon*—the two cases most analogous to Plaintiff's claims but which are glaringly absent from Defendants' Memorandum—confirm that these claims are outside the scope of the CDA. Defendants' motion should be denied.

## III. Plaintiff Has Adequately Stated Claims For Relief.

### A.   <u>Legal Standard</u>

In considering a motion to dismiss for failure to state a claim, this Court must be "mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *2 (W.D. Pa. Nov. 18, 2011). Federal Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief' so that the defendant has "fair notice of what the claim is and the grounds on which it rests." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face," or put another way, "nudge [the plaintiff's] claims across the line from conceivable to plausible."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant may be liable for the misconduct alleged.  *Id.*  A complaint may not be dismissed "merely because it appears unlikely or improbable that the plaintiff can prove the facts alleged or will ultimately prevail on the merits."  *Inman*, 2011 WL 5829024, at *3.

### B.    The TikTok App and Algorithm Are "Products"

Defendants urge this Court to adopt overly restrictive definitions of the terms "product" and "seller."  However, Pennsylvania courts have repeatedly emphasized that, in applying the law of strict liability, courts must be flexible to effectuate the underlying public policy considerations behind strict product liability.  Those policy considerations necessitate concluding that Defendants' app and its associated algorithm are "products" under Pennsylvania law.

Pennsylvania generally follows § 402A of the Second Restatement of Torts for strict product liability actions.  *Tincher*, 104 A.3d at 415.  In adopting the Second Restatement approach, however, the Pennsylvania Supreme Court cautioned against rigid implementation of its principles, stating:

> The language of a restatement…is not necessarily susceptible to 'statutory'-type construction or parsing.  An effective and valuable restatement of the law offers instead a pithy articulation of a principle of law which, in many cases, including novel or difficult ones, ***represents a starting template for members of the judiciary, whose***

*duty is then to employ an educated, candid, and common-sense approach to ensure dispensation of justice to the citizenry*.

*Id.* (emphasis added).  In the context of strict product liability, the Pennsylvania Supreme Court has stressed that "[b]right lines and broad rules always offer a superficially enticing option.  However, [the court] cannot elevate the lull of simplicity over the balancing of interests embodied by the principles underpinning [the jurisprudence of the relevant area of law]." *Id.* at 425.  This is because "[s]trict liability in tort for product defects is a cause of action which implicates the social and economic policy of [the Commonwealth of Pennsylvania]." *Id.* at 385.  Product liability law is thus intentionally flexible so as to accommodate adaptation to technological innovations.

Defendants argue TikTok is similar to intangible "ideas" and "expressions" but this ignores the fundamental basis of what the TikTok app and algorithm are— computer programs and software that physically exist on smartphones.  They are "products."  TikTok, Inc. itself characterizes its app as a "product." *See* **Ex. A** at ¶ 5 ("Our automated systems analyze your content…to provide you personally relevant ***product features***, such as customized search results[]") (emphasis added), ¶ 7 ("our staff is continually working to develop and evaluate our own ***product*** ideas and features") (emphasis added); **Ex. B** (stating that Defendants utilize data mined

from users to "conduct *product* development"). Further, ByteDance represents on its website that TikTok is one of ***"Our Products"***.[5]

Defendants have confirmed in legal pleadings that their app is a "product". *See* **Exhibit D**, Defendants' Complaint in *ByteDance Inc. and TikTok Inc. v. Triller, Inc.*, United States District Court for the Northern District of California, Case No. 3:20-cv-7572.  In *Triller*, Defendants filed a declaratory judgment action seeking judgment that Defendants' "products" do not infringe a patent held by Triller, Inc. *Id.*  Defendants characterized their app as a "product" numerous times. *Id.* ¶ 24, 25, 27 ("[n]either Plaintiffs nor their ***products***…infringe") (emphasis added); ¶ 26 ("Plaintiffs ***products*** do not infringe…[n]or are Plaintiffs' ***products*** installed or otherwise used by end-users in a way that satisfies this claim limitation.") (emphasis added).  Defendants cannot characterize their app as a "product" when it suits them and then disclaim such representations when convenient.

Courts across the country have routinely held that software, such as computer programs, apps, and algorithms, are "products" that are subject to design defect claims, despite Defendants' contentions to the contrary.  *See Est. of Alex through Coker v. T-Mobile US, Inc.*, 313 F.Supp.3d 723, 732 (N.D. Tex. 2018) (denying defendant's motion to dismiss the plaintiff's products liability claim alleging that "the software installed on mobile devices was defectively designed" and holding that

---

[5] https://www.bytedance.com/en/products/ (accessed July 25, 2022).

"[t]he fact that a product does not work as expected can support a design defect claim" and that plaintiffs had "plausibly alleged a products liability claim."); *Lemmon*, 995 F.3d at 1092 (allowing the plaintiff's negligent product design claims related to the popular social media app, Snapchat, to proceed against Snap, Inc., the designer, developer, and operator of the app); *Maynard v. Snapchat, Inc.*, 870 S.E.2d 739 (Ga. 2022) (characterizing the Snapchat app as a "product" and the defendant, Snapchat, Inc. as a "manufacturer" of that product and holding that the plaintiff adequately alleged that the manufacturer owed a design duty); *Holbrook v. Prodomax Automation Ltd.*, 2021 WL 4260622, at *3 (W.D. Mich. Sept. 20, 2021) (holding that the computer software installed on a programmable logic controller ("basically a computer") is a "product").

Defendants' TikTok app and algorithm are nothing like the intangible ideas or expressions that were found not to be "products" in the cases cited by Defendants. For example, Defendants cite *Snyder v. ISC Alloys, Ltd.*, 772 F.Supp. 244, 247 (W.D. Pa. 1991) in which the district court analyzed whether technical drawings and professional information provided by the defendant constituted "products" that would subject the defendant to strict product liability.   TikTok and its algorithm are nothing like the "idea" and information at issue in *Snyder*.   Instead, it is computer software physically downloaded onto mobile devices which carries out specific and

tangible functions, such as injecting videos into the user's conscious attention and bombarding users with advertising.  TikTok is not an "idea" or "expression."

Similarly, Defendants rely on *Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) in which the district court held that the plaintiff's strict product liability claims against Netflix related to a particular show failed because "[t]here is no strict liability for books, movies, or other forms of media." (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-36 (9th Cir. 1989)).  The distinction here is that Plaintiff is not seeking to hold Defendants strictly liable for the existence of the Blackout Challenge video that resulted in Nylah's death like the *Estate of B.H.* plaintiff was attempting to do.  Instead, Plaintiff seeks to hold Defendants liable for the defective design of its app and algorithm, which is decided to send the Blackout Challenge video to a 10-year-old child.  Plaintiff's claims here are fundamentally different than those seeking liability for ideas and expressions of the type contained in books, movies, or other forms of media.  *Winter*, 938 F.2d at 1034-36 is distinguishable for the same reason.

Defendants rely on *Rodgers v. Christie*, 795 Fed. App'x. 878, 880 (3d Cir. 2020) for the same proposition, that "products" must be in tangible form.  *Rodgers*, however, analyzed the issue under New Jersey law which has adopted the Third Restatement that explicitly defines "product" as "tangible personal property distributed commercially for use or consumption" or any other item that "is

sufficiently analogous to [that] of tangible personal property." *Id.* 879.  Pennsylvania has expressly rejected adoption of the Third Restatement.  *Tincher*, 104 A.3d at 399. *Rodgers* is inapplicable to Plaintiff's claims.

Plaintiff is not aware of any Pennsylvania law ruling on whether an app and its associated algorithms or software are "products."   However, the social and economic policy of Pennsylvania "demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained[]" and that consumers be "entitled to the maximum protection at the hands of someone, and proper persons to afford it are those who market the products."  *Id.* at 383.  Defendants market their app product, and the burden of accidental injuries caused thereby should be placed on Defendants.  Declining to extend strict product liability to claims centered on software products, like TikTok, thwarts the social and economic policy underpinning product liability law in Pennsylvania.

### C.    <u>Defendants Owed Nylah Anderson a Duty</u>

Defendants owed a duty to Nylah Anderson as product designers, manufacturers, sellers, and/or suppliers under deeply-rooted Pennsylvania law.  It is axiomatic that a plaintiff may bring a claim for negligent product design.  Relying on *Tincher*, this Court has previously held that, ***"[i]t is now clear that Pennsylvania law imposes negligence liability (in addition to strict liability) upon product***

***manufacturers."*** *Schwartz v. Abex Corp.*, 106 F.Supp.3d 626, 654 (E.D. Pa. 2015) (emphasis added); *see also Phillips v. Cricket-Lighters*, 841 A.2d 1000, 1008-10 (Pa. 2003); *Dauphin Deposit Bank and Trust Co. v. Toyota Motor Corp.*, 596 A.2d 845, 849-50 (Pa. Super. 1991). Defendants ignore any discussion of *Phillips* or the plethora of Pennsylvania case law establishing that product designers, manufacturers, and suppliers have a negligence duty to provide a safe product.

Plaintiff also pled Defendants were negligent for failure to warn. Compl. ¶ 127(pp), (qq). Pennsylvania has adopted Restatement (Second) of Torts § 388 in cases involving such claims. *Dauphin*, 596 A.2d at 850 (citing *Incollingo v. Ewing*, 282 A.2d 206, 220 n. 8 (Pa. 1971)). Section 388 confirms that a product supplier has a duty to warn. Restatement (Second) of Torts § 388, cmt. k; *see also Schwartz*, 106 F.Supp.3d at 654-56 (concluding that "under Pennsylvania law, a product manufacturer has a common law duty to warn"). Plaintiff has sufficiently alleged a duty owed by Defendants and their motion to dismiss should be denied.[6]

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

---

[6] Plaintiff's wrongful death and survival act claims must also survive. Defendants only argument concerning these claims is that they are derivative of Plaintiff's strict liability and negligence claims. For all of the reasons stated above, Defendants' arguments seeking dismissal of Plaintiff's strict liability and negligence claims fail, and Plaintiff's wrongful death and survival act claims survive.

Dated: August 1, 2022

/s/ Robert J. Mongeluzzi
Robert J. Mongeluzzi
Jeffrey P. Goodman
Samuel B. Dordick
Rayna McCarthy
**SALTZ MONGELUZZI &
BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com
rmccarthy@smbb.com

Mark A. DiCello
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Western Reserve
Law Building
Mentor, OH 44060
Tel: (440) 953-8888
madicello@dicellolevitt.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Jeffrey P. Goodman*