

**SALTZ
MONGELUZZI
& BENDESKY** PC
TRIAL LAWYERS

DELAWARE COUNTY OFFICE
20 WEST THIRD STREET
P.O. BOX 1670
MEDIA, PA 19063
VOICE 610.627.9777
FAX 610.627.9787

ONE LIBERTY PLACE, 52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
VOICE 215.496.8282
FAX 215.496.0999

NEW JERSEY OFFICE
8000 SAGEMORE DRIVE
SUITE 8303
MARLTON, NJ 08053
VOICE 856.751.8383
FAX 856.751.0868

MONTGOMERY COUNTY OFFICE
120 GIBRALTAR RD
SUITE 218
HORSHAM, PA 19044
VOICE 215.496.8282
FAX 215.754.4443

JEFFREY P. GOODMAN
DIRECT DIAL 215-575-2970
JGOODMAN@SMBB.COM

August 4, 2022

**VIA .PDF EMAIL; Chambers_of_Judge_Paul_S_Diamond@paed.uscourts.gov**

Hon. Paul S. Diamond,
14614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

      **Re:**     *Tawainna Anderson, et al. v. TikTok, Inc., et al.*
               *EDPA No. 2:22-cv-01849-PD*

Dear Judge Diamond:

     As Your Honor is aware, this office represents Plaintiff in the above-referenced action. Pursuant to Your Honor's Standing Order (D.E. 6 at p. 3), Plaintiff writes this letter to bring an unresolved discovery dispute to Your Honor's attention. On July 1, 2022, Plaintiff served Rule 34 Requests For Production ("RFPs") on counsel for Defendants. *See* **Exhibit A**, Plaintiff's RFPs. Plaintiff recognizes that because the Rule 16 conference has not occurred yet, Defendants' 30-day time period to respond to these RFPs does not expire until thirty days after the parties' Rule 26(f) conference. *See* Fed.R.Civ.P. 34(b)(2)(A), 26(d)(2).

     The parties held their Rule 26(f) conference on August 3, 2022 thus making Defendants' responses due on September 2, 2022. However, during the Rule 26(f) conference Defendants' counsel advised that Defendants had no intention of producing responses to Plaintiff's RFPs due to their pending motion to dismiss (D.E. 12) and because Defendants intend to move for a stay of this litigation. Given that defendants have clearly announced their intention not to comply with their obligation to produce responses on September 2, 2022, and the inability of the parties to resolve this issue, it is appropriate for this Court to consider the issue now instead of waiting until the September 2, 2022 deadline passes. Discovery should proceed forward, Rule 26 disclosures should occur expeditiously and Defendants should be required to comply with their September 2,

2022 deadline to respond to Plaintiff's Requests. This will allow this complex case to move efficiently towards trial. Plaintiff certifies that the parties have made a reasonable effort to resolve this dispute but are at an impasse. Plaintiff provides the following arguments in support of this position.

First, Your Honor's Standing Order is abundantly clear that, "[u]nless otherwise ordered, discovery will not be stayed while any motion is pending, including any motion to dismiss and/or motion for protective order." D.E. 6 at p. 3. Consistent with Your Honor's Standing Order, Plaintiff's counsel advised Defendants' counsel that Plaintiff would not agree to a stay of discovery while Defendants' motion to dismiss was pending.

Second, a stay in this matter is unwarranted. Plaintiff is happy to brief this issue for Your Honor, but in summary, this Court has "broad discretion to stay proceedings as an incident to [the Court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In exercising this discretion, the Court must weigh the competing interests of the parties. *In re Universal Health Services, Inc., Derivative Litigation*, 2018 WL 8758704 at *1 n. 1 (E.D. Pa. Dec. 10, 2018). This Court has previously held that in determining whether to grant a stay, the following factors should be considered: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Id.* (citations omitted). Plaintiff respectfully submits that consideration of these factors would compel denial of any request for stay made by Defendants at this juncture.

Plaintiff is not seeking to compel Defendants' answers to Plaintiff's Requests prior to the September 2, 2022 deadline. Plaintiff is respectfully requesting that Your Honor order that Defendants must comply with the September 2, 2022 deadline to respond to Plaintiff's Requests despite their pending motion to dismiss, consistent with Your Honor's standing order. Aside from this dispute, the parties are working amicably on other issues, such as an ESI protocol, a clawback agreement, and a joint Rule 26(f) memorandum.

Thank you for your attention to this matter. I am available at Your Honor's convenience should Your Honor have any questions or require any additional information.

Respectfully submitted,

Jeffrey P. Goodman, Esq.

Enclosure
cc: All Counsel via e-mail

# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON, a deceased minor<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK, INC. AND BYTEDANCE, INC.<br><br>Defendants | Civil Action No. 2:22-cv-01849-PD |

## PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANTS, TIKTOK, INC. AND BYTEDANCE, INC.

Plaintiff, by and through her attorneys, hereby propounds the following Requests for Production of Documents ("Requests" pursuant to Federal Rule of Civil Procedure 34) to Defendants, TikTok, Inc. and ByteDance, Inc. (hereinafter referred to as the "TikTok Defendants" collectively). Accordingly, please produce all Documents listed below to Plaintiff's counsel within thirty days after the service of these Requests.

### DEFINITIONS

As used in these Requests, the words and terms set forth below are defined as follows:

1. "Documents" shall mean "documents," "electronically stored information," and "tangible things" as those terms are used in Federal Rule of Civil Procedure 34 and shall include all emails, text messages, social media posts and all electronic information/documentation in the custody and control of answering party's agents.

2. "The App" shall mean the TikTok Defendants' popular TikTok mobile application as described in Plaintiff's Complaint.

3. "FYP" shall mean the For You Page of the TikTok Defendants' App.

4. "Blackout Challenge" shall mean any challenge-style video disseminated on the TikTok Defendants' App which depicts the subject(s) of the video asphyxiating themselves by any means and/or which encourages other users to do so or shows other users how to do so.

## REQUESTS

1. All documents related to any TikTok account(s) registered to and/or used by Nylah Anderson or TikTok username Nylah123 or Nylah_123.

2. All documents related to any TikTok account(s) registered to, used by, and/or associated with the following cell phone numbers: (484) 362-5274; (610) 800-3647; (484) 362-5275.

3. Documents reflecting all videos shown or appearing on the FYP for Nylah Anderson or TikTok username Nylah123 or Nylah_123.

4. Documents reflecting all videos shown or appearing on the FYP for any TikTok account(s) registered to, used by, and/or associated with the following cell phone numbers: (484) 362-5274; (610) 800-3647; (484) 362-5275.

5. Documents concerning any and all data and/or information collected from or pertaining to Nylah Anderson, TikTok username Nylah123 or Nylah_123, and/or the following cell phone numbers: (484) 362-5274; (610) 800-3647; (484) 362-5275.

6. All End-User Licensing Agreements in effect at the time any and all data and/or information was collected from or pertaining to Nylah Anderson, TikTok username Nylah123 or Nylah_123, and/or the following cell phone numbers: (484) 362-5274; (610) 800-3647; (484) 362-5275.

7. The End-User Licensing Agreement in effect at the time any TikTok account(s)

used by and/or associated with the following cell phone numbers were registered: (484) 362-5274; (610) 800-3647; (484) 362-5275.

8. The End-User Licensing Agreement in effect at the time TikTok accounts were created and/or registered for Nylah Anderson and/or TikTok usernames Nylah123 or Nylah_123.

9. Documents identifying all data and/or information obtained from users by the TikTok Defendants and/or The App during subscription, enrollment, and account creation.

10. All documents identifying the tools and/or services used to extract data and information from the TikTok platform into data analysis tools.

11. The TikTok Defendants' content delivery network ("CDN"), network architecture diagram, and/or documents related to the TikTok Defendants' content distribution architecture for The App.

12. All documents related to or reflecting terminologies and/or definitions used by the TikTok Defendants and/or The App for its architectural platform and/or code.

13. All documents identifying, describing, or related to all application programming interfaces ("APIs") to other social media applications for The App.

14. All data and information collected by The App and/or the TikTok Defendants from other social media applications pertaining to Nylah Anderson.

15. Documents reflecting all data and/or information the TikTok Defendants and/or The App shares with other social media applications or platforms.

16. Documents identifying engagement statistics utilized by the TikTok Defendants' data analysts, data scientists, marketing departments and/or sales departments.

17. Documents identifying or relating to the procedures used by the TikTok Defendants and/or The App to validate information or data obtained during user subscription and/or enrollment

during account creation.

18. Documents identifying or relating to the procedures used by the TikTok Defendants and/or The App to validate the information or data originally obtained during user subscription and/or enrollment, during account use to ensure the continued validity of said information or data.

19. All documents that describe and/or relate to how personalized content is delivered to each user's FYP.

20. All documents that describe and/or relate to how personalized content is delivered to each user with and without search initiation.

21. Documents identifying or relating to all fields and/or data elements collected associated with user demographic information.

22. Documents identifying or relating to all fields and/or data elements collected on user interest characteristics.

23. Documents identifying all licensed and proprietary tools used by the TikTok Defendants' data scientists and/or data professionals and/or marketing analysts.

24. All user behavior algorithms utilized by the TikTok Defendants and/or The App in effect prior to December 8, 2021, or documents reflecting, describing, or related to same.

25. All marketing algorithms and/or analyses utilized by the TikTok Defendants and/or The App in effect prior to December 8, 2021, or documents reflecting, describing, or related to same.

26. All recommendation algorithms utilized by the TikTok Defendants and/or The App in effect prior to December 8, 2021 which play any role in recommending or sending videos to users without search initiation.

27. Any global algorithms used to construct any type of hierarchical interest label set

based on the theme of contents, and calculated based on the relevant degree of each interest label in the set.

28. All documents identifying and/or describing any and all distinct algorithms utilized by the TikTok Defendants and/or The App which in any way utilize or rely upon data and information obtained from the user.

29. Documents identifying, describing, and/or relating to all tools, software, code, and/or algorithms used by the TikTok Defendants and/or The App to analyze and/or categorize the visual elements of videos uploaded by users, including but not limited to all computer vision technology.

30. Documents identifying, describing, and/or relating to all tools, software, code, and/or algorithms used by the TikTok Defendants and/or The App to analyze, categorize, or create a transcript of the audio in videos uploaded by users.

31. Documents identifying, describing, and/or relating to all tools, software, code, and/or algorithms used by the TikTok Defendants and/or The App to analyze and/or categorize the meta data associated with videos uploaded by users.

32. All audience prediction algorithms and/or any algorithm used by the TikTok Defendants and/or The App to predict or decide target audience demographics for videos uploaded by users based upon the content of said video.

33. Documents identifying all algorithms used by the TikTok Defendants and/or The App which are in any way involved in determining which videos appear on a user's FYP.

34. All algorithm content flowcharts.

35. All documents discussing, describing, or related to any type of performance rating or rating assigned to videos uploaded by users, including but not limited to those involving ratings

related to rewatch rate, completion rate, shares, comments, and/or likes.

36. All performance ratings or scores assigned to all videos uploaded and/or viewed by Nylah Anderson, TikTok username Nylah123 or Nylah_123, and/or the following cell phone numbers: (484) 362-5274; (610) 800-3647; (484) 362-5275.

37. All documents discussing, describing, or relating to any type of recommendation ranking system or algorithm utilized by the TikTok Defendants and/or The App.

38. Documents identifying the data and/or information collected from users during each use of The App.

39. All documents related to any type of automated age verification tools or systems used by the TikTok Defendants and/or The App which are applied to or used in conjunction with videos uploaded by users.

40. Documents describing or relating to any analysis the TikTok Defendants perform on their algorithm outputs for purposes of improving said algorithms and/or analyzing market strengths.

41. All documents related to any performance evaluation or review process pertaining to The App and/or its associated algorithms.

42. All documents related to the frequency at which the performance of The App and/or its associated algorithms is reviewed and/or evaluated.

43. The metrics by which the TikTok Defendants review and/or evaluate The App and/or its associated algorithms.

44. All internal performance evaluation or review reports pertaining to The App and/or its associated algorithms.

45. All documents regarding or related to the ability or inability of the TikTok

Defendants and/or The App to automatically remove videos deemed to be dangerous, unsafe, or otherwise contain inappropriate or illegal content.

46. All documents related to any performance review or evaluation pertaining to the TikTok Defendants' and/or The App's automatic removal of any videos deemed to be dangerous, unsafe, or otherwise contain inappropriate or illegal content.

47. All documents identifying any and all data points collected, used, and/or considered by The App and its associated algorithms when determining the content to show users on their FYP.

48. All documents concerning or related to any type of facial recognition system or technology used by the TikTok Defendants and/or the App, including but not limited to those that identify any such system or technology, how it works, and/or the purpose of its use by or with The App.

49. All documents, communications, notes, meeting minutes, or memoranda discussing or referencing videos involving asphyxiation of self or others, by any means, being disseminated and/or spreading on The App prior to December 8, 2021.

50. All policies, procedures, and/or protocols regarding any type of system by which videos on The App are automatically removed from The App.

51. All policies, procedures, and/or protocols regarding any type of system by which warnings or caution statements are added to users' videos by the TikTok Defendants or any automated system or algorithm associated with The App.

52. All documents, communications, notes, memoranda, policies, procedures, and/or protocols regarding the classification of videos on The App as dangerous, unsafe, or anything similar.

53. All policies, procedures, and/or protocols regarding content moderation on The App.

54. All content moderation algorithms used by or associated with The App.

55. Documents reflecting or describing the total number of employees, workers, and/or agents performing content moderation functions for The App from September 1, 2017 through December 7, 2021.

56. All documents related the circumstances under which any content moderator(s) must remove content from The App.

57. All documents, correspondence, memoranda, brochures, marketing materials, and/or notes stating or describing the proper and improper use or intended use of The App authored by or originating from the TikTok Defendants.

58. All warnings provided to users of The App from September 1, 2017 through December 7, 2021 through The App or any other source.

59. Copies of all United States and International patents related to the TikTok App and its associated algorithms.

Dated: July 1, 2022

/s/ Robert J. Mongeluzzi
Robert J. Mongeluzzi
Jeffrey P. Goodman
Samuel B. Dordick
Rayna McCarthy
**SALTZ MONGELUZZI & BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com
rmccarthy@smbb.com

Mark A. DiCello
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Western Reserve
Law Building
Mentor, OH 44060
Tel: (440) 953-8888
madicello@dicellolevitt.com
*Counsel for Plaintiff*