# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON, a deceased minor,

*Plaintiff*,

vs.

TIKTOK INC. AND BYTEDANCE, INC.,

*Defendants.*

Case No.: 2:22-cv-01849-PD

## REPLY IN SUPPORT OF MOTION TO DISMISS

Joseph E. O'Neil
Katherine A. Wang
**CAMPBELL CONROY & O'NEIL, PC**
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
Telephone: (610) 964-1900
Facsimile: (610) 964-1981

Geoffrey M. Drake (*Pro Hac Vice*)
TaCara D. Harris (*Pro Hac Vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Albert Giang (*Pro Hac Vice*)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Counsel for TikTok Inc. and ByteDance Inc.*

August 11, 2022

Plaintiff's Opposition actually confirms key allegations that require dismissal of the Complaint: "Blackout Challenge" choking videos were created and posted by third-party users; such "viral" videos were shared or accessible by users in many states and countries; this "content" is "placed" by an intangible algorithm, through TikTok's video-sharing platform that is downloaded *by users* "worldwide"; and the connection to Nylah Anderson arises from her download and usage of the app in Pennsylvania, not any unique targeting by Defendants into Pennsylvania. Opp. at 1; Compl. ¶¶ 23-27, 50.[1] These concessions create several defects, which cannot be overcome by inapposite legal citations and contradictory factual allegations:[2]

- *First*, Plaintiff fails to establish personal jurisdiction. Plaintiff's Opposition relies on the alleged facts that, while in Pennsylvania, Nylah Anderson (1) accepted TTI's Terms of Service ("ToS") and Privacy Policy and (2) downloaded and used the TikTok application. Opp. at 4-5. But unilateral decisions and actions by others do not (and cannot) equate to Defendants' "purposeful availment" in Pennsylvania. Otherwise, mobile application owners would be subject to limitless jurisdiction across all states.

- *Second*, Plaintiff's Opposition (and her attempted labeling of this case as a "product liability" action) does nothing to escape Communications Decency Act ("CDA") immunity. At bottom, Plaintiff seeks to hold Defendants liable for two things inextricably intertwined with "content" created and shared by third-party users of the TikTok platform: (1) "[f]ailing to timely remove [and]

---

[1] *See also* Mot. at 4 n.2 (noting that online choking videos, including on other video platforms, date back to 2007 or earlier).

[2] *Compare* Compl. ¶ 127(i) (alleging damages caused by Defendants "*[f]ailing to timely remove* all dangerous and deadly videos and challenges from its app, including but not limited to the Blackout Challenge") with Opp. at 11 n.3 ("Plaintiff's legal theories against Defendants *are not based on whether Defendants should have removed* the Blackout Challenge videos…") (emphases added).

to prevent videos of the Blackout Challenge from being posted, shared, circulated, and/or recommended to users," and (2) employing an algorithm that presented the user-generated "Blackout Challenge" to Nylah via her For You Page ("FYP"). *See* Compl. ¶¶ 3, 127(i), (r); Opp. at 1. Both are CDA-protected publisher functions barring Plaintiff's claims.

- *Finally and independently*, Plaintiff still fails to state a claim for each cause of action pled.

## I. Plaintiff's New, Unpled Assertions Fail to Establish Specific Jurisdiction.

Plaintiff does not dispute that this Court lacks *general* jurisdiction over Defendants, but claims for the first time that specific jurisdiction exists by virtue of TTI's ToS and Privacy Policy. But Plaintiff cannot escape her own core allegation: that Nylah was harmed after seeing choking videos that were admittedly available *in other states and countries*, on an app downloaded by users "worldwide." Compl. ¶¶ 43, 66-70. And that specific allegation anchors the jurisdictional analysis, and defeats vague references to generic "algorithms," "contracts," "policies," "personal" or "location data"—all of which are general characteristics of technology usage, none of which are limited to Pennsylvania, and none of which are specific (or even relevant) to Nylah's particular harm.

*First*, there is no "purposeful availment" by Defendants where Plaintiff concedes that *users* initiate the applicability of the ToS and Privacy Policy, by "downloading TikTok" and "using" TikTok's services. Opp. at 5 (data collection occurred after Nylah downloaded app and agreed to ToS), Ex. A; Compl. ¶¶ 23-24. These user-initiated actions cannot establish specific jurisdiction over Defendants.

2

*Walden v. Fiore*, 571 U.S. 277, 284 & n.6 (2014) (specific jurisdiction "must arise out of contacts that the '*defendant* himself' creates with the forum State").

*Second*, neither the ToS nor Privacy Policy specifically references Pennsylvania law or residents; they apply universally regardless of user location. And in any event, application of the ToS alone is insufficient to confer jurisdiction. *See Ziencik v. Snap, Inc.*, No. 21-49, 2021 WL 4076997, at *4 (W.D. Pa. Sept. 8, 2021) (finding lack of personal jurisdiction notwithstanding existence of Terms of Service); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 64 (3d Cir. 1984) (no personal jurisdiction despite contract with Pennsylvania resident).

*Third*, numerous problems doom Plaintiff's attempt to bootstrap onto "harvest[ed] data from Nylah's Pennsylvania-based mobile device; from her Pennsylvania-based IP address . . . while she was located in Pennsylvania." Opp. at 5.  Again, this new allegation is based entirely on a *widely applicable* Privacy Policy. *See id.*  To the extent there was "Pennsylvania data," its locus was admittedly controlled by Nylah and not purposefully targeted by Defendants.  And any suggestion that collected data may have been used to "target" choking videos towards Nylah in Pennsylvania is contradicted by Plaintiff's specific allegation that such videos were seen in other states and countries, and that Defendants failed to prevent "viral" videos from "spreading" to "users" generally.  *See* Compl. ¶¶ 67-72.

3

Plaintiff's musings about "promotional materials" based on the "geographic location of the user" (Opp. at 6) fail for similar reasons: no such materials are identified or connected to Nylah's harm. Nor is this a case about promotion of the Philadelphia Eagles or Pennsylvania-specific advertisements targeting local residents. Like other courts, this Court should reject Plaintiff's conflation of general business policies with jurisdiction-targeted activities, because it would impermissibly extend specific jurisdiction over the countless technology companies that also have widely applicable policies and/or receive data from users who happen to be from (or passing through) Pennsylvania. *See Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) ("[M]ere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world."); *Gullen v. Facebook*, No. 15 C 7681, 2016 WL 245910, at *3 (N.D. Ill. Jan. 21, 2016) (no specific personal jurisdiction where Facebook's collection of biometric data was not targeted at the forum state).

*Fourth*, Plaintiff also fails in her attempt to distinguish *Ziencik* and *Toys R Us*. For instance, the age of the TikTok platform and users' level of interactivity on the platform (*see* Opp. at 14) does not change the fact that Defendants—like the defendant in *Toys R Us*—did not target any activity to Pennsylvania. And if anything, the allegations in *Ziencik* included a greater degree of defendant-related contacts. There, the plaintiff argued that the Snapchat application had a design

4

defect that shielded perpetrators from threats of law enforcement investigations and delayed law enforcement investigations in Pennsylvania. *Ziencik*, 2021 WL 4076997, at *4. In rejecting plaintiff's jurisdictional arguments—and finding that Snap did not expressly aim tortious conduct at Pennsylvania—the court noted that Snap's conduct could have occurred in any state. *Id*. That is exactly the case here.

*Finally*, there is no basis for jurisdictional discovery, especially where Plaintiff failed to carry her prima facie burden and it would be futile even accepting Plaintiff's allegations. *Crockett v. Luitpold Pharm., Inc*., No. 19-276, 2020 WL 3096527, at *5 (E.D. Pa. June 11, 2020) (denying jurisdictional discovery where plaintiff did not make a prima facie showing of personal jurisdiction).

## II. Plaintiff's Claims Are Barred by Section 230

Plaintiff concedes that her claims are "barred under Section 230 if they seek to treat Defendants 'as the publisher or speaker' of third-party content." Opp. at 10. And she admits that claims "founded on . . . editing, monitoring, or removing third-party content" treat Defendants as a publisher or speaker. Opp. at 10–15. At the same time, the Complaint repeatedly alleges Defendants are liable for:

- "[f]ailing to timely remove all dangerous and deadly videos and challenges from its app, including but not limited to the Blackout Challenge," Compl. ¶ 127(i), (l);
- "[f]ailing to prevent dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, from being posted, shared, and/or circulated to users on the TikTok app," *id*. ¶ 127(d);

5

- "[f]ailing to prevent videos of the Blackout Challenge from being posted, shared, circulated, and/or recommended to users, including Nylah Anderson, through their FYP," *id.* ¶ 127(r);
- failing to "extinguish and prevent the spread" of videos, *id.* ¶ 75; and
- breaching its "duty to monitor the videos and challenges shared, posted, and/or circulated on their app," *id.* ¶ 119.

The Complaint thus unequivocally seeks to hold Defendants liable for "deciding whether to publish, withdraw, postpone, or alter content"—traditional "publisher" functions immunized by the CDA. *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003).

Rather than grapple with these allegations, Plaintiff argues that "product liability" claims fall outside of Section 230. *See* Opp. at 11–15, 18. But as the Third Circuit has long held, CDA immunity does not depend on an action's "label," but whether Plaintiff fundamentally seeks to hold Defendants "negligent in promulgating harmful content and in failing to address certain harmful content on its network." *Green*, 318 F.3d at 471. Here, "[t]he nature of the alleged design flaw in this case—and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content," which puts Plaintiff's theory in Section 230's heartland. *Doe v. Twitter, Inc.,* 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021). Plaintiff's design theory is that the TikTok platform is defective because "[t]he viral and deadly TikTok Blackout Challenge was thrust in front of Nylah on her TikTok For You Page ('FYP') as a result of TikTok's algorithm." Compl. ¶ 3. But without allegations about this third party content, the Complaint pleads no "defect" at all.

6

And contrary to the Opposition's claims (at 10–11, 14), the Complaint *repeatedly* identifies TikTok's "defect" as a supposed failure to monitor and remove content. *See, e.g.*, Compl. ¶ 127 (d), (i), (l), (r).

Plaintiff's attempt to analogize to the Ninth Circuit's decision in *Lemmon* utterly fails. *See* Opp. at 11–15. In that case, the "danger" was a unique "speed filter" created by Snap, that "superimpose[d]" and "overlay[ed]" driving speed onto the user's photo or video and allegedly "reward[ed]" users for driving over 100 miles per hour. *Lemmon v. Snap*, 995 F.3d 1085, 1093 (9th Cir. 2021) (emphasizing "*the creation* of the Speed Filter"). Snap's alleged duty was "fully independent of [its] role in monitoring or publishing third-party content," and the plaintiffs' claim "st[ood] independently of the content." *Id.* Notably, the court distinguished that case from "creative attempt[s] to plead around" Section 230, where "the plaintiff's claims, at bottom, depended on a third party's content, without which no liability could have existed." *Id.* at 1094. Here, "no liability could have existed" absent specific, third-party-generated choking videos that Nylah allegedly saw. *Id*. Plaintiff seeks "to fault [TikTok] for publishing other [TikTok]-user content . . . that may have incentivized [minors] to engage in dangerous behavior"—the kinds of allegations *Lemmon* itself says are barred by Section 230. *Id.* at 1093 n.4.

Plaintiff also suggests that "the CDA [does] not apply to product[s] liability claims" at all under *Lemmon*. Opp. at 18. Indeed, that is Plaintiff's sole basis to

7

distinguish nearly all of the authorities cited in the Motion to Dismiss. *See id.* But nothing in *Lemmon* supports that proposition, and other courts have since considered *Lemmon* and nevertheless applied Section 230 to bar products liability claims. *Twitter*, 555 F. Supp. 3d at 930; *Doe v. Snap, Inc.*, No. H-22-00590, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022) (Section 230 barred design claims that were based on "messages and photos" sent by a user); *Quinteros v. InnoGames*, No. C19-1402RSM, 2022 WL 898560, at *7 (W.D. Wash. Mar. 28, 2022) (Section 230 barred all claims, including product liability).

Plaintiff's failure to warn theory (Opp. at 12, 14) is similarly based on Defendants' purported failure to warn about user content—for example, "[f]ailing to warn users of the risks associated with dangerous and deadly videos and challenges circulating the TikTok app and recommended to user." Compl. ¶ 107(z). While Plaintiff cites *Internet Brands*, that decision confirmed that Section 230 bars duty-to-warn theories based on a failure "to remove any user content or otherwise affect how [a platform] publishes or monitors such content," including "offensive content." *Id.* There was no allegation in *Internet Brands* that the defendant website transmitted harmful content—unlike Plaintiff's claims here. *See Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (distinguishing *Internet Brands*). Instead, the plaintiff was a model who alleged a talent-scout website failed to warn

8

her it had matched her with known, "criminally charged" predators. *Internet Brands*, 824 F.3d at 849. Her failure to warn theory did not turn on user content itself. *Id.*

Thus, it is ironic that Plaintiff suggests that Ninth Circuit cases should "carry tremendous weight under Pennsylvania law" (Opp. at 15), and then ignores the many times the Ninth Circuit has rejected identical arguments in other suits involving platforms, including video platforms. In particular, Plaintiff argues that Section 230 does not apply because TikTok's "algorithm took the affirmative step of sending the dangerous content to the user." Opp. at 16, 17. Just last year in *Gonzalez*, the Ninth Circuit held that Section 230 barred claims that YouTube's recommendation algorithm promoted terrorism-related content. *Gonzalez v. Google LLC*, 2 F.4th 871, 894 (9th Cir. 2021). Gonzalez argued that YouTube's algorithm "recommends content . . . to users based upon users' viewing history and what is known about the users," *id.*, just as Plaintiff alleges that TikTok's "algorithm recommended the Blackout Challenge" based on "the users demographics" and "user interactions such as the videos viewed". Compl. ¶¶ 53, 67. None of Gonzalez's claims fell outside of Section 230, and Plaintiff's claims do not here. *See also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (algorithmic recommendations are protected publisher functions).

### III. Plaintiff Cannot Otherwise State a Claim.

    a. The TikTok app and algorithm are not "products" (Count I).

Pennsylvania limits products liability claims to "finished items with a *tangible* form," excluding ideas, services, or other intangible items. *Snyder v. ISC Alloys, Ltd.*, 772 F. Supp. 244, 251 (W.D. Pa. 1991) (emphasis added). Numerous cases in other jurisdictions say that apps or other video platforms do not have a "tangible" form. *See, e.g.*, *Doe v. Facebook, Inc.*, No. 2019-16262 (151st Dist. Ct., Harris Cty., Tex. Oct. 4, 2019) (Instagram is "not a product" under Texas law adopting Restatement (Second) of Torts); *Est. of B.H. v. Netflix, Inc.*, No. 4:21-cv-06561-YGR, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (rejecting strict-product liability claims against Netflix "premised on the content and dissemination" of video content); Mot. at 20 (collecting cases). Those cases confirm the legal distinction between "tangible" items—which are subject to strict product liability—and intangible items and services, which are not. And contrary to Plaintiff's assertion (Opp. at 24), *both* Second and Third Restatement jurisdictions follow this distinction. *See Rodgers v. Christie,* 795 F. Appx. 878, 880 (3d Cir. 2020) ("algorithm" is not a "product" under Restatement (Third) of Torts).

Instead of meaningfully responding to these cases, Plaintiff attempts to distract with cherry-picked references to TikTok as a "product." These out-of-context references do not say anything about whether TikTok is "tangible," or control whether TikTok is a "tangible" product. Opp. at 20–21. For example, the TikTok ToS, which states that "[o]ur automated systems analyze your content . . . to

provide you personally relevant product features," describes TikTok as a service, not as a "tangible" product. Opp., Ex. A. Nor does the characterization of TikTok in unrelated litigation—based on an opposing party's framing of the issues—control whether TikTok is a "tangible" product. Opp., Ex. D. Here, *Plaintiff's own theory* is an alleged defect in an invisible and intangible "algorithm that determines the videos and content that each user . . . sees." Compl. ¶ 102. That fails to meet the legal definition of a "product" as "finished items with a tangible form." *Snyder,* 772 F. Supp. at 251.[3]

### b. Plaintiff cannot establish a legal duty of care (Count II).

Plaintiff does not address Defendants' numerous cases—involving TikTok or other Internet platforms—where courts have rejected claimed duties to users, including to prevent self-harm; to modify content; or to implement proper methods and controls. Mot. at 21-22. She merely falls back on a more generalized duty "as

---

[3] None of Plaintiff's citations are applicable or alter this conclusion. *See Est. of Alex through Coker v. T-Mobile US, Inc.*, 313 F. Supp. 3d 723, 732 (N.D. Tex. 2018) (no litigation or ruling on whether defendant's software constituted a "product"); *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 533, 870 S.E.2d 739, 743 (2022) (same); *Holbrook v. Prodomax Automation Ltd.*, No. 1:17-cv-219, 2021 WL 4260622, at *3 (W.D. Mich. Sept. 20, 2021) (assembly-line software could constitute a "product" as a component of a separate, tangible product and where Michigan law did not follow the Restatement). Here, the alleged defect relates to "plac[ing] content on the users FYP" (Opp. at 1), and such "transmission of words" "is not the same as selling items with physical properties." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035, 1036 n.6 (9th Cir. 1991) (noting that strict liability in those circumstances "could seriously inhibit those who wish to share thoughts and theories"). Plaintiff cites no authority for the idea that "policy" considerations (Opp. at 24) have extended product liability to intangible apps and algorithms, and certainly nothing to override the countervailing policies in the CDA.

product designers, manufacturers, sellers, and/or suppliers[.]" Opp. at 24. But Plaintiff's cases discussing the duty of care under a traditional product liability regime—involving tangible products like cigarette lighters or cars—are inapposite, where TikTok's app and algorithm are not "products" and where Congress has in fact immunized platforms from taking on such obligations or failing to prevent such harms. *See, e.g.*, *Winter v. Facebook, Inc.,* No. 21-CV-1046 JAR, 2021 WL 5446733, at *6 (E.D. Mo. Nov. 22, 2021) (dismissing claim that TikTok was negligent by failing to prevent cyberbullying because "[S]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit").[4]

### c. *Plaintiff cannot establish her other claims (Counts III-V).*

Plaintiff did not even respond to the numerous defects Defendants identified in her UTPCPL and CLRA claims (Mot. at 23-25), and those counts should be dismissed with prejudice. *See Walsh v. Fusion Japanese Steakhouse, Inc*., 548 F.Supp.3d 513, 522 (W.D. Pa. 2021) (failure to address an argument in opposition waives that argument).

Because these legal defects cannot be cured by amendment, TikTok and ByteDance respectfully request that the Court dismiss the Complaint.

---

[4] For these reasons, Plaintiff's derivative claims for wrongful death and survival should be dismissed as well. *See* Mot. at 25.

Dated: August 11, 2022                    Respectfully submitted,

                                          */s/Joseph E. O'Neil*_____
                                          Joseph E. O'Neil
                                          Katherine A. Wang
                                          Albert Giang (*Pro Hac Vice*)
                                          Geoffrey Drake (*Pro Hac Vice*)
                                          TaCara Harris (*Pro Hac Vice*)

                                          *Counsel for TikTok Inc. and ByteDance Inc.*

13

## **CERTIFICATE OF SERVICE**

I, Joseph E. O'Neil, Esquire, hereby certify that on August 11, 2022, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system (ECF), which will send notification of such filing to all counsel of record. The foregoing document is also available for viewing and/or downloading from ECF.

**Plaintiff's Counsel**
Robert J. Mongeluzzi, Esquire
Jeffrey P. Goodman, Esquire
Samuel B. Dordick, Esquire
Rayna McCarthy, Esquire
Saltz Mongeluzzi & Bendesky, P.C.
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
E-mail: rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com
rmccarthy@smbb.com

Mark A. DiCello, Esquire
DiCello Levitt Gutzler LLC
7556 Mentor Avenue
Western Reserve
Law Building
Mentor, OH 44060
E-mail: madicello@dicellolevitt.com

                                          **CAMPBELL CONROY & O'NEIL, P.C.**

                                          By: */s/ Joseph E. O'Neil*
                                                Joseph E. O'Neil, Esquire