

**S A L T Z**
**M O N G E L U Z Z I**
**& B E N D E S K Y** PC
T R I A L   L A W Y E R S

DELAWARE COUNTY OFFICE
20 WEST THIRD STREET
P.O. BOX 1670
MEDIA, PA 19063
VOICE 610.627.9777
FAX 610.627.9787

ONE LIBERTY PLACE, 52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
VOICE 215.496.8282
FAX 215.496.0999

NEW JERSEY OFFICE
8000 SAGEMORE DRIVE
SUITE 8303
MARLTON, NJ 08053
VOICE 856.751.8383
FAX 856.751.0868

MONTGOMERY COUNTY OFFICE
120 GIBRALTAR RD
SUITE 218
HORSHAM, PA 19044
VOICE 215.496.8282
FAX 215.754.4443

JEFFREY P. GOODMAN
DIRECT DIAL 215-575-2970
JGOODMAN@SMBB.COM

September 9, 2022

**VIA .PDF EMAIL; Chambers_of_Judge_Paul_S_Diamond@paed.uscourts.gov**

Hon. Paul S. Diamond,
14614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

   *Re: Tawainna Anderson, et al. v. TikTok, Inc., et al.*
     *EDPA No. 2:22-cv-01849-PD*

Dear Judge Diamond:

   As this Court is aware, this office represents Plaintiff in the above-referenced action. Plaintiff writes in response to Defendants' September 9, 2022 Letter requesting a stay of this litigation (D.E. 26) pending a ruling by the Judicial Panel on Multidistrict Litigation ("JPML") on an MDL Transfer Motion in *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation* which this action would not be a part of even if the MDL is created.  TikTok's September 9, 2022 letter is another transparent attempt to avoid compliance with this Court's Orders (D.E. 19, 24) to produce discovery to Plaintiffs.  For the reasons that follow, Plaintiff respectfully submits that a stay is completely unwarranted, and Defendants' request should be denied.

   On August 1, 2022, Brianna Murden moved before the JPML for transfer and coordination of at least 28 actions primarily naming Meta Platforms, Inc. (Facebook) and related Facebook entities.[1]  *See* **Exhibit A**, Murden Motion For Transfer and Coordination or Consolidation.  The

---

[1] The related Facebook entities named by plaintiff Murden and others include Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, and Siculus, Inc.  While some of the actions identified by plaintiff Murden also tangentially name Snap, Inc., TikTok, Inc., and ByteDance, Inc., the actions Murden is seeking coordination of are targeting Meta/Facebook.

Page 2
September 9, 2022

_____

claims Murden seeks coordination of involve what are likely to be thousands of adolescent claimants who suffer from social media addiction allegedly as a result of the intentionally addictive qualities of Meta/Facebook's social media platforms. *Id.* The plaintiffs in the potential MDL claim that social media addiction has resulted in injuries such as disordered eating, body dysmorphic disorder, severe anxiety, depression, suicidal ideation and self-harm, and insomnia. *Id.* None involve wrongful death claims premised on the social media defendants intentionally targeting a user with specific harmful videos, and only a handful even name TikTok as a party. *See* **Exhibit B**, TikTok's Opposition to Transfer and Coordination or Consolidation at p. 1 (noting that the "Transfer Motion does not, on its face, identify TikTok as a party" and that only a small number of cases name TikTok). Defendants here, TikTok, Inc. and ByteDance, Inc., are entered on the JPML docket and have opposed centralization. *See generally id.*

On August 16, 2022, TikTok, through same counsel representing them in this case, entered its appearance on the JPML docket. *See* MDL No. 3047, D.E. 21. Had TikTok believed the *Anderson* action was implicated by the potential MDL, TikTok had an obligation to serve Plaintiff Anderson with notice of the potential MDL and identify the *Anderson* action as being potentially included so that Plaintiff would have an opportunity to respond. Clearly, TikTok did not believe that to be the case as Defendants never served Plaintiff with any notice of the potential MDL and never identified the *Anderson* action as being potentially included. When Plaintiff's counsel independently became aware of the potential MDL, Plaintiff entered onto the docket and filed a concise Interested Party Response confirming for the Panel that the *Anderson* case is vastly distinguishable from those seeking coordination, share little if any common questions of fact or law, and that even if an MDL is established it is apparent that the *Anderson* action would not be included. *See* **Exhibit C**, Plaintiff Anderson Interested Party Response.

In Defendants' September 9, 2022 request for a stay they attempt to contort Plaintiff's filing in JPML as some acknowledgement of relatedness when in fact, the filing says precisely the opposite. *See* **Ex. C**. No party in the MDL proceeding (including TikTok) has ever asserted that claims such as Plaintiff Anderson's need be involved. However, out of an abundance of caution, Plaintiff filed an Interested Party Response so as to ensure that in the event some party did take that position, Plaintiff would be able to be heard in opposition. With all positions being filed before the JPML, it appears no party takes that position.

TikTok has argued to the JPML that an MDL should not be established at all because the "proposed industry-wide MDL in this ill-defined litigation would not promote judicial economy, the convenience of the parties and witnesses, or the just and efficient conduct of litigation[]" and because the overwhelming majority of cases name only Meta/Facebook, "they do not share sufficient common facts to warrant centralization." *Id.* at p. 2; *see also id.* at p. 6 (arguing that "uncommon issues predominate" these cases). The *Anderson* action share even fewer, if any,

Page 3
September 9, 2022

_____

common issues with those seeking coordination. Despite this, Defendants seek to utilize this potential MDL to gain a tactical advantage and avoid compliance with this Court's discovery Orders.

Defendants September 9, 2022 Letter (D.E. 26) claims that a stay until the JPML issues a ruling in *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation* is warranted. Defendants are wrong, and there is nothing about the pending Burden Motion to Transfer that compels a stay as it will not promote judicial economy, will prejudice Plaintiff, and allow Defendants to further shirk their discovery obligations in this case. Indeed, this is not the first time Defendants are attempting to bring this litigation to a grinding halt. After Defendants' counsel informed Plaintiff's counsel at the Parties' August 3, 2022 Rule 26(f) conference that Defendants would seek a stay of the case pending resolution of their Motion to Dismiss (D.E. 12), and that Defendants did not intend to respond to Plaintiff's Requests for Production ("RFPs") by producing responsive documents, Plaintiff's counsel raised these discovery issues to this Court's attention. *See* D.E. 18. This Court appropriately considered the issues, including that of a potential stay, and entered an Order dated August 4, 2022 directing that Defendants were to provide full and complete responses to Plaintiff's RFPs by September 2, 2022. *See* D.E. 19.

When Defendants failed to produce a single document on September 2, 2022 and thus failed to comply with this Court's August 4, 2022 Order, Plaintiff raised Defendants' non-compliance with this Court. *See* D.E. 23. In response, this Court entered an Order dated September 8, 2022 again directing Defendants to provide full and complete responses to Plaintiff's RFPs and that non-compliance would result in sanctions. *See* D.E. 24. Unfortunately, it appears Defendants are doing everything they can to avoid compliance with their discovery obligations and this Court's August 4, 2022 and September 8, 2022 Orders and have filed yet another meritless request for a stay based on a potential MDL concerning other social media platforms and unrelated claims. A stay should not be granted.

This Court has "broad discretion to stay proceedings as an incident to [the Court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In exercising this discretion, the Court must weigh the competing interests of the parties. *In re Universal Health Services, Inc., Derivative Litigation*, 2018 WL 8758704 at *1 n. 1 (E.D. Pa. Dec. 10, 2018). A party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward" and "[o]nly in rare circumstances will a litigant in once cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. This Court has previously held that in determining whether to grant a stay, the following factors should be considered: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case;

Page 4
September 9, 2022

_____

and (3) whether discovery is complete and whether a trial date has been set. *In re Universal Health Services, Inc.*, 2018 WL 8758704 at *1 n. 1 (citations omitted).

Defendants have fallen far short of satisfying their burden. Defendants argue that this matter should be stayed due to the potential creation of an MDL in *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation*, MDL Docket No. 3047 because (1) judicial economy is promoted, (2) there is no harm to the parties, and (3) any delay will be slight. Defendants are demonstrably wrong on all fronts, and the factors that should be considered by this Court weigh decidedly against a stay.

***First***, judicial economy is not promoted at all by a stay. Instead, a stay will only further delay the resolution of this matter and waste judicial and party resources. Defendants claim that if an MDL is created, the MDL court will have to address "the applicability of immunity under the [CDA] or whether platforms are tangible 'products' for strict-products liability law." D.E. 26 at p. 3. Not true. As discussed, the factual and legal bases of Plaintiff's claims here are clearly distinct from those in the potential MDL. Thus, the CDA immunity analysis is different and will not weigh on this Court's analysis of same. Further, Plaintiff's product liability theories against Defendants are pled under Pennsylvania law whereas ***none*** of the cases involved in the potential MDL are pled under Pennsylvania law. Pennsylvania product liability law is unique, and the legal and factual issues related to Plaintiff's claims here will not be resolved in the slightest by any potential MDL, even if it is created. Defendants also argue that the MDL court would "address the appropriate scope of discovery." *Id.* Again, not true. Because Plaintiff's claims here are unique and very clearly distinct from those in the potential MDL, no ruling by the MDL on the scope of discovery for those vastly different claims and defenses will impact the appropriate scope of discovery in *this* case. The Supreme Court has been clear that ***"[o]nly in rare circumstances will a litigant in once cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."*** *Landis*, 299 U.S. at 255 (emphasis added). This is not such a circumstance.

***Second***, substantial harm will result to Plaintiff in granting a stay and inflict a clear tactical disadvantage. While Plaintiff has dutifully complied with all of her discovery obligations in this case, Defendants have not and have now been ordered twice to provide full and complete responses to Plaintiff's RFPs. *See* D.E. 19, 23. Permitting Defendants to further defy this Court's Orders and continue shirking their discovery obligations will do nothing but delay the resolution of this case to Plaintiff's detriment. Defendants have a heavy burden of establishing that there is a "clear case of hardship or inequity in being required to go forward[.]" *Landis*, 299 U.S. at 255. No such hardship on Defendants exists, and Defendants' cries of potential "inconsistent obligations based on rulings by this Court and future rulings by an MDL Court" are unavailing given the overwhelming differences in this case and any potential MDL. Simply put, a stay will not result

Page 5
September 9, 2022

_____

in the simplification of *any* issues in this case.  **Third**, Defendants' argument that a stay should be granted because any delay would be slight should be rejected.  The veiled purpose of Defendants' instant request for a stay is to avoid complying with this Court's discovery Orders (D.E. 19, 24).  Even a "slight" delay is detrimental.  Especially so where the stay will serve no legitimate purpose other than delay.

The cases Defendants rely upon are readily distinguishable.  All of the cases Defendants cite where a stay was granted pending a ruling by the JPML are cases in which motions to transfer were actually filed in those cases.  *See Deoleo v. United States Liab. Ins. Co.*, No. CV 20-2301, 2020 WL 9763085, at *1-2 (E.D. Pa. July 14, 2020); *Penn. ex rel. Kane v. McGraw-Hill Companies, Inc.*, No. 1:13-CV-605, 2013 WL 1397434, at *1 (M.D. Pa. Apr. 5, 2013).  This is not the case here as no motion to transfer is pending in this action.

For these reasons, Plaintiff respectfully submits that Defendants' request for a stay should be denied.

Thank you for your attention to this matter.  I am available at Your Honor's convenience should Your Honor have any questions or require any additional information.

Respectfully submitted,

_____
Jeffrey P. Goodman, Esq.

Enclosure
cc: All Counsel via e-mail

# EXHIBIT "A"

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCT LIABILITY LITIGATION | MDL DOCKET NO.: _____ |

**MOTION FOR TRANSFER AND COORDINATION OR
CONSOLIDATION UNDER 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel

on Multidistrict Litigation, Movant-Plaintiff Brianna Murden respectfully asks the Judicial Panel

on Multidistrict Litigation ("Panel") to transfer the "Schedule of Actions," and subsequent tag-

along actions, to the Northern District of Illinois or the Western District of Missouri.

1.      Defendants Meta Platforms, Inc., Facebook Holdings, LLC, Facebook Operations,

LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram LLC, and Siculus, Inc.

(collectively, "Defendants") operate the world's largest family of social networks.[1]

2.      The complaints in the Schedule of Actions allege similar claims of product liability,

negligence, misrepresentation, fraud, unjust enrichment, breach of warranty, and infliction of

emotional distress against Defendants resulting from the design and operation of their two largest

products, Facebook and Instagram. Specifically, Plaintiffs allege that Defendants' social media

products are intentionally designed to be addictive and utilize sophisticated algorithms, and other

defectively designed and unreasonably dangerous features, to maximize user time and engagement

---

[1] Other filed cases also name Defendants Snap, Inc., TikTok, Inc., and ByteDance, Inc. These Defendants operate the social media platforms "Snapchat" and "TikTok" and similarly use defectively designed features resulting in youth addiction and other injuries. The complaints naming these two Defendants allege similar facts and injuries associated with adolescent use of these products.

to maximize profits. This design is employed regardless of a user's age and recognized dangers associated with the use of such features on social media products.

3.      From the beginning, Facebook and Instagram have exploited vulnerabilities in human psychology to addict users and maximize user time and engagement. Facebook's first President, Sean Parker, summed up the devastating impact of Facebook and Instagram's designs in a 2017 interview:

> "God only knows what it's doing to our children's brains. The thought process that went into building these applications, Facebook being the first of them, ... was all about: 'How do we consume as much of your time and conscious attention as possible?' And that means that we need to sort of give you a little dopamine hit every once in a while, because someone liked or commented on a photo or a post or whatever. And that's going to get you to contribute more content, and that's going to get you ... more likes and comments. It's a social-validation feedback loop ... exactly the kind of thing that a hacker like myself would come up with, because you're exploiting a vulnerability in human psychology. The inventors, creators — it's me, it's Mark [Zuckerberg], it's Kevin Systrom on Instagram, it's all of these people — understood this consciously. And we did it anyway."[2]

4.      Plaintiffs seek to hold Defendants' accountable for the devasting fallout from exploiting adolescent users during their formative years while in a state of increased fragility. Adolescent females are disproportionately negatively affected by Defendants' products, as shown by the overwhelmingly female Plaintiff population to date.[3]

5.      Defendants have publicly downplayed their products' negative impact on youth. However, leaked internal company documents from former Facebook employee and "whistleblower", Francesca Haugen, reveal that Defendants are aware of the disproportionate impact its products have on youth, especially adolescent females. One internal study found that

---

[2] Mike Allen, *Sean Parker unloads on Facebook: "God only knows what it's doing to our children's brains"*, Axios (November 9, 2017), https://www.axios.com/2017/12/15/sean-parker-unloads-on-facebook-god-only-knows-what-its-doing-to-our-childrens-brains-1513306792.

[3] Female clients represent 14 of 17 cases filed by the undersigned counsel. Additionally, 7 of the 10 federal cases filed by the Social Media Victims Law Center are female Plaintiffs.

"Thirty-two percent of teen girls said that when they felt bad about their bodies, Instagram made them feel worse."[4] The same study found that "[c]omparisons on Instagram can change how young women view and describe themselves."[5] Defendants have also found that "social comparison is worse on Instagram", compared to other social media apps.[6] As early as 2019, Defendants recognized that they "make body image issues worse for one in three teen girls."[7]

6.      Additionally, internal studies revealed that "teens blame Instagram for increases in the rate of anxiety and depression."[8] Among teens who reported suicidal thoughts, 13% of British users and 6% of American users traced the desire to kill themselves to Instagram, one presentation showed.[9] One in five teens say that Instagram makes them feel worse about themselves, and teens who struggle with mental health say Instagram makes it worse.[10]

7.      Internal research indicates that the design of Defendants' products is what is most harmful to teens. "A pressure to look perfect and an addictive product can send teens spiraling toward eating disorders, an unhealthy sense of their own bodies and depression, March 2020 internal research states. It warns that the Explore page, which serves users photos and videos curated by an algorithm, can send users deep into content that can be harmful."[11] According to Defendants' research, "aspects of Instagram exacerbate each other to create a perfect storm."[12]

8.      Plaintiffs' common allegations against Defendants include:

---

[4] Georgia Wells, Jeff Horwitz, and Deepa Seetharaman, *Facebook Knows Instagram Is Toxic for Teen Girls, Company Documents Show*, WSJ (Sept 14, 2021, 7:59 AM), https://www.wsj.com/articles/facebook-knows-instagram-is-toxic-for-teen-girls-company-documents-show-11631620739.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

a.  Facebook and Instagram were designed by Defendants, to be unreasonably dangerous and addictive to users, particularly adolescents;

b.  Defendants failed to warn adolescent users and their parents about risks posed by the addictive platforms or that there was even a risk of addiction;

c.  Defendants failed to warn adolescent users and their parents about the risks of causing body dysmorphic disorder and disordered eating posed by the platforms;

d.  Defendants failed to make accurate and truthful representations to Plaintiff and the general public regarding the nature of the Facebook and Instagram products;

e.  Defendants were unjustly enriched from consumers use of the products, at the expense of users' physical and mental well-being;

f.  Defendants engaged in unfair and deceptive acts and trade practices in the design, development, manufacture, marketing and dissemination of the Facebook and Instagram products; and

g.  Defendants failed to recall or retrofit the Facebook and Instagram products, despite knowing of the serious risks the platforms pose to adolescent consumers and the public.

9.  The common injuries contained within the complaints in the Schedule of Actions include but are not limited to: (a) multiple periods of suicidal ideation, (b) self-harm, (c) disordered eating, (d) body dysmorphic disorder, (e) severe anxiety, (f) depression, (g) a reduced inclination or ability to sleep, among other harmful effects, which may cause or contribute to additional disease, (h) medical expenses, and (i) other economic and non-economic damages.

10.    There are millions of adolescents who use Instagram and Facebook and spend hours on these platforms every day.[13]

11.    To date, twenty-seven (27) additional actions seeking similar relief in federal court have been filed. (*See* Schedule of Actions at Exhibit "A" of Brief in Support). In total, there are twenty-eight (28) actions pending in seventeen (17) different districts throughout the country. Currently, counsel represents over 400 clients prepared to bring similar claims against Defendants.

12.    Because of the millions of adolescents impacted by Defendants' conduct and the growing awareness of Defendants' conduct and resulting harms revealed by Facebook "whistleblower" Francesca Haugen, the undersigned anticipates a substantial number of similar cases in the coming months and years. Further, the undersigned is in communication with attorneys throughout the country who are investigating similar claims, thus increasing the likelihood of additional case filings.

13.    The complaints within the Schedule of Actions, and any additional tag-along actions, pending against Defendants will involve similar if not identical questions of fact and will involve common discovery and pretrial motion practice. Accordingly, inconsistent pretrial rulings could occur if the cases are not transferred for coordinated or consolidated proceedings pursuant to 28 U.S.C. § 1407.

14.    Movant-Plaintiff seeks to create an MDL with respect to Defendants' defective design and operation of the Facebook and Instagram products as they relate to adolescent users. As detailed in the accompanying Brief, centralization will help eliminate inconsistent rulings, curtail duplicative discovery, and conserve judicial resources.

---

[13] *See* Katherine Schaeffer, *7 facts about Americans and Instagram*, Pew Research Center (October 7, 2021), https://www.pewresearch.org/fact-tank/2021/10/07/7-facts-about-americans-and-instagram/.

15.     The convenience of the courts, parties, witnesses, and counsel will all be served by transferring these cases to the Northern District of Illinois or Western District of Missouri for coordinated or consolidated pretrial proceedings.

16.     In support of the motion, Movant-Plaintiff relies upon:

a.   the Brief describing the background of the litigation and Movant-Plaintiff's factual and legal contentions;

b.   the Schedule of Actions (attached hereto as **Exhibit A**) providing: (1) the complete name of each action involved, listing the full name of each party included; (2) the district court and division where each action is pending; (3) the civil action number of each action; and (4) the name of the Judge assigned to each action, if available;

c.   a copy of all complaints (without exhibits) and docket sheets for all actions listed in the Schedule of Actions (attached as **Exhibits A-1 to A-28**) in the accompanying Brief);

d.   the Statement Requesting Oral Argument; and

e.   the Proof of Service.

For the reasons set forth herein and in the accompanying Brief in Support, Plaintiff respectfully requests that the Panel issue an Order transferring all of the matters in the Schedule of Actions, and any tag-along actions, to the Honorable Sara L. Ellis, United States District Judge, Northern District of Illinois, for coordinated or consolidated pretrial proceedings, or alternatively the Western District of Missouri before Judge Stephen R. Bough.

Respectfully submitted,                    Dated:  August 1, 2022

*/s/ Joseph G. VanZandt*
Joseph G. VanZandt
BEASLEY ALLEN CROW
METHVIN PORTIS & MILES, LLC
234 Commerce Street
Montgomery, AL 36103
Telephone:  334-269-2343
Facsimile:  334-954-7555
Joseph.VanZandt@BeasleyAllen.com

***Attorneys for Movant-Plaintiff***

# EXHIBIT "B"

**BEFORE THE UNITED STATES JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCT LIABILITY LITIGATION | MDL DOCKET NO. 3047 |

**BRIEF OF DEFENDANTS TIKTOK INC. AND BYTEDANCE INC. IN RESPONSE TO PLAINTIFF'S MOTION FOR TRANSFER AND COORDINATION OR <u>CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

# TABLE OF CONTENTS

<div align="right">**Page**</div>

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................ 4

ARGUMENT ............................................................................................................................. 5

I.     Cases/Claims Against TikTok Are Unsuitable For Industry-Wide, Multi-Defendant Centralization ....................................................................................................................... 5

        A.    Where, As Here, There Is No Issue Commonality, Industry-Wide, Multi-Defendant Centralization Is Disfavored ................................................................ 6

        B.    The Costs Of Industry-Wide, Multi-Defendant Centralization Outweigh Any Potential Benefits ............................................................................................. 9

        C.    Voluntary Cooperation In Cases Actually Involving TikTok Is Sufficient .......... 13

        D.    Multi-Defendant Cases (Including TikTok) Should Be Remanded To Their Original Jurisdictions; Alternatively, Claims Against Non-Meta Defendants Can Be Separated And Remanded Should The Panel Consolidate Claims Against Meta ................................................................................................... 15

II.    If The Panel Centralizes Cases And/Or Claims Against TikTok, TikTok Agrees That The Eastern Or Western District Of Kentucky, Or Alternatively The Middle District Of Florida Or The Northern District of Georgia, Are Appropriate Venues ........ 16

CONCLUSION .......................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*,
709 F. Supp. 2d 1375 (J.P.M.L. 2010)........................................................................12

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*,
544 F. Supp. 3d 1375 (J.P.M.L. 2021)..................................................................7, 9, 15

*In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)........................................................................13

*In re Celexa and Lexapro Prods. Liab. Litig.*,
416 F. Supp. 2d 1361 (J.P.M.L. 2006)........................................................................16

*In re Chase Inv. Servs. Corp.*,
908 F. Supp. 2d 1372 (J.P.M.L. 2012)..........................................................................6

*In re Colgate Optic White Toothpaste Mktg. & Sales Pracs. Litig.*,
232 F. Supp. 3d 1346 (J.P.M.L. 2016)........................................................................14

*In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*,
412 F. Supp. 3d 1365 (J.P.M.L. 2019)................................................................7, 10, 13

*In re Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*,
753 F. Supp. 2d 1375 (J.P.M.L. 2010)..........................................................................8

*In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*,
326 F. Supp. 3d 1372 (J.P.M.L. 2018)........................................................................13

*In re Invokana (Canagliflozin) Prods. Liab. Litig.*,
223 F. Supp. 3d 1345 (J.P.M.L. 2016)..........................................................3, 10, 15, 16

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
396 F. Supp. 3d 1366 (J.P.M.L. 2019)..........................................................................9

*In re Midwest Milk Monopolization Litig.*,
386 F. Supp. 1401 (J.P.M.L. 1975)............................................................................15

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020)........................................................................12

*In re Seroquel Prods. Liab. Litig.*,
447 F. Supp. 2d 1376 (J.P.M.L. 2006)........................................................................16

*In re Spray Polyurethane Foam Insulation Prod. Liab. Litig.*,
    949 F. Supp. 2d 1364 (J.P.M.L. 2013)...............................................................8, 11

*In re Uponor, Inc.*,
    895 F. Supp. 2d 1346 (J.P.M.L. 2012).......................................................................9

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
    883 F. Supp. 2d 1350 (J.P.M.L. 2012).....................................................................11

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    655 F. Supp. 2d 1343 (J.P.M.L. 2009).......................................................................9

*In re Yellow Brass Plumbing Component Prods. Liab. Litig.*,
    844 F. Supp. 2d 1377 (J.P.M.L. 2012)...................................................................3, 6

**Statutes**

28 U.S.C. § 1407....................................................................................... *passim*

**Other**

Coordination Between Courts, Ann. Manual Complex Lit. § 20.14 (4th ed. 2004)......................14

Coordination Between Courts, Ann. Manual Complex Lit. § 20.131 (4th ed. 2004)....................15

## PRELIMINARY STATEMENT

Defendants TikTok Inc. ("TTI") and ByteDance Inc. ("BDI") (collectively, "TikTok") oppose Plaintiff Brianna Murden's Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407 [Dkt. 1] ("Transfer Motion"). Plaintiff's Motion proposes centralization as to 28 actions filed against Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram LLC; and/or Siculus, Inc. (hereinafter "Meta") that claim injuries allegedly arising from the use of Facebook and Instagram. The Transfer Motion does not, on its face, identify TikTok as a party.

Instead, Plaintiff suggests through a mere footnote that—because TikTok is named in three of 28 cases at issue in her Motion—the three cases against TikTok (and its co-defendants) also should be consolidated with all other cases naming Meta.[1] Motion, ¶ 1, n.1; Transfer Mot. and Brief in Support, 3, n.15 [Dkt. 1-1] ("Transfer Brief"). However, the title to Plaintiff's Motion—*In Re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation*—confirms the problems and inefficiencies with creating such a behemoth, industry-wide MDL involving all "social media" platforms and the millions of users of those platforms. Such a sweeping MDL made up of Meta and multiple secondary defendants (*i.e.*, TikTok, Snap, and Google) would be far too broad, and the weight of such an MDL would crush our federal judiciary. And, to be clear, Plaintiff's proposed MDL defendants operate only *some* of the third-party communication apps in the marketplace; there are many more. Plaintiff also has articulated *no limiting principle* that prevents a multi-defendant MDL from expanding even further to include many other platforms and apps.

---

[1] Since Plaintiff filed her Motion, 19 additional cases have been identified for the Panel's consideration, for a total of 47 pending cases. Of those 47, TikTok is a defendant in only 11. These numbers are current as of 6:00 p.m. ET on August 30, 2022.

In short, Plaintiff's proposed industry-wide MDL in this ill-defined litigation would not promote judicial economy, the convenience of the parties and witnesses, or the just and efficient conduct of litigation. In fact, given the diversity of claims and defendants, the opposite would be true, for several reasons.[2]

*First*, the multi-defendant cases in which TikTok is a defendant should not be ordered into an MDL with cases naming Meta alone, as they do not share sufficient common facts to warrant centralization. *See* 28 U.S.C. § 1407(a). This is not like the typical product liability litigation where multiple plaintiffs allege similar injuries from the use of a common product—for example excessive bleeding in *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, or ovarian cancer in *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2738. Here, in stark contrast, there are disparities in each plaintiff's allegations regarding their actual use of various online platforms, how they claim the platform(s) caused them harm, the purposes of their use, the online content they viewed, and which third-party users created such content and for what purposes. Further, there is staggering variation across cases in plaintiffs' claimed harms, all placed under the undefined umbrella of "social media addiction," ranging from lack of sleep to suicide, among other claims. In sum, individualized facts pertaining to different defendants and each case overwhelm any common questions in the minority of cases naming TikTok.

*Second*, there are few benefits to including secondary defendants (like TikTok) in a Meta-centric MDL at this time—and plenty of downsides both for the MDL court and the parties. The MDL court will have to spend time on the morass of additional pretrial orders and defendant-unique motions and discovery required in multi-defendant cases—with little upside given that the

---

[2] TikTok takes no position on whether coordination/consolidation is warranted as to Plaintiff's claims against any other defendant.

cases before the Panel are heavily tilted towards Meta alone. Meanwhile, TikTok and other secondary defendants will be forced to participate in dozens of unrelated cases involving plaintiffs' counsel who have never filed a case against them merely to protect their interests in the few cases in which they are involved. These inefficiencies will result in increased time and resources for all involved, weighing against centralizing all defendants in a global MDL.

*Third*, there are steps other than industry-wide centralization that the Panel can take to promote the just and efficient litigation of these cases. Section 1407 empowers the Panel to separate claims and defendants, and the Panel previously has done so where the inclusion of those claims and defendants would not promote the just and efficient conduct of litigation. *See* 28 U.S.C. § 1407(a); *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345 (J.P.M.L. 2016). Only 11 of 47 cases before the Panel include claims against TikTok (along with multiple defendants), and all but *one* case filed against TikTok was filed by the same law firm, Social Media Victims Law Center PLLC ("SMVLC"). None of the plaintiffs represented by Beasley Allen, in contrast, has named TikTok as a defendant in their lawsuits; they name only Meta. There is no justification for centralization of the cases and claims naming TikTok. As such, the Panel should refuse to consolidate them.

Each of these reasons underscore why this Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold [allegedly] similar products"—particularly when multiple defendants appear in a minority of cases. *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012): *In re Invokana*, 223 F. Supp. 3d at 1348. Accordingly, TikTok respectfully requests that the Panel deny Plaintiff's Transfer Motion with respect to the multi-defendant cases naming TikTok. Any case in which TikTok is a named defendant should be remanded to its

3

original jurisdiction and kept out of any MDL.

Alternatively, should the Panel wish to consolidate claims against Meta, the Panel can and should separate and remand all claims against the secondary defendants (like TikTok) to their original jurisdictions. Should the Panel determine that multi-defendant centralization is appropriate, however, TikTok joins Meta's position as to alternative venues.

## BACKGROUND

Millions of Americans use the TikTok video-sharing platform to create, share, and view short-form videos. Plaintiffs in certain lawsuits have alleged that TikTok employs an algorithm to deliver third-party content that is likely to be of interest to each user, and further provides users with a For You Page ("FYP") that shows the videos recommended by the algorithm. *See, e.g.*, Second Amended Complaint, *Tammy Rodriguez v. Meta Platforms Inc., et al.*, No. 3:22-cv-00401-JD (N.D. Cal. May 6, 2022), ECF No. 67, ¶¶ 46-47. The TikTok platform is made available in the United States by TTI. Although BDI is also named as a defendant in these matters, TikTok is not aware of any complaints that plead facts specific to BDI.

To-date, 47 so-called "social media addiction/personal injury" cases have been identified for potential coordination/consolidation in a proposed MDL: 28 actions addressed in Plaintiff Murden's Motion along with 19 additional actions that have since been identified as potential tag-along actions. Of these 47 cases, plaintiffs in every case are represented by at least one of the following six plaintiffs' firms: Beasley Allen, SMVLC, Seeger Weiss, Morgan & Morgan, Aylstock, and Gibbs Law Group.[3] TikTok is not a party to any of the actions Beasley Allen filed

---

[3] Bruster PLLC filed the *Youngers* complaint in New Mexico state court. *See* Complaint, *Joleen Youngers v. Meta Platforms, Inc., et al.*, No. D-101-CV-2002-01183 (N.M. July 6, 2022). Meta subsequently removed the *Youngers* case to federal court and now seeks to transfer it to an MDL as a tag-along. This is the only case against TikTok currently pending before the Panel brought by a firm other than SMVLC.

only against Meta that anchor Plaintiff Murden's Transfer Motion.  Nor is TikTok a party to any

of the actions Morgan & Morgan or Gibbs Law Group filed against Meta or the action Aylstock

filed against Meta and Snap.  In fact, TikTok is a party to only 11 of the 47 total actions currently

identified for consolidation.  And in each instance TikTok sits as a co-defendant alongside various

combinations of Meta (and its six affiliates noted above); Snap, Inc. ("Snap"); and YouTube LLC,

Google LLC, and Alphabet Inc. (collectively, "Google").  There are no cases identified for

consolidation in which TikTok is the only defendant.  All of the cases naming TikTok were filed

by SMVLC, except for one filed by Bruster.

Notably, Plaintiff's Transfer Motion focuses solely on her claims against Meta, and she

does not substantively address the claims pending against the secondary defendants, including

TikTok.  Indeed, Plaintiff does not mention TikTok at all beyond a single footnote:

> Other filed cases also name Defendants . . . TikTok, Inc.[] and ByteDance, Inc.
> These Defendants operate the social media platform[] . . . "TikTok" and similarly
> use defectively designed features resulting in youth addition and other injuries.  The
> complaints naming [] Defendants allege similar facts and injuries associated with
> adolescent use of these products.

Transfer Mot., ¶ 1, n.1; Transfer Brief, 3, n.15 (same).  Nor does Plaintiff's Transfer Motion

include any argument or reasoning as to why claims involving TikTok and other secondary

defendants should be subsumed within any MDL.  Instead, Plaintiff summarily proposes including

*all cases* and *all claims* arising from so-called "social media addiction" into a single multi-

defendant proceeding.

## ARGUMENT

**I.**     **Cases/Claims Against TikTok Are Unsuitable For Industry-Wide, Multi-Defendant Centralization.**

The Panel may transfer civil actions to a single district for pretrial proceedings when

(a) the actions involve one or more common questions of fact, (b) the transfer will be for the

convenience of the parties and witnesses, and (c) the transfer will promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Notably, the proponent of transfer bears the burden to demonstrate these factors are met. *In re Chase Inv. Servs. Corp.*, 908 F. Supp. 2d 1372, 1373 (J.P.M.L. 2012). But Plaintiff fails to establish that these factors are satisfied as to the cases naming, or the claims involving, TikTok. In fact, given that the matters identified for coordination involve several of TikTok's direct competitors—Meta (Facebook and Instagram), Snap (Snapchat), and/or Google (YouTube)—the Panel's well-established precedent weighs heavily against centralization at this time. *See In re Yellow Brass*, 844 F. Supp. at 1378 (the Panel is hesitant to centralize litigation involving multiple, competing defendants, even where those defendants marketed, manufactured, and/or sold allegedly similar products).

## A. Where, As Here, There Is No Issue Commonality, Industry-Wide, Multi-Defendant Centralization Is Disfavored.

As an initial matter, the Transfer Motion fails to establish that an industry-wide MDL—that is, centralizing multi-defendant cases naming TikTok with Meta-only cases—would involve common questions of fact. Plaintiff's motion seeks to centralize 28 separate actions (now 47 based on subsequent tag-alongs), collectively asserting claims against Meta, Snap, Google, and TikTok for alleged injuries caused by their respective online communication platforms. Defendants, however, are all different, their platforms are different in significant respects, and each plaintiff's platform use and alleged injuries differ as well. *See* Second Amended Complaint, *Tammy Rodriguez v. Meta Platforms Inc.*, et al., No. 3:22-cv-00401-JD (N.D. Cal. May 6, 2022), ECF No. 67, ¶ 8, ("[E]ach of Defendants' products contains unique product features . . . "). In these circumstances, where the claims against each defendant are likely to rise or fall on facts specific to that defendant, uncommon issues predominate and disfavor industry-wide, multi-defendant centralization. Such sweeping centralization is particularly inappropriate given the ill-defined and

sweeping parameters of the proposed MDL.

*In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365 (J.P.M.L. 2019), is instructive. There, the plaintiffs sought multi-defendant centralization of 10 actions brought against three automobile manufacturers, based upon the common allegation that a Bosch-supplied fuel pump used in each manufacturer's vehicles was defective. *Id.* at 1366. Denying centralization, the Panel stressed the defendant-specific problems that multi-defendant proceedings would create:

> [T]hese cases also present numerous automaker-specific and plaintiff-specific issues. Individualized issues include each automaker's design and testing of the subject vehicles, its knowledge of the alleged defect, its interactions with Bosch, and its marketing and communications with consumers. Plaintiffs' own allegations indicate that the alleged defect does not manifest itself in the same way from vehicle to vehicle, and thus that considerable discovery likely will target plaintiffs' individual — and varying — ownership experiences.

*Id.* at 1366-67.

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375 (J.P.M.L. 2021), employed similar reasoning. There, the plaintiffs sought industry-wide centralization of 38 actions targeting various baby food products that allegedly contained heavy metals. *Id.* at 1375-76. Despite similarities in the allegations made against each defendant, the Panel denied multi-defendant centralization due to the uncommon issues of fact and liability that the cases would necessarily entail:

> At a general level, these actions are similar. All plaintiffs allege that defendants knowingly sold baby food products containing heavy metals and did not disclose this in their marketing. It is not disputed, though, that each defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures. The claims against each defendant thus are likely to rise or fall on facts specific to that defendant, such as the amount of heavy metals in its products, the results of its internal testing, if any, and its marketing strategies. Much of the discovery and pretrial practice will be defendant-specific.

7

*Id.* at 1376-77.

Indeed, the Panel regularly denies industry-wide centralization where there are individualized facts and issues as to different, competing defendants. *See, e.g.*, *In re Credit Card Payment Prot. Plan Mktg. & Sales Pracs. Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010) (denying industry-wide centralization of cases alleging "deceptive marketing of defendants' debt cancellation and/or suspension products" where "each defendant appear[ed] to have offered several different products, which were marketed in different ways and subject to different disclosures"); *In re Spray Polyurethane Foam Insulation Prod. Liab. Litig.*, 949 F. Supp. 2d 1364 (J.P.M.L. 2013) (denying centralization of different manufacturers and installers of different spray polyurethane foam products where individualized facts, *e.g.*, the chemical composition of each product, would predominate).

Here, the Panel's reasoning on multi-defendant MDLs demonstrates that cases against TikTok should not be consolidated with cases naming Meta alone. Although individual plaintiffs purport to allege common design defects as to each platform, and claim that various defendants knew or should have known of certain user risks and did not warn of them, the proof needed to support these allegations will vary by defendant and by platform. Plaintiffs will have to prove specifically that there is harm associated with a given individual platform, whether and when each defendant knew or should have known about any alleged risks, whether each defendant adequately warned users about any purported risk of harm associated with its platform(s), and then whether exposure to that specific material on that specific platform caused a specific injury to an individual plaintiff. Discovery regarding one platform will have little relevance, if any, as to another platform. And discovery regarding one plaintiff's particular use of a multifaceted platform may have little relevance to other plaintiffs who interacted with other facets of the *same* platform and

were exposed to entirely different online content.[4]

Here, just as in *In re Baby Food*, "[t]he claims against each defendant . . . are likely to rise or fall on facts specific to that defendant," and "[m]uch of the discovery and pretrial practice will be defendant-specific." *See* 544 F. Supp. 3d at 1376-77. For this reason alone, the Panel should decline to centralize multi-defendant cases with Meta-only cases.

**B.   The Costs Of Industry-Wide, Multi-Defendant Centralization Outweigh Any Potential Benefits.**

Centralization is unwarranted for cases involving TikTok because it would not serve the "convenience of the parties" or "promote the just and efficient conduct" of these matters, especially given the relatively small number of cases against TikTok. *See* 28 U.S.C. § 1407(a); *see also In re Uponor, Inc.*, 895 F. Supp. 2d 1346, 1348 (J.P.M.L. 2012) (denying transfer and holding that "[c]entralization is not a cure-all for every group of complicated cases"). Plaintiff's proposed MDL combining Meta-only cases with those involving multiple defendants would tend to prolong pretrial proceedings, complicate case management for the MDL court, and increase costs for the parties (especially competitors like the defendants lumped together here). And any benefits to a multi-defendant MDL are slight, given the number of "social media addiction" cases outside the reach of any proposed MDL.

***An MDL would lead to prolonged pretrial proceedings.*** As the Panel has recognized, MDLs involving different defendants tend to "prolong pretrial proceedings, because of, *inter alia*,

---

[4] While Plaintiff claims that minimal overlapping issues are sufficient to support centralization, she relies on cases that are inapposite. *See* Transfer Brief at 4-5. For example, *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367 (J.P.M.L. 2019), involved one manufacturer, JUUL Labs, Inc., and its e-cigarette products. Similarly, *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 655 F. Supp. 2d 1343 (J.P.M.L. 2009) involved cases brought against only Bayer related to its drospirenone-containing oral contraceptives, Yaz and Yasmin. None of these cases involved a multitude of claims, brought against a multitude of defendants, as in the various "social media addiction/personal injury" complaints at issue here.

the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367 (denying transfer where plaintiffs sued three competing car companies because an MDL "likely would result in significant inefficiencies and delay"). This burdens both the MDL court and the parties.

As an initial matter, the case management procedures required in a setting in which Meta-only cases are combined with multi-defendant cases would be onerous for the MDL court and would not promote the efficient administration of the cases. Discovery regarding each defendant necessarily must be platform- and defendant-specific, which creates an additional (and unwarranted, given the few cases against TikTok) burden on the transferee court. *See*, *e.g.*, *In re Invokana*, 223 F. Supp. 3d at 1348 (multi-defendant centralization "may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials."). In addition, because the liability-determining facts in each case will be different (the features and marketing of the platform, each defendant's actions and knowledge at different times, etc.), each defendant may have unique defenses at the summary judgment stage and separate consideration of expert testimony. These unique defenses would likewise complicate any bellwether trial process that might be pursued by the transferee court or the parties.

***Trade Secret Protection.*** A multi-defendant MDL also *"*likely would complicate case management due to the need to protect trade secret and confidential information." *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367. Defendants here operate, to various degrees, competing web-based platforms. Each has devoted substantial time and resources to the development, testing, and refinement of their respective platform(s). A large percentage of this work is proprietary and highly confidential, and likewise, the majority of documents and other discovery produced by each

10

defendant will be proprietary and highly confidential. Trade secrets and other proprietary information will need to be carefully protected from disclosure to the other named defendants. Imposing these additional burdens and risks from a multi-defendant MDL is not warranted for secondary defendants like TikTok who are not named in the majority of Plaintiff's cases. *See*, *e.g.*, *In re Spray Polyurethane Foam Insulation*, 949 F. Supp. 2d 1364 (J.P.M.L. 2013) (rejecting request for industry-wide centralization in part because "placing direct competitor manufacturer defendants into the same litigation would require protecting trade secret and confidential information from disclosure to all parties and complicate case management"); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("Centralization of all actions against all manufacturers will add few efficiencies to the resolution of this litigation," and "could complicate these matters, as defendants may need to erect complicated confidentiality barriers, since they are business competitors."). Here, this would reflect not only a case management inefficiency for the transferee court—which would have to erect and enforce multiple confidentiality barriers in discovery—it also would impose an unnecessary risk upon each defendant of the accidental disclosure of trade secret or other proprietary information, and resulting competitive harm.

**Participation in Unrelated Cases.** A multi-defendant MDL at this stage would also require defendants like TikTok to participate in numerous cases in which they are not even named as parties, significantly *reducing overall efficiencies* to the MDL Court and significantly *increasing expenses* to these defendants. As discussed above, for example, TikTok has only been named in 11 actions—a small fraction of the 47 total actions currently before this Panel. Instead of focusing exclusively on TikTok's video-sharing platform and the few cases in which TikTok is a party, TikTok will be forced to monitor and participate in all cases and issues pending before the MDL,

including those exclusively concerning other defendants and other platforms, due to the potential implications for TikTok's cases. *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying centralization of 102 actions in part because many defendants were named "in only a minority of actions" and some were sued in "but a handful").

TikTok also will be required to liaise and coordinate with plaintiffs' counsel who have never even filed a lawsuit against TikTok—including Plaintiff's own counsel. Given that the same law firm—SMVLC—has filed all but one of the cases that includes TikTok and have been identified for coordination, TikTok has no need at this time to interact, much less coordinate, with other plaintiffs and their counsel.

**The proposed MDL would result in few case efficiencies.** The complications arising from centralizing multi-defendant cases with those naming Meta only further weigh against centralization here. *See In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (centralizing cases only as to StubHub where "few efficiencies [would] be gained" with an industry-wide MDL, and instead, would "complicate pretrial proceedings more than it would streamline them"). For example, the breadth of discovery in a multi-defendant MDL may be proportional for some defendants but not as to secondary defendants like TikTok. The frequency of case management and discovery conferences in an MDL that TikTok would have to attend would far exceed what is typical in a single lawsuit, or even combined across the few lawsuits in which TikTok is a party.

Further, even agreeing to discovery protocols, protective orders, and the like in the first instance will be overly complicated. Instead of TikTok being able to negotiate directly with those plaintiffs who have actually sued TikTok, TikTok will have to negotiate with multiple plaintiffs

and their counsel, some of whom will have different, competing interests.  Centralization of the claims against TikTok would also require it to attend and participate in the depositions of other defendants' witnesses to ensure TikTok's interests are protected.  One defendant's witness, for example, may make statements about "social media" in general or other defendants' platforms more specifically.  TikTok would be forced to monitor all discovery to avoid waiving any rights, defenses, or counterarguments.  Creating such a multi-defendant MDL at this juncture will lead TikTok to incur substantially more costs as it is forced to monitor and coordinate on issues, cases, and discovery otherwise not pertinent to claims against it.[5]

<div align="center">*　　*　　*　　*　　*</div>

There is nothing in the record before the Panel "to overcome [the Panel's] usual reluctance to centralize actions against different defendants in one MDL[.]"  *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367.  Industry-wide, multi-defendant centralization would produce significant inefficiencies and burdens to the transferee court and parties, without any commensurate benefit.

## C.　Voluntary Cooperation In Cases Actually Involving TikTok Is Sufficient.

 "[C]entralization under Section 1407 should be the *last solution* after considered review of all other options."  *In re Best Buy Co., Inc. Cal. Song-Berly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) (emphasis added); *see also In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (citations and internal

---

[5] In fact, TikTok—and other defendants—will be fighting litigation on multiple fronts even if the Panel creates an MDL in which TikTok is a party.  For example, despite the fact that SMVLC had filed several cases in the Northern District of California on behalf of *out-of-state plaintiffs* instead of filing in their home states, SMVLC more recently has decided to file lawsuits against TikTok and other defendants in Los Angeles County Superior Court relying on defendants' California citizenship to foreclose removal to federal court under the "forum defendant rule."  *Compare, e.g.*, Second Amended Complaint, *Tammy Rodriguez v. Meta Platforms Inc., et al.*, No. 3:22-cv-00401-JD (N.D. Cal. May 6, 2022), ECF No. 67, *with* Complaint, *Janet Majewski v. Meta Platforms, Inc., et al.*, No. 22-st-cv-26829 (L.A. Super. Ct. Aug. 18, 2022).

quotations omitted) (holding that "transfer under Section 1404 is preferable to Section 1407 centralization"). And in situations where, as here, there are relatively few actions—and where certain parties are only named in a handful of matters brought by the same plaintiffs' counsel— "the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *See In re Colgate Optic White Toothpaste Mktg. & Sales Pracs. Litig.*, 232 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016).

Plaintiff has failed to meet her burden—much less the heavier burden that applies here— to establish that centralization for TikTok-related cases is appropriate. TikTok is named in only a minority of cases, and there is significant commonality between plaintiffs' counsel pursuing these lawsuits against TikTok, as all but one such lawsuit is brought by the same plaintiffs' firm, SMVLC. And those cases are pending in only four different federal jurisdictions. A sprawling, multi-defendant MDL is unnecessary because TikTok and the few plaintiffs who have brought claims against TikTok can manage and coordinate this number of matters without an MDL.

Moreover, "[v]arious mechanisms are available to minimize or eliminate the possibility of duplicative discovery in the absence of an MDL." *In re Colgate Optic White*, 232 F. Supp. 3d at 1347. Depositions, discovery, and other pretrial activities may all be coordinated outside an MDL: "[n]otices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities." *Id.*; *see also* Coordination Between Courts, Ann. Manual Complex Lit. § 20.14 (4th ed. 2004) (identifying steps that can be taken to coordinate proceedings where they are not transferred to a single district). TikTok can, in concert with plaintiffs' counsel, implement such measures to ensure that the matters pending against TikTok proceed in an orderly fashion, and they can do so without inclusion in a sprawling multi-

14

defendant MDL. As the Panel has noted in similar circumstances, "it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation." *See In re Baby Food*, 544 F. Supp. 3d at 1378.

### D. Multi-Defendant Cases (Including TikTok) Should Be Remanded To Their Original Jurisdictions; Alternatively, Claims Against Non-Meta Defendants Can Be Separated And Remanded Should The Panel Consolidate Claims Against Meta.

Based on the foregoing, transfer of cases/claims against TikTok pursuant to 28 U.S.C. § 1407 is not warranted. As such, the Panel should remand those cases in which TikTok is a named defendant back to their original, transferor courts (even if it orders the creation of an MDL as to any other defendant).

Alternatively, should the Panel wish to consolidate all claims against Meta, the Panel is empowered to separate and remand the claims against other defendants like TikTok:

> Occasionally, only certain claims in an action are related to multidistrict proceedings[;]" and as such, "Section 1407(a) . . . empowers the Panel to accomplish "partial" transfer by (1) transferring an action in its entirety to the transferee district, and (2) simultaneously remanding to the transferor district any claims for which transfer was not deemed appropriate, such as cross-claims, counterclaims, or third-party claims.

Requests for Transfer, Ann. Manual Complex Lit. § 20.131 (4th ed. 2004); *see also In re Midwest Milk Monopolization Litig.*, 386 F. Supp. 1401, 1403 (J.P.M.L. 1975) (citing 28 U.S.C. § 1407(a) and holding that "[t]he Panel is empowered by statute to couple its order of transfer with a simultaneous separation and remand of any claims in an action").

*In re Invokana* is instructive in this regard. There, a group of plaintiffs sought to centralize 55 actions alleging injuries caused by the use of a class of medicines known as Sodium Glucose Cotransporter 2 (SGLT2) inhibitors—a class including Invokana and Invokamet, as well as competing products Farxiga and Jardiance. 223 F. Supp. 3d at 1347-48. Though the Panel concluded that the claims involving Invokana and Invokamet (both manufactured by the same

defendant) should be centralized, the Panel declined to order multi-defendant centralization, and ordered all claims involving *other* SGLT2 inhibitors to be separated and remanded back to their transferor courts:

> On the current record, we are not convinced that the MDL should include claims involving Farxiga, Jardiance, or any other SGLT2 inhibitor, including any such claims in "combination cases." We are "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." . . . Centralizing competing defendants in the same MDL may unnecessarily complicate case management, due to the need to protect trade secret and confidential information. . . . In addition, a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials. Here, especially given the relatively small number of Farxiga-only cases (fifteen), Jardiance-only cases (three), and "combination cases" (three), we conclude that class-wide centralization is not warranted at the present time.

*Id.* at 1348 (citations omitted); *see also In re Seroquel Prods. Liab. Litig.*, 447 F. Supp. 2d 1376, 1378-79 (J.P.M.L. 2006) (ordering MDL only as to defendant AstraZeneca and separating and remanding claims against non-AstraZeneca defendants back to their respective transferor courts); *In re Celexa and Lexapro Prods. Liab. Litig.*, 416 F. Supp. 2d 1361, 1363 (J.P.M.L. 2006) (concluding that "claims against Wyeth involving a prescription drug other than Celexa or Lexapro . . . d[id] not share sufficient questions of fact with claims against Forest regarding its drugs to warrant inclusion of the claims against Wyeth in the MDL–1736 proceedings[,]" and ordering separation/remand of those claims).

## II.   **If The Panel Centralizes Cases And/Or Claims Against TikTok, TikTok Agrees That The Eastern Or Western District Of Kentucky, Or Alternatively The Middle District Of Florida Or The Northern District of Georgia, Are Appropriate Venues.**

If the Panel nevertheless creates a multi-defendant MDL over the opposition of secondary defendants, TikTok agrees with Meta's position as to alternative venues.

# CONCLUSION

TikTok respectfully requests that the Panel deny Plaintiff's Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 as to cases/claims filed against TikTok, and remand cases naming TikTok back to their original jurisdictions, whether in whole or with claims against TikTok separated and remanded. Finally, if the Panel orders centralization of the "social media addiction/personal injury" cases, TikTok agrees with Meta's position as to alternative venues.

Dated: August 30, 2022                    Respectfully submitted,

<div style="margin-left:40%">

*/s/ Albert Q. Giang*

Albert Q. Giang
California Bar No. 224332
Geoffrey M. Drake
Georgia Bar No. 229229
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310
Email: agiang@kslaw.com
            gdrake@kslaw.com

Andrea Roberts Pierson
Indiana Bar No. 18435-49
Patrick H. Reilly
Indiana Bar No. 28739-49
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: (317) 237-1424
Facsimile: (317) 237-1000
Email: andrea.pierson@faegredrinker.com
            patrick.reilly@faegredrinker.com

*Counsel for TikTok Inc. and ByteDance Inc.*

</div>

# EXHIBIT "C"

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION / PERSONAL INJURY PRODUCT LIABILITY LITIGATION | MDL No. 3047 |

**PLAINTIFF TAWAINNA ANDERSON'S INTERESTED PARTY RESPONSE TO**
**MOTION TO TRANSFER ACTIONS PURSUANT TO 28 U.S.C.§ 1407**

Dated: 9/7/2022

*/s/ Jeffrey P. Goodman*
Jeffrey P. Goodman, Esq.
Saltz Mongeluzzi & Bendesky P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
Email: jgoodman@smbb.com

## I.    Background.

Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson ("Plaintiff Anderson") filed an action in the Eastern District of Pennsylvania on May 12, 2022 against Defendants TikTok, Inc. ("TikTok") and ByteDance, Inc. ("ByteDance") titled *Tawainna Anderson, Individually and as Administratrix of the Estate Nylah Anderson, a deceased minor v. TikTok, Inc. and ByteDance, Inc.*, E.D.P.A. Case No. 2:22-cv-01849 (the "Anderson Action").  Plaintiff Anderson is cognizant of the Panel's August 17, 2022 Order that Responses were due August 30, 2022.  However, Plaintiff Anderson was not provided notice by the plaintiffs moving for transfer and coordination or consolidation, or defendants, including Defendants TikTok and ByteDance who are named Defendants in the Anderson Action, of this potential MDL and thus was not aware of these deadlines until they had passed.  Notwithstanding the August 30, 2022 date for Responses, Plaintiff Anderson respectfully requests the Panel's indulgence to file this Response for the limited purpose of opposing the inclusion of the Anderson Action (and potentially similar actions) in any such potential MDL due to the fundamentally different nature of the Anderson Action from those the plaintiffs are seeking consolidation of here.  Plaintiff Anderson takes no position as to whether the coordination or consolidation sought is proper or improper, only that the Anderson Action is clearly distinct and not subject to inclusion in any potential MDL.

## II.    The Anderson Action is materially distinct from those the plaintiffs are seeking consolidation of here, and does not share common questions of fact or law.

The Anderson Action is a wrongful death action that arises from the death of 10-year-old Nylah Anderson that occurred when she attempted a viral TikTok challenge known as the "Blackout Challenge" that Defendants sent directly to Nylah through her For You Page ("FYP").  *See* Dkt. 63-3, Anderson Action Complaint.  Defendants TikTok's and ByteDance's product—the

TikTok app and its associated algorithm(s)—utilizes a "system that delivers content to each user that is likely to be of interest to that particular user" and "each person's feed [also known as the FYP] is unique and tailored to that specific individual." *Id.* ¶ 3. Defendants' algorithm(s) thus (1) determined the dangerous and deadly Blackout Challenge was likely to be of interest to 10-year-old Nylah Anderson, and (2) sent her the challenge by directly putting it on her FYP. *Id.* ¶ 4. On May 12, 2022, Plaintiff the Anderson Action and brought strict product liability and negligence claims against TikTok and ByteDance, alleging that their product was defective due to the intentional delivery of the dangerous Blackout Challenge video to a 10-year-old who then attempted to mimic what she observed in said video and died. *Id.*

Plaintiff Anderson's claims against TikTok and ByteDance are clearly distinct from the "product liability, negligence, misrepresentation, fraud, unjust enrichment, breach of warranty, and infliction of emotional distress" claims that were brought by the plaintiffs seeking coordination or consolidation herein. *See* Dkt. 1 ¶ 2. The claims that plaintiffs are seeking consolidation or coordination of are those related to allegations that the defendants' "social media products are intentionally designed to be addictive and utilize sophisticated algorithms, and other defectively designed and unreasonably dangerous features, to maximize user time and engagement" causing harm. *Id.* These claims are thus premised on the addictive qualities of the defendants' social media products.

In contrast, Plaintiff Anderson's claims are grounded in allegations that TikTok's and ByteDance's defectively designed product sent a specific harmful video to a child who died as a result. While the Anderson Action alleges that TikTok's and ByteDance's social media product is defectively designed, the factual underpinnings of Plaintiff Anderson's claims are vastly different than those of the plaintiffs seeking transfer and consolidation and thus there are limited,

if any, common questions of law and fact between the Anderson Action and those at issue in this potential MDL.  Although it does not appear that any party believes that actions such as the Anderson Action[1]—discrete wrongful death actions premised on the defective TikTok product sending specific harmful videos to minors—should be included in this potential MDL, Plaintiff Anderson files the instant Interested Party Response to make that clear.

Plaintiff Anderson filed a Notice of Presentation of Oral Argument (Dkt. 66) and respectfully requests the opportunity to explain to the Panel that the Anderson Action should not be swept up in the potential MDL sought by plaintiffs.

Respectfully submitted,

Dated: 9/7/2022

*/s/ Jeffrey P. Goodman*
Jeffrey P. Goodman, Esq.
Saltz Mongeluzzi & Bendesky P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
Email: jgoodman@smbb.com

---

[1] Plaintiff Anderson's undersigned counsel also represents the families of a number of other minor victims who died attempting to mimic dangerous videos sent directly to them by the defective TikTok product, which have not been filed but which are under active investigation.