## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON, a deceased minor,

                    *Plaintiff*,

    vs.

TIKTOK INC. AND BYTEDANCE, INC.,

                    *Defendants.*

Case No.: 2:22-cv-01849-PD

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING TRANSFER TO MDL NO. 3047

Defendants TikTok Inc. and ByteDance Inc. (collectively, "TikTok") respectfully move this Court to stay all proceedings in the above-captioned matter pending resolution of its transfer to *In re: Social Media Adolescent Addiction/Personal Injury Product Liability Litigation*, MDL No. 3047, the multidistrict litigation ("MDL") proceeding established yesterday by the Judicial Panel on Multidistrict Litigation ("JPML" or "the Panel") in the United States District Court for the Northern District of California. *See* Exhibit A, Transfer Order. This action has been identified as a related case, and in accordance with the

JPML's rules, a conditional transfer order from the JPML to transfer this case to the MDL is imminent. *See id*. at 3 n.4 (noting that *Anderson* will be included in the conditional transfer order process).

In light of the October 6 Order, this action should be stayed pending resolution of its transfer to the MDL. The JPML's Transfer Order (1) established an MDL; (2) made clear that the multi-defendant MDL will include other overlapping cases that also name TikTok; (3) explained that the MDL will encompass any "related actions alleging that defendants' social media platforms encourage addiction in adolescents"; and (4) stated that it will be deciding inclusion of non-Meta cases (including *Anderson*) through the established conditional transfer order process. *See generally* Ex. A.

Here, Plaintiff cannot dispute that her Complaint contains more than 20 allegations that TikTok is addictive—and expressly seeks to impose liability on that theory. Plaintiff's product-liability claims are the same as asserted by the actions in the MDL. Ex. A at 2 (describing common allegations of defective design "to maximize user screen time," failure to warn "that their platforms were harmful to minors," lack of "parental controls," and "inadequate[] safeguard against harmful content"). And TikTok's pending Motion to Dismiss raises the same threshold defenses—including federal immunity under the Communications Decency Act and why apps like TikTok are not tangible "products"—which will be decided in

the MDL and about which the JPML wishes to "prevent inconsistent pretrial rulings, including with respect to motions to dismiss." *Id.*

Thus, the very commonalities and efficiencies intended by the JPML's Transfer Order strongly support including this matter in the MDL and staying these proceedings in the meanwhile. A stay would permit the JPML's established conditional transfer order process to occur, will serve the interests of judicial economy, and will result in no prejudice. Conversely, permitting continued litigation in this matter would result in substantial prejudice to TikTok (including duplicative or conflicting discovery and rulings), potentially waste this Court's resources, and certainly undermine the orderly MDL process.

## BACKGROUND

On October 6, 2022, the JPML ordered the transfer of certain social media products liability actions involving TikTok, Meta, Snap, and other platforms to MDL No. 3047 in the United States District Court for the Northern District of California. *See* Ex. A. The Panel assigned the MDL to the Honorable Yvonne Gonzalez Rogers. *Id.* at 3.

The Panel centralized cases presenting "common factual questions arising from allegations that defendants' social media platforms are defective because they are designed to maximize user screen time, which can encourage addictive behavior in adolescents" and that "defendants were aware, but failed to warn the public, that

their platforms were harmful to minors." *Id.* at 2.  The Panel further explained that it was "inclined to believe that the MDL should include the potentially related actions alleging that defendants' social media platforms encourage addiction in adolescents—even if they do not name the Meta defendants."  Ex. A at 2-3 n.4 (discussing "at least four actions that have as defendants Snap, YouTube, and/or TikTok, but not Meta"—including the *Anderson* case).

In other words, the scope of the MDL envisioned by the Panel includes this case.  Here, Plaintiff alleges that "TikTok Defendants' app and algorithm are intentionally designed to maximize user engagement and dependence and powerfully encourage children to engage in a repetitive and dopamine-driven feedback loop."   ECF No. 1 ("Compl.") ¶ 5.  The Complaint's references to addiction are sprawling—including more than 20 separate allegations that TikTok encourages addiction.  Compl. ¶ 5 ("TikTok is . . . promoting addiction."); *id.* ¶ 57 (TikTok "creates addiction"); *see also id.* ¶¶ 58, 107(f), 107(g), 107(h), 107(t), 113, 124, 127(e), 127(f), 127(w), 127(x), 127(y), 127(kk), 131, 134(a), 134(b), 142(j), 165(a), 165(b), 165(j).  Plaintiff also brings strict products liability and negligence claims premised on defective design and failure to warn theories, which undeniably overlap with the claims by MDL plaintiffs. *See id.* ¶¶ 101–134.  By way of example only:

| Common allegations/ questions of fact for MDL | Allegations by Anderson |
|---|---|
| • Allegation of defective design "to maximize user screen time" (Transfer Order, p. 2) | • Allegation of defective design to "encourage maximum engagement and/or participation by users" (Compl. ¶¶ 107(j), 127(aa); *see also id.* ¶¶ 5, 60, 142(j), 165(j)) |
| • Allegation of failure to warn "that their platforms were harmful to minors" (Transfer Order, p. 2) | • Allegation of lack of "adequate warnings" and "the vulnerability of children (Compl. ¶¶ 107(b), (i)) |
| • Allegation of lack of "parental controls" (Transfer Order, p. 2) | • Allegation of lack of "adequate parental control features" (Compl. ¶ 107(c)) |
| • Allegation that platforms "inadequately safeguard against harmful content and/or intentionally amplify harmful and exploitative content" (Transfer Order, p. 3) | • Allegation that platform lacked "necessary safeguards required to prevent circulation of dangerous and deadly videos" (Compl. ¶ 107(d), (e), (p)) |

In light of the common issues of fact between this case and those centralized in MDL No. 3047, this case was identified as related. This case is now pending assignment to a conditional transfer order pursuant to Panel Rule 7.1. The Panel has already indicated that it would take up "[a]rguments concerning the inclusion of [non-Meta cases] . . . through the conditional transfer order process." Ex. A at 3.

Counsel for TikTok sought consent from Plaintiff for this requested stay; Plaintiff has indicated that they will consider TikTok's request but had not provided

a response at the time of filing. The Panel's Transfer Order is a significant development that TikTok wanted to bring to this immediate attention, but TikTok will update the Court with Plaintiff's position once it is known.[1]

## ARGUMENT

Courts in this district routinely grant stays of actions pending their transfer to an MDL. *See, e.g.*, *Deoleo v. United States Liab. Ins. Co.*, 2020 WL 9763085, at *1-2 (E.D. Pa. July 14, 2020) (granting stay); *City of New Castle v. Purdue Pharma L.P.*, 2018 WL 3438841, at *2 (E.D. Pa. July 16, 2018) (granting stay even where plaintiff opposed transfer to an MDL and moved to vacate the conditional transfer order); *Penn. ex rel. Kane v. McGraw-Hill Companies, Inc.*, No. 1:13-CV-605, 2013 WL 1397434, at *1 (M.D. Pa. Apr. 5, 2013). This Court should too. Each of the three stay factors weighs in favor of entering a stay here: "'(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay.'" *Cirulli v. Bausch & Lomb, Inc.*, No. CIV.A 08-4579, 2009 WL 545572, at *2 (E.D. Pa. Mar. 4, 2009) (quoting *Ciolli v. Iravani*, 2008 WL 4412053, at *2 (E.D. Pa. Sept. 23, 2008)).

*First*, a stay would promote judicial economy. A conditional transfer order to transfer this case to the newly created MDL is imminent, and the newly created MDL

---

[1] While the Court declined an earlier request to stay the case before a decision was rendered by the JPML on whether to form an MDL, the procedural posture has materially changed now that the JPML has formed a multi-defendant MDL that includes other overlapping cases that also name TikTok and ByteDance.

court will include TikTok and will decide numerous pre-trial issues that overlap with those in this action.  For instance, the MDL court will address the applicability of immunity under the Communications Decency Act to TikTok and whether platforms are tangible "products" for strict-products liability law.  The MDL court will also set a case management schedule, and to the extent necessary, manage discovery, which would duplicate any work by this Court before transfer.  Ex. A at 3 (explaining that "centralization will allow a single judge to streamline protective orders and other protocols").  Indeed, the MDL was created specifically recognizing the reality that although there may be "individualized factual issues" in some cases, efficiencies would be gained by centralizing these cases for "coordination of briefing and rulings on motions to dismiss, as well as *Daubert* motions."  Ex. A at 2.  And it would waste judicial resources *not* to coordinate this action in the MDL: as the Panel explained, allowing related actions "to proceed separately in various courts would hinder the transferee court's efforts to conduct a single, efficient, coordinated proceeding." Exhibit A at 3.

Whatever "individualized factual issues" may exist in this case, Plaintiff cannot deny her own *repeated* allegations that TikTok is addictive—"TikTok Defendants' app and algorithm are intentionally designed to maximize user engagement and dependence and powerfully encourage children to engage in a repetitive and dopamine-driven feedback loop"—and that a central design defect is

the failure to prevent exposure to harmful content. ECF No. 1 ("Compl.") ¶ 5. Thus, the core theories and a substantial portion of the allegations by Plaintiff are inextricably intertwined with those in suits already a part of the MDL.

For instance, in a suit already included in the MDL, TikTok faces allegations that it and other platforms are addictive, that a minor received harmful content on the defendants' platforms, and that the minor died by suicide because of her exposure to that content. 2d Am. Compl., *Rodriguez v. Meta Platforms, Inc.*, No. 3:22-cv-00401 (N.D. Cal. May 6, 2022), ECF 67. Nor is there anything unique about Plaintiff's allegations that a minor was exposed to a harmful video. All of the addiction cases involve exposure to some kind of allegedly harmful content. Other cases identified as related allege harm from watching videos—including another case presenting allegations about a minor who died after participating in a "Blackout challenge," the same allegations at issue in this suit. *Youngers v. TikTok*, 1:22-cv-00706 (D. N.M. filed Sept. 23, 2022); *see also* Compl. ¶¶ 255–56, *Johnson v. Meta Platforms, Inc.*, No. 1:22-cv-01260 (C.D. Ill. Aug. 2, 2022) (suit against TikTok, Meta, Google, and Snap alleging in part injuries to an adolescent who allegedly hanged himself attempting to replicate a video "featuring a person who pretended to hang themselves").

*Second*, a stay until this action is transferred to the new MDL will not harm either party because this case remains in its infancy—an initial pretrial conference

has not yet been set, neither a discovery schedule nor trial date have been set, and TikTok's motion to dismiss, which would be dispositive of all claims, is still pending.

In contrast, pressing forward with this case—where the Panel has already stated that it is "inclined to believe that the MDL should include the potentially related actions alleging that defendants' social media platforms encourage addiction . . . even if they do not name the Meta defendants" (Ex. A at 2)—will harm TikTok by exposing it to potentially inconsistent or duplicative obligations from this Court and the MDL transferee court. *See Pennsylvania ex rel. Kane v. McGraw-Hill Companies, Inc.*, No. 1:13-CV-605, 2013 WL 1397434, at *4 (M.D. Pa. Apr. 5, 2013) ("Courts often stay proceedings pending action by the JPML to preserve judicial resources and to ensure consistency in the disposition of like matters.").  It will harm both parties by potentially requiring them to spend time continuing to negotiate over a protective order, ESI protocol, or conduct discovery that may be rendered moot when the action is transferred to the MDL.  *See* Ex. A at 3 (explaining that "centralization will allow a single judge to streamline protective orders and other protocols").

*Third*, the stay requested is short. An MDL has already been created to centralize actions like this one.  This matter has already been identified as a related action. And the Panel has stated that it will handle assignment of this case through

the "conditional transfer order process" pursuant to Panel Rules 1.1(h), 7.1, and 7.2. Ex. A at 3.  Accordingly, a briefing schedule will be set and the issue of transfer to the pending MDL will likely be resolved shortly thereafter.

In addition to all factors weighing towards granting a short stay, granting a stay under these circumstances is consistent with decisions by other courts within this district. *See, e.g.*, *Cirulli*, 2009 WL 545572, at *2 (granting stay pending decision on transfer to pending MDL); *City of New Castle v. Purdue Pharma L.P.*, No. CV 18-1472, 2018 WL 3438841, at *2 (E.D. Pa. July 16, 2018) (granting stay even where plaintiff opposed transfer to an MDL and moved to vacate the conditional transfer order).

## CONCLUSION

This Court should stay all proceedings in this Action pending transfer to the MDL that has been established in the United States District Court for the Northern District of California.

Dated: October 7, 2022   Respectfully submitted,

        */s/ Joseph E. O'Neil*

        Joseph E. O'Neil
        Katherine A. Wang
        **CAMPBELL CONROY & O'NEIL, P.C.**
        1205 Westlakes Dr., Suite 330
        Berwyn, PA 19312
        Telephone: (610) 964-1900
        Facsimile: (610) 964-1981
        JONeil@CampbellTrialLawyers.com
        kwang@campbell-trial-lawyers.com

        Geoffrey M. Drake (*Pro Hac Vice*)
        TaCara D. Harris (*Pro Hac Vice*)
        **KING & SPALDING LLP**
        King & Spalding LLP
        1180 Peachtree Street, NE, Suite 1600
        Atlanta, GA 30309
        Telephone: (404) 572-2830
        Facsimile: (404) 572-5100
        gdrake@kslaw.com
        tharris@kslaw.com

        Albert Giang (*Pro Hac Vice*)
        **KING & SPALDING LLP**
        633 West Fifth Street, Suite 1600
        Los Angeles, CA 90071
        Telephone: (213) 443-4355
        Facsimile:  (213) 443-4310
        agiang@kslaw.com

        *Counsel for TikTok Inc. and ByteDance Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of October, 2022, the foregoing was filed electronically through the Court's CM/ECF system, which will send notice of filing to all CM/ECF participants.

*/s/ Joseph E. O'Neil*