# EXHIBIT "A"

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON, a deceased minor** | CASE NO. |
| Plaintiff, | COMPLAINT WITH JURY TRIAL DEMANDED |
| **v.** | |
| **TIKTOK, INC. AND BYTEDANCE, INC.** | |
| Defendants | |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, by her undersigned counsel, and makes the following Complaint against Defendants, TikTok Inc. and ByteDance Inc. (collectively referred to as the "TikTok Defendants"), and alleges as follows:

### INTRODUCTION

1.      On December 7, 2021 10-year-old Nylah Anderson was excruciatingly asphyxiated when she attempted to perform a viral TikTok challenge known as the "Blackout Challenge" which encourages children to choke themselves until passing out.

2.      After Nylah attempted the TikTok challenge and passed out, Plaintiff, Tawainna Anderson, found her young daughter and rushed her to the hospital. Nylah suffered in the pediatric intensive care unit for several days until she tragically succumbed to her injuries and died on December 12, 2021.

3.      The viral and deadly TikTok Blackout Challenge was thrust in front of Nylah on her TikTok For You Page ("FYP") as a result of TikTok's algorithm which, according to the

1

TikTok Defendants, is "a recommendation system that delivers content to each user that is likely to be of interest to that particular user…each person's feed is unique and tailored to that specific individual."[1]

4.      ***The TikTok Defendants' algorithm determined that the deadly Blackout Challenge was well-tailored and likely to be of interest to 10-year-old Nylah Anderson, and she died as a result.***

5.      Plaintiff brings this strict product liability and negligence action against the TikTok Defendants to hold them accountable for their dangerously defective product—the TikTok app and its algorithm—and the TikTok Defendants' own direct negligent conduct.

6.      Plaintiff does not seek to hold the TikTok Defendants liable as the speaker or publisher of third-party content and instead intends to hold the TikTok Defendants responsible for their own independent conduct as the designers, programmers, manufacturers, sellers, and/or distributors of their dangerously defective social media products and for their own independent acts of negligence as further described herein.  Thus, Plaintiffs claims fall outside of any potential protections afforded by Section 230(c) of the Communications Decency Act.

## PARTIES

7.      Plaintiff, Tawainna Anderson ("Plaintiff"), is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 2319 Bethel Road, Chester, Pennsylvania 19013.

8.      At all times relevant hereto, Plaintiff was the mother of 10-year-old Nylah Anderson.

9.      On April 7, 2022, Plaintiff was appointed as Administratrix of the estate of Nylah Anderson by the Register of Probate and Wills in and for County of Delaware in the

---

[1] https://newsroom.tiktok.com/en-us/how-tiktok-recommends-videos-for-you/

2

Commonwealth of Pennsylvania.  *See* **Exhibit A**, Letters of Administration.

10.    Nylah Anderson is survived by her mother, Plaintiff Tawainna Anderson, her brothers, Nakye Anderson and Kevin Freeman Lamarr Neal III, as well as potentially her biological father.

11.    Nylah was an active, happy, healthy, and incredibly intelligent child.  Though only 10 years old, Nylah spoke three languages.



12.    Defendant, TikTok, Inc., is a corporation organized and existing under the laws of the State of California with its principal place of business located at 5800 Bristol Parkway, Culver City, California 90230.

13.    At all times relevant hereto, Defendant TikTok Inc. has carried out, and continues to carry out, substantial, continuous, and systematic business activities within the Commonwealth of Pennsylvania, and has purposely established significant contacts within Pennsylvania.

14.    Plaintiff's claims and the injuries and damages alleged herein arise directly out of, and are related to, Defendant TikTok Inc.'s contacts and activities in the Commonwealth of Pennsylvania.

15.    At all times relevant hereto, Defendant TikTok Inc. was acting by and through its

3

employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of TikTok Inc.

16.     Defendant, ByteDance Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 250 Bryant Street, Mountain View, California 94041.

17.     At all times relevant hereto, Defendant ByteDance Inc. has carried out, and continues to carry out, substantial, continuous, and systematic business activities within the Commonwealth of Pennsylvania, and has purposely established significant contacts within Pennsylvania.

18.     Plaintiff's claims and the injuries and damages alleged herein arise directly out of, and are related to, Defendant ByteDance Inc.'s contacts and activities in the Commonwealth of Pennsylvania.

19.     At all times relevant hereto, Defendant ByteDance Inc. was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of ByteDance Inc.

20.     Upon information and belief, at all times relevant hereto, the TikTok Defendants were the designers, programmers, manufacturers, distributors, sellers, suppliers, operators, managers, and/or were otherwise responsible for the operation of the TikTok app and its associated algorithms.

### JURISDICTION AND VENUE

21.     This Court has specific jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and because the TikTok Defendants each have certain

minimum contacts with the Commonwealth of Pennsylvania such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice, and because the injuries and damages alleged herein arise directly out of, and are related to, Defendants' contacts and activities in the Commonwealth of Pennsylvania.

22.    Plaintiff's decedent, Nylah Anderson, downloaded the TikTok app on her smartphone in Pennsylvania, relying on the TikTok Defendants' assurances that the app was safe to use.

23.    Plaintiff's decedent, Nylah Anderson, created her TikTok app user profile in Pennsylvania.

24.    Plaintiff's decedent, Nylah Anderson, first viewed the dangerous content associated with the TikTok Blackout Challenge while in Pennsylvania.

25.    Plaintiff's decedent, Nylah Anderson, used the TikTok app on her smartphone in Pennsylvania, including on the date she attempted the viral TikTok Blackout Challenge.

26.    The TikTok Defendants' algorithm delivered the dangerous and deadly viral TikTok Blackout Challenge directly to Nylah's FYP on her phone in Pennsylvania.

27.    The TikTok Defendants' contacts and activities in Pennsylvania directly gave rise to the injuries and damages suffered by Nylah Anderson, her estate, and her beneficiaries, as alleged herein, as the TikTok Defendants' algorithm presented Nylah Anderson with the deadly challenge which ultimately led to her death in Pennsylvania, and this Court thus has specific personal jurisdiction over the TikTok Defendants in this action.

28.    There is specific personal jurisdiction over the TikTok Defendants pursuant to Pennsylvania's long arm statute, 42 Pa.C.S. § 5322.

29.    Venue is proper in the United States District Court of the Eastern District of

Pennsylvania pursuant to 28 U.S.C. § 1391(b) as a substantial portion of the acts, omissions, and events giving rise to Plaintiff's claim occurred in and around this district.

### FACTUAL ALLEGATIONS

**A.  The TikTok App Becomes a Global Phenomenon With a Strong Presence in the United States**

30.     The TikTok app has become "one of the world's fastest-growing social media platforms" and a "global phenomenon" with a massive American audience.[2]  In November 2019, the *Washington Post* reported that the TikTok app had been downloaded more than 1.3 billion times worldwide and more than 120 million times in the United States.[3]  However, by April 2020, *TechCrunch* reported that the TikTok app's worldwide downloads already had surpassed 2 billion, and that in "the quarter that ended on March 31, TikTok was downloaded 315 million times — the highest number of downloads for any app in a quarter."[4]

31.     TikTok is the most downloaded non-game app in the world.[5]  The TikTok app routinely outranks its top competitors – such as Facebook, Snapchat, and Instagram – on the Apple and Google app stores.[6]  In fact, it has been the most downloaded app on the Apple and Google app stores for months.[7]  The average user opened the TikTok app more than 8 times per day and spent approximately 45 minutes on the app daily as of March 2019.[8]  Its popularity and use has skyrocketed since March 2019 and its daily usage numbers today dwarf those from March 2019.

---

2 https://www.washingtonpost.com/technology/2019/11/05/inside-tiktok-culture-clash-whereus-views-about-censorship-often-were-overridden-by-chinese-bosses/.

3 https://www.washingtonpost.com/technology/2019/11/05/inside-tiktok-culture-clash-whereus-views-about-censorship-often-were-overridden-by-chinese-bosses/.

4 https://techcrunch.com/2020/04/29/tiktok-tops-2-billion-downloads/.

5 https://www.cnbc.com/2019/07/25/china-camera-apps-may-open-up-user-data-to-beijinggovernment-requests.html.
6 https://www.washingtonpost.com/technology/2019/11/05/inside-tiktok-culture-clash-whereus-views-about-censorship-often-were-overridden-by-chinese-bosses/.

7 https://thehill.com/policy/technology/469114-tiktok-faces-lawmaker-anger-over-china-ties.

8 https://www.wsj.com/articles/tiktoks-videos-are-goofy-its-strategy-to-dominate-social-mediais-serious-11561780861.

32.     In January 2020, *Barron's* reported on the TikTok app's revenue: "The wildly popular short-video service generated $176.9 million in revenue in 2019—71% of the total $247.6 million in revenue the app has ever generated, according to new data from the app-tracking firm SensorTower. In the fourth quarter alone, TikTok had revenue of $88.5 million, up two times from the third quarter and up six times year over year, most of that from advertising and in-app purchases, SensorTower reports. China accounted for about 69% of the company's 2019 revenue, according to the firm, with U.S. revenues accounting for 20%."[9]

33.     Evidencing the TikTok app's rapid growth, three months later, *TechCrunch* reported that: "Users have spent about $456.7 million on TikTok to date, up from $175 million five months ago.  Users in the U.S. have spent about $86.5 million on the app, making the nation the second most important market for TikTok from the revenue standpoint."[10]

34.     In 2021, TikTok reported that it had 1 billion active global users,[11] and revenues of $4.6 billion.[12]

35.     Alarmingly, estimated age demographics show that a staggering 28 percent of TikTok's users are under the age of 18.[13]

36.     More precise data on the average age of users is known to the TikTok defendants but not disclosed to the public or government agencies.

**C.     The TikTok Defendants' App and Algorithm**

37.     TikTok is a video sharing social media app and product which allows and encourages users to create, share, and view short video clips.

---

[9] https://www.barrons.com/articles/beware-facebook-tiktok-revenues-are-exploding51579201752.
[10] https://techcrunch.com/2020/04/29/tiktok-tops-2-billion-downloads/.
[11] https://www.cnbc.com/2021/09/27/tiktok-reaches-1-billion-monthly-users.html
[12] https://www.businessofapps.com/data/tik-tok-statistics/
[13] *Id.*

38.     TikTok users who open the TikTok app are immediately confronted with an endless stream of curated videos selected by the TikTok Defendants' proprietary algorithm and shown to users on their FYP which is a "defining feature of the TikTok platform[.]"[14]

39.     According to the TikTok Defendants, the FYP is "central to the TikTok experience and where most of our users spend their time."[15]

40.     The TikTok Defendants' algorithm selects which videos are shown to each user based on the user's demographics, ***including age***, user interactions such as the videos viewed and shared, and the seemingly limitless amount of metadata tied to each user's digital presence and device settings which is collected and analyzed by the TikTok Defendants.

41.     The TikTok Defendants' algorithm "delivers content to each user that is likely to be of interest to that particular user."[16]  The TikTok Defendants boast that "while different people may come upon some of the same standout videos, each person's feed is unique and tailored to that specific individual."[17]

42.     The TikTok Defendants claim that their algorithm is "designed with safety as a consideration." "Reviewed content found to depict things like graphic medical procedures or legal consumption of regulated goods…may not be eligible for recommendation." [18]

43.     The TikTok Defendants' app and algorithm have created an environment in which TikTok "challenges" are widely promoted.

---

[14] https://newsroom.tiktok.com/en-us/how-tiktok-recommends-videos-for-you/
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

44.     TikTok "challenges" involve users filming themselves engaging in behavior that mimics and often times "one-ups" other users posting videos performing the same or similar conduct.  These TikTok "challenges" routinely involve dangerous or risky conduct.

45.     The TikTok Defendants' algorithm presents these often-dangerous "challenges" to users on their FYP and encourages users to create, share, and participate in the "challenge."

46.     There have been numerous dangerous TikTok challenges that the TikTok Defendants' app and algorithm have caused to spread rapidly, which promote dangerous behavior, including:

- *Fire Mirror Challenge* – involves participants spraying shapes on their mirror with a flammable liquid and then setting fire to it.
- *Orbeez Shooting Challenge* – involves participants shooting random strangers with tiny water-absorbent polymer beads using gel blaster guns
- *Milk Crate Challenge* – involves participants stacking a mountain of milk crates and attempting to ascend and descend the unstable structure without falling
- *Penny Challenge* – involves sliding a penny behind a partially plugged-in phone charger
- *Benadryl Challenge* – involves consuming a dangerous amount of Benadryl in order to achieve hallucinogenic effects
- *Skull Breaker Challenge* – involves users jumping in the air while friends kick their feet out from underneath them, causing the users to flip in the air and fall back on their head
- *Cha-Cha Slide Challenge* – involves users swerving their vehicles all over the road to the famous song by the same name
- *Dry Scoop Challenge* – involves users ingesting a heaping scoop of undiluted supplemental energy powder
- *Nyquil Chicken Challenge* – involves soaking chicken breast in cough medicine like Nyquil and cooking it, boiling off the water and alcohol in it and leaving the chicken saturated with a highly concentrated amount of drugs in the meat
- *Tooth Filing Challenge* – involves users filing down their teeth with a nail file
- *Fax Wax Challenge* – involves users covering their entire face, including their eyes, with hot wax before ripping it off
- *Coronavirus Challenge* – involves users licking random items and surfaces in public during the midst of the global COVID-19 pandemic

- ***Scalp Popping Challenge*** – involves users twisting a piece of hair on the crown of someone's head around their fingers and pulling upward, creating a "popping" effect on their scalp
- ***Nutmeg Challenge*** – involves users consuming dangerously large amounts of nutmeg with the aim of achieving an intoxicating high
- ***Throw it in the Air Challenge*** – involves users standing in a circle looking down at a cellphone on the ground as someone throws an object into the air, and the goal is to not flinch as you watch the object fall on one of the participant's heads
- ***Corn Cob Challenge*** – involves users attaching a corn cob to a power drill and attempting to each the corn as it spins
- ***Gorilla Glue Challenge*** – involves users using a strong adhesive to stick objects to themselves
- ***Kiki Challenge*** – involves users getting out of moving vehicles to dance alongside in the roadway
- ***Salt and Ice Challenge*** – involves users putting salt on their skin and then holding an ice cube on the spot for as long as possible, creating a chemical reaction that causes pain and can lead to burns
- ***Snorting Challenge*** – involves users snorting an entire latex condom into their nose before pulling it out of their mouth
- ***Hot Water Challenge*** – involves users pouring boiling hot water on someone else
- ***Fire Challenge*** – involves users dousing themselves in a flammable liquid and then lighting themselves on fire

47.    One of the deadliest TikTok Challenges to make its rounds on the TikTok Defendants' app and be promoted to users by their FYP algorithm is the TikTok Blackout Challenge, which encourages users to choke themselves with belts, purse strings, or anything similar until passing out.

48.    10-year-old Nylah Anderson died from attempting the Blackout Challenge because the TikTok Defendants' dangerously defective app and algorithm determined that the Blackout Challenge was "tailored" and "likely to be of interest" to Nylah.

**C.    The TikTok Defendants Knew the Deadly Blackout Challenge Had Killed Multiple Children**

49.    Tragically, Nylah Anderson is just the latest in a growing list of children killed as a result of the TikTok Defendants' app and algorithm determining it is appropriate to promote the dissemination of the deadly Blackout Challenge to kids.

50.    On January 21, 2021, a 10-year-old girl in Italy died after the TikTok Defendants' app and algorithm recommended the Blackout Challenge to her vis-à-vis her FYP.  According to Italian news reports, after the young girl saw the Blackout Challenge on her TikTok app, she tied a belt around her neck and choked herself, causing her to go into cardiac arrest.  She was rushed to the hospital but was declared braindead upon arrival and ultimately died.

51.    On March 22, 2021, a 12-year-old boy, Joshua Haileyesus, died after attempting the Blackout Challenge that the TikTok Defendants' app and algorithm recommended to him through his FYP.  Joshua was discovered breathless and unconscious by his twin brother and ultimately died after 19 days on life support.  Joshua attempted the Blackout Challenge by choking himself with a shoelace.

52.    On June 14, 2021, a 14-year-old boy died in Australia while attempting to take part in TikTok's Blackout Challenge after the TikTok Defendants' app and algorithm presented the deadly challenge to him through his FYP.

53.    In July 2021, a 12-year-old boy died in Oklahoma while attempting the Blackout Challenge after the TikTok Defendants' app and algorithm recommended the dangerous and deadly video to him through his FYP.

54.    The TikTok Defendants unquestionably knew that the deadly Blackout Challenge was spreading through its app and that its algorithm was specifically feeding the Blackout Challenge to children, including those who had died.

55.     The TikTok Defendants knew or should have known that failing to take immediate and significant action to extinguish the spread of the deadly Blackout Challenge would result in more injuries and deaths, especially among children, as a result of their users attempting the viral challenge.

56.     The TikTok Defendants knew or should have known that their products—the app and algorithm—were dangerously defective and in need of immediate and significant change to prevent users, especially children, from being shown dangerous challenges that were known to have killed children.

57.     The TikTok Defendants knew or should have known that a failure to take immediate and significant corrective action would result in an unreasonable and unacceptable risk that additional users, and additional children, would fall victim to the deadly Blackout Challenge.

58.     Despite this aforementioned knowledge, the TikTok Defendants outrageously took no and/or completely inadequate action to extinguish and prevent the spread of the Blackout Challenge and specifically to prevent the Blackout Challenge from being shown to children on their FYP despite knowing that such a failure would inevitably lead to more injuries and deaths, including those of children.

59.     Despite this aforementioned knowledge, the TikTok Defendants outrageously failed to change, update, and/or correct their algorithm to prevent it from presenting users, specifically children, with the dangerous and deadly Blackout Challenge despite knowing that such a failure would inevitably lead to more injuries and deaths, including those of children.

60.     The TikTok Defendants failed to take the necessary corrective action because it would result in less user engagement on the app and thus less corporate profits.

61.     The TikTok Defendants prioritized greater corporate profits over the health and safety of its users, and specifically over the health and safety of vulnerable children.

**E.     Nylah Anderson's Fatal TikTok Experience**

62.     Nylah Anderson was a bright, active, and innocent 10-year-old girl who fell victim to the TikTok Defendants' predatory and manipulative app and algorithm.

63.     Prompted by the never-ending stream of notifications from the TikTok app that were pushed to the forefront of Nylah's attention every day, Nylah began attempting to TikTok challenges that were presented to her on her FYP.

64.     The TikTok Defendants' app and algorithm pushed exceedingly and unacceptably dangerous challenges and videos to Nylah's FYP, thus encouraging her to engage and participate in the challenges.

65.     Only days before Nylah attempted the Blackout Challenge that killed her, the TikTok Defendants' algorithm presented Nylah with a similar choking challenge through her FYP, which entailed placing plastic wrap around her neck and holding her breath until a euphoric effect was achieved.

66.     The following day, the TikTok Defendants' algorithm thrust the Blackout Challenge onto Nylah's FYP, encouraging Nylah to participate.

67.     The particular Blackout Challenge video that the TikTok Defendants' algorithm showed Nylah prompted Nylah to hang a purse from a hanger in her closet and position her head between the bag and shoulder strap and then hang herself until blacking out.

68.     On December 7, 2021 Nylah attempted the Blackout Challenge she had seen on her FYP in her mother's bedroom closet while her mother was downstairs.

69. Tragically, after hanging herself with the purse as the video the TikTok Defendants put on her FYP showed, Nylah was unable to free herself. Nylah endured hellacious suffering as she struggled and fought for breath and slowly asphyxiated until near the point of death.

70. Plaintiff, Tawainna Anderson, found her daughter unconscious and hanging in her bedroom closet by her neck from the purse strap.

71. Plaintiff performed several rounds of emergency CPR on Nylah in an ultimately futile effort to resuscitate her as Plaintiff waited for emergency responders to arrive.

72. Three deep ligature marks were found on Nylah's neck, suggesting that she struggled greatly to free herself from the perilous and terrifying position but was unable to do so.

73. Nylah was emergently transported to Nemours DuPont Hospital in Delaware with the hope that she could survive the extreme injuries she sustained in this horrific event.

74. After spending several days in the pediatric intensive care unit, all hope for Nylah was extinguished and on December 12, 2021, 10-year-old Nylah Anderson succumbed to her injuries and died.

75. This tragedy and the unimaginable suffering endured by Plaintiff and Nylah's family was entirely preventable had the TikTok Defendants not ignored the health and safety of its users, particularly the children using their product, in an effort to rake in greater profits.

76. The TikTok Defendants' intentionally manipulative app and algorithm thrust an unacceptably dangerous video that Defendants knew to be circulating its platform in front of an impressionable 10-year-old girl.

77. As a direct result of the TikTok Defendants' corrosive marketing practices, Nylah attempted the dangerous challenge and died as a result.

14

78.     As a direct and proximate result of the Defendants' carelessness, negligence, gross negligence, recklessness, willful and wanton conduct, strict liability, failure to warn, and defective design, Nylah suffered serious, severe, disabling injuries including, but not limited to her death resulting from asphyxiation by strangulation.

79.     As a direct and proximate result of the Defendants' carelessness, negligence, gross negligence, recklessness, willful and wanton conduct, strict liability, failure to warn, and defective design, which resulted in the death of Nylah Anderson, her beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling, and loss of guidance.

80.     As a direct and proximate result of the Defendants' carelessness, negligence, gross negligence, recklessness, willful and wanton conduct, strict liability, failure to warn, and defective design, Nylah Anderson's beneficiaries incurred or have been cause to incur and pay large and various expenses for various funeral, burial, and estate administration expenses for which Plaintiff is entitled to compensation.

81.     As a direct and proximate result of the Defendants' carelessness, negligence, gross negligence, recklessness, willful and wanton conduct, strict liability, failure to warn, and defective design, Plaintiff claims all damages suffered by the Estate of Nylah Anderson and her wrongful death beneficiaries by reason of the death of Nylah Anderson, including, without limiting the generality thereof, the following: the severe injuries to Nylah which resulted in her death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Nylah suffered prior to her death; the loss of future earning capacity suffered by Nylah from the date of her death until the time in the future that she would have lived had she not

died as a result of the injuries she sustained; and the loss and total limitation and deprivation of her normal activities, pursuits and pleasures from the date of her death until such time in the future as she would have lived had she not died as a result of the injuries sustained by reason of the Defendants' carelessness, negligence, gross negligence, recklessness, strict liability, failure to warn, and defective design.

82.     As a direct and proximate result of the Defendants' carelessness, negligence, gross negligence, recklessness, willful and wanton conduct, strict liability, failure to warn, and defective design, Plaintiff, Tawainna Anderson, has been forced to suffer the death and loss of her 10-year-old daughter, Nylah Anderson.

83.     Defendants are jointly and severally liable for the injuries and damages alleged herein.

## COUNT I – STRICT PRODUCTS LIABILITY

## TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON v. TIKTOK INC. AND BYTEDANCE INC.

84.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs the same as though fully set forth herein.

85.     The TikTok Defendants' app and the algorithm that determines the videos and content that each user, including Nylah Anderson, sees is a product that is downloaded and used by hundreds of millions, if not billions, of people across the world, including young children like Nylah Anderson.

86.     The TikTok app and its algorithm are designed, developed, programmed, manufactured, marketed, sold, supplied, distributed, operated, and/or managed by the TikTok Defendants.

87.     Plaintiff is not seeking to hold the TikTok Defendants liable for the as the speaker or publisher of third-party content and instead intends to hold the TikTok Defendants responsible for their own independent conduct as the designers, programmers, manufacturers, sellers, and/or distributors of their dangerously defective TikTok app and algorithm.  Thus, Plaintiffs claims fall outside of any potential protections afforded by Section 230(c) of the Communications Decency Act.

88.     The TikTok Defendants, by and through their agents, servants, workers, contractors, designers, developers, programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister corporations, parent companies, successor corporations and/or predecessor corporations, are strictly liable under § 402A of the Restatement (Second) of Torts because:

       a.      Defendants are engaged in the business of designing, developing, programming, manufacturing, selling, marketing, supplying, and/or distributing app products and algorithms, like the TikTok app and its associated algorithm;

       b.      The TikTok app and algorithm which caused Plaintiff's decedent's death and injuries was designed, created, programmed, developed, marketed, and placed in the general stream of commerce by Defendants;

       c.      The TikTok app and algorithm was expected to and did reach users such as Nylah Anderson without substantial change in the condition in which it was designed, developed, programmed, manufactured, marketed, distributed and/or sold;

       d.      The TikTok app and algorithm was designed, developed, programmed, manufactured, marketed, distributed and/or sold in the defective condition(s) for the reasons set forth herein.

89.     The TikTok app and its algorithm were in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the subject product outweigh the burden or costs of taking precautions.

90.     The TikTok Defendants, by and through their agents, servants, workers, contractors, designers, developers, programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister corporations, parent companies, successor corporations and/or predecessor corporations, are strictly liable under § 402A of the Restatement (Second) of Torts, by:

   a.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) in a defective condition;

   b.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) without adequate warnings;

   c.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) without adequate parental control features;

   d.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was not equipped, programmed with, or developed with the necessary safeguards required to prevent circulation of dangerous and deadly videos, including but not limited to the Blackout Challenge;

   e.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was not equipped, programmed with, or developed with the necessary safeguards required to prevent circulation of dangerous and deadly videos, including but not limited to the Blackout Challenge despite knowing that a failure to equip, program, or develop the app and algorithm with such safeguards would result in severe injury and/or death to users, including children;

   f.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was intended to manipulate users into participating in dangerous and deadly challenges, including but not limited to the Blackout Challenge;

   g.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was intended to manipulate users into participating in dangerous and deadly challenges, including but not limited to the Blackout Challenge despite knowing that this would lead to severe injuries and/or death to users, including children;

18

h.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that preyed upon the vulnerability of children;

i.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was intended to manipulate and/or encourage maximum engagement and/or participation by users;

j.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that recommended inappropriate, dangerous, and deadly videos to users, including but not limited to the Blackout Challenge, through users' FYP;

k.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) which lacked all the necessary safety features to protect users, including Nylah Anderson;

l.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) for which the risks of use far outweighed the utility thereof;

m.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was unreasonably dangerous for its intended and foreseeable uses and/or misuses and to its intended and foreseeable users, including Nylah Anderson;

n.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that promoted the circulation of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge;

o.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was incapable of preventing the circulation of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge;

p.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that recommended dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to young children, including Nylah Anderson;

q.   Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that recommended dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to young children, including Nylah Anderson despite knowing that this would lead to severe injury and/or death;

19

r.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was not safe for its intended and represented purposes;

s.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that presents inappropriate, dangerous and/or deadly videos and challenges on users' FYP, including Nylah Anderson's FYP;

t.    Despite having actual knowledge of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, circulating its app and platform and said videos and challenges causing serious injuries and/or deaths, failing to assess the risks of the product and adopt available, reasonable, and feasible alternatives;

u.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that lacked all the necessary safety features to protect users, including Nylah Anderson;

v.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that malfunctioned by recommending dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to users, including children like Nylah Anderson;

w.    Failing to warn users of the risks associated with the product (the TikTok app and its algorithm);

x.    Failing to warn users of the risks associated with dangerous and deadly videos and challenges circulating the TikTok app and recommended to users, including Nylah Anderson, through their FYP;

y.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) the risks and hazards of which far outweighed any utility or benefit of the product (i.e. in violation of the risk-utility test);

z.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that lacked reasonable, available, and feasible alternative designs that would have made the product safer for users, including Nylah Anderson; and

aa.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) the risks of which were unknown or unknowable to the consumer (i.e., in violation of the consumer expectations test).

91.    By conducting themselves as set forth above, the TikTok Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm that caused Plaintiff's decedent's injuries and death.

20

92.     By reason of the breach of duties, pursuant to § 402A of the Restatement (Second) of Torts, by the TikTok Defendants, by and through their agents, servants, workers, contractors, designers, developers, programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister corporations, parent companies, successor corporations and/or predecessor corporations, Nylah Anderson was caused to sustain severe and permanent disabling injuries resulting in her death as set forth above.

93.     The TikTok Defendants designed, developed, programmed, manufactured, sold, marketed, supplied, and/or distributed a product (the TikTok app and its algorithm) the risks and hazards of which far outweighed its utility or benefit, thus violating the risk-utility test set forth in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014) and its progeny, as well as Restatement (Second) of Torts § 402A.

94.     The TikTok Defendants designed, developed, programmed, manufactured, sold, marketed, supplied, and/or distributed a product (the TikTok app and its algorithm) the risks of which were unknown or unknowable to the consumer and for which the consumer would not reasonably anticipate or appreciate the dangerous condition in violation of the consumer expectations test set forth in *Tincher*, 104 A.3d 328 and its progeny, as well as Restatement (Second) of Torts § 402A.

95.     The safety of the public and the users of the TikTok app, particularly children, must come first and be the paramount concern and consideration in the design, development, programming, supply, and distribution of Defendants' app and algorithm.

96.     The TikTok Defendants knew that dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, were circulating its app and being recommended to users by the Defendants' algorithm on users' FYP.

97.     The TikTok Defendants knew that children were dying from attempting to participate in dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, that Defendants' algorithm was recommending to them through the children's FYPs.

98.     The TikTok Defendants outrageously prioritized revenues and profits over the health and safety of its users, particularly children like Nylah Anderson.

**WHEREFORE**, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, claims of Defendants, TikTok Inc. and ByteDance Inc., jointly and severally, sums in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT II – NEGLIGENCE

### TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON v. TIKTOK INC. AND BYTEDANCE INC.

99.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs the same as though fully set forth herein.

100.    The TikTok Defendants had a duty to design, develop, program, manufacture, distribute, sell, supply, and/or operate their app and algorithm such that it did not expose users to harm, injury, and/or death.

101.    The TikTok Defendants had a duty to monitor the videos and challenges shared, posted, and/or circulated on their app and platform to ensure that dangerous and deadly videos and challenges were not posted, shared, circulated, recommended, and/or encouraged.

102.    The TikTok Defendants had a duty to monitor and evaluate the performance of their algorithm and ensure that it was not recommending or posting dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to users' FYP.

103.    The TikTok Defendants had a duty to employ and train personnel to appropriately and reasonably respond to notice that dangerous and deadly videos and challenges were being posted, shared, and/or circulated on Defendants' app.

104.    The TikTok Defendants had a duty to protect vulnerable users of their product, specifically children like Nylah Anderson.

105.    The TikTok Defendants had a duty to design, develop, program, manufacture, distribute, sell, supply, and/or operate their app and algorithm such that it did not manipulate users and/or otherwise encourage them to engage in dangerous and potentially deadly videos and challenges.

106.    The TikTok Defendants miserably failed these aforementioned duties and as a result Nylah Anderson was killed.

107.    Plaintiff does not seek to hold the TikTok Defendants liable as the speaker or publisher of third-party content and instead intends to hold the TikTok Defendants responsible for their own independent conduct as the designers, programmers, manufacturers, sellers, and/or distributors of their dangerously defective social media products and for their own independent acts of negligence, gross negligence, carelessness, recklessness, and willful and wanton conduct as further described herein.  Thus, Plaintiffs claims fall outside of any potential protections afforded by Section 230(c) of the Communications Decency Act.

108.    The injuries, damages and losses suffered by Plaintiff and Plaintiff's decedent, Nylah Anderson, and her beneficiaries, as more fully set forth herein, were caused by the

negligence, gross negligence, carelessness, recklessness, willful and wanton conduct of the TikTok

Defendants, by and through their agents, servants, workers, contractors, designers, developers,

programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister

corporations, parent companies, successor corporations and/or predecessor corporations, both

generally and in the following particular respects:

a. Recommending and/or posting dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to users' FYP, including Nylah Anderson's FYP;

b. Allowing dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to be posted, shared, and/or circulated to users on the TikTok app;

c. Creating an algorithm that recommended and/or posted dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to 10-year-old Nylah Anderson's FYP;

d. Failing to prevent dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, from being posted, shared, and/or circulated to users on the TikTok app despite being actually aware of said videos and challenges and despite knowing that such a failure would expose users, including children like Nylah Anderson, to the unreasonable and unacceptable risk of severe injury and/or death;

e. Creating a digital environment in which the risks of dangerous videos and challenges, including but not limited to the Blackout Challenge, are hidden and/or downplayed and in which users are encouraged to participate in dangerous videos and challenges;

f. Failing to timely remove all dangerous and deadly videos and challenges from its app, including but not limited to the Blackout Challenge;

g. Hiring and/or employing personnel who were unfit, untrained, and/or incapable of operating and/or managing the TikTok app and its algorithm to ensure that dangerous and potentially deadly videos and challenges were not posted, shared, or circulated to users on the app;

h. Failing to adequately train, educate, and/or supervise its employees, contractors, agents, and/or servants such that they were capable of operating and/or managing the TikTok app and its algorithm to ensure that dangerous and potentially deadly videos and challenges were not posted, shared, or circulated to users on the app;

i. Failing to remove dangerous and deadly videos and challenges from the TikTok app despite knowing that users were being encouraged to engage in dangerous and deadly actions and despite knowing that users were being

24

exposed to and actually suffering severe injury and death, including children such as Nylah Anderson;

j.     Manipulating and socially programming users, including children like Nylah Anderson, to engage in certain desired activities and engagement on the TikTok app in order to maximize corporate revenues and profits;

k.     Developing, enacting, promulgating, and enforcing policies and procedures which allowed dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to be posted, shared, and circulated on the app;

l.     Developing, enacting, promulgating, and enforcing policies and procedures which prevented the discovery of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, that were being posted, shared, and circulated to users on the app;

m.     Developing, enacting, promulgating, and enforcing policies and procedures which prevented the timely takedown of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge;

n.     Developing, enacting, promulgating, and enforcing policies and procedures which resulted in dangerous and deadly videos, including but not limited to the Blackout Challenge, being recommended to users through their FYP;

o.     Failing to prevent videos of the Blackout Challenge from being posted, shared, circulated, and/or recommended to users, including Nylah Anderson, through their FYP despite knowing that multiple people, including children, had been killed after attempting to participate in the challenge they had seen and/or were recommended on the TikTok app;

p.     Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) in a defective condition;

q.     Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) without adequate warnings;

r.     Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was not equipped, programmed with, or developed with the necessary safeguards required to prevent circulation of dangerous and deadly videos, including but not limited to the Blackout Challenge;

s.     Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was not equipped, programmed with, or developed with the necessary safeguards required to prevent circulation of dangerous and deadly videos, including but not limited to the Blackout Challenge despite knowing that a failure to equip, program, or develop the app and algorithm with such

safeguards would result in severe injury and/or death to users, including children;

t.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was intended to manipulate users into participating in dangerous and deadly challenges, including but not limited to the Blackout Challenge;

u.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was intended to manipulate users into participating in dangerous and deadly challenges, including but not limited to the Blackout Challenge despite knowing that this would lead to severe injuries and/or death to users, including children;

v.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that preyed upon the vulnerability of children;

w.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was intended to manipulate and/or encourage maximum engagement and/or participation by users;

x.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that recommended inappropriate, dangerous, and deadly videos to users, including but not limited to the Blackout Challenge, through users' FYP;

y.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) which lacked all the necessary safety features to protect users, including Nylah Anderson;

z.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) for which the risks of use far outweighed the utility thereof;

aa.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was unreasonably dangerous for its intended and foreseeable uses and/or misuses and to its intended and foreseeable users, including Nylah Anderson;

bb.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that promoted the circulation of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge;

cc.    Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was

incapable of preventing the circulation of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge;

dd.  Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that recommended dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to young children, including Nylah Anderson;

ee.  Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that recommended dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to young children, including Nylah Anderson despite knowing that this would lead to severe injury and/or death;

ff.  Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that was not safe for its intended and represented purposes;

gg.  Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that presents inappropriate, dangerous and/or deadly videos and challenges on users' FYP, including Nylah Anderson's FYP;

hh.  Despite having actual knowledge of dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, circulating its app and platform and said videos and challenges causing serious injuries and/or deaths, failing to assess the risks of the product and adopt available, reasonable, and feasible alternatives;

ii.  Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that lacked all the necessary safety features to protect users, including Nylah Anderson;

jj.  Designing, developing, programming, manufacturing, selling, supplying, and/or distributing a product (the TikTok app and its algorithm) that malfunctioned by recommending dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, to users, including children like Nylah Anderson;

kk.  Failing to warn users of the risks associated with the product (the TikTok app and its algorithm);

ll.  Failing to warn users of the risks associated with dangerous and deadly videos and challenges circulating the TikTok app and recommended to users, including Nylah Anderson, through their FYP;

109.    By conducting themselves as set forth above, the TikTok Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm that caused Plaintiff's decedent's injuries and death.

110.    By reason of the TikTok Defendants' carelessness, negligence, gross negligence, recklessness, and willful and wanton conduct, by and through their agents, servants, workers, contractors, designers, developers, programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister corporations, parent companies, successor corporations and/or predecessor corporations, Nylah Anderson was caused to sustain severe and permanent disabling injuries resulting in her death as set forth above.

111.    The safety of the public and the users of the TikTok app, particularly children, must come first and be the paramount concern and consideration in the design, development, programming, supply, and distribution of Defendants' app and algorithm as well as in the operation, oversight, supervision, and management of the app and algorithm and the content available, posted, shared, and/or recommended to users on the app.

112.    The TikTok Defendants knew that dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, were circulating its app and being recommended to users by the Defendants' algorithm on users' FYP but failed to take appropriate, reasonable, timely, and necessary remedial actions.

113.    The TikTok Defendants knew that children were dying from attempting to participate in dangerous and deadly videos and challenges, including but not limited to the Blackout Challenge, that Defendants' algorithm was recommending to them through the children's FYPs but failed to take appropriate, reasonable, timely, and necessary remedial actions.

114.   The TikTok Defendants outrageously prioritized revenues and profits over the health and safety of its users, particularly children like Nylah Anderson.

**WHEREFORE**, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, claims of Defendants, TikTok Inc. and ByteDance Inc., jointly and severally, sums in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT III – VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1, *et seq.*

### TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON v. TIKTOK INC. AND BYTEDANCE INC.

115.   Plaintiff hereby incorporates by reference each and every allegations contained in the preceding paragraphs the same as though fully set forth herein.

116.   At all times relevant hereto, the TikTok Defendants intended and expected their product (the TikTok app and its algorithm) to be deployed, marketed, sold, and used in the Commonwealth of Pennsylvania.

117.   At all times relevant hereto, the TikTok Defendants were persons within the meaning of 73 P.S. § 201-2(2).

118.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") at § 201-9.2(a) provides that "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real and personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 [(73 P.S. § 201-3)] of this act, may bring a private action to recover actual damages[.]"  73 P.S. § 201-9.2(a).

119.    The UTPCPL makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3.

120.    At all times relevant hereto, the TikTok Defendants had both constructive and actual knowledge that when Defendants' products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants they were used by consumers, including children, to engage in risky and dangerous activities that were promoted and disseminated by Defendants' products which sought to encourage such engagement and it was likely that significant injuries, including death, would occur.

121.    At all times relevant hereto, the TikTok Defendants had both constructive and actual knowledge that Defendants app and algorithm were resulting in dangerous videos being shown to users, including children, and that the app and algorithm were encouraging users to engage in risky and dangerous activities that were likely to cause significant injuries, including death, despite these dangers being concealed from said consumers and despite the Defendants' products being marketed and sold as safe.

122.    From the first date on which the TikTok Defendants placed their products (the TikTok app and its algorithm) into the stream of commerce for use in the Commonwealth of Pennsylvania through the date of Nylah Anderson's death, Defendants engaged in unfair or deceptive acts or practices, in violation of the UTPCPL, including but not limited to deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of material facts, in designing, developing, programming, manufacturing, selling, marketing, supplying, and/or distributing Defendants' products for use in the Commonwealth of Pennsylvania in that Defendants:

a.   concealed, suppressed, or omitted to disclose that Defendants' products were designed and intended to urge and/or compel users to spend as much time as possible on the TikTok app;

b.   concealed, suppressed, or omitted to disclose that Defendants' products would expose users to videos and challenges which encouraged, promoted, and/or prompted users, including children, to engage in risky and dangerous activities;

c.   concealed, suppressed, or omitted to disclose that Defendants' products were not safe or suitable for use by children;

d.   concealed, suppressed, or omitted to disclose that the risk and dangerous videos and challenges shown to users by Defendants' products would result in severe injury and/or death;

e.   concealed, suppressed, or omitted to disclose that Defendants' products would reward users for engaging in risky and dangerous activities;

f.   concealed, suppressed, or omitted to disclose that Defendants' products, namely the app's algorithm, had not been adequately developed, refined, and/or tested to ensure that dangerous and risky videos and challenges would not be disseminated or promoted on the app or otherwise shown to users;

g.   concealed, suppressed, or omitted to disclose that Defendants' products, namely the app's algorithm, had not been adequately developed, refined, and/or tested to ensure that children and other vulnerable users were not shown videos or challenges which encouraged and/or prompted said users to engage in dangerous activities or which otherwise created a system which rewarded users for engaging in said dangerous activities; and

123.   These acts and practices of the TikTok Defendants and those with whom they were acting in concert in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers, including Plaintiff's decedent Nylah Anderson, her estate, and her beneficiaries.

124.   These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the

TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania offended the clearly stated public policy of the Commonwealth of Pennsylvania.

125.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania were immoral and unethical, as they served only to financially benefit Defendants at the expense of the health and safety of users of the Defendants' products, including Nylah Anderson.

126.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania were likely to cause substantial injury and/or death to users, including Nylah Anderson, by exposing them to and encouraging them to engage in activities which posed unnecessary and unreasonable risks to their health and safety.

127.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania were likely to cause, and did cause, substantial injury and/or death to users of Defendants' products, including Nylah Anderson, in that but for these acts and practices, Defendants' products would not have been downloaded, purchased, and/or used in Pennsylvania and persons who used them, including Nylah Anderson, would not have been injured or killed by said use.

128.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania committed

these acts and engaged in these practices in conscious disregard of the safety of others and their users, including Nylah Anderson.

129.    The injuries caused by the TikTok Defendants' acts and practices in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in the Commonwealth of Pennsylvania—namely, users' injuries and damages (including monetary losses)—are not outweighed by any countervailing benefit to consumers or competition.

130.    The TikTok Defendants intended that purchasers and/or users of their products use them in reliance on these unfair and deceptive acts and practices.

131.    The facts that the TikTok Defendants concealed, suppressed, and/or omitted to disclose were material to the decisions to use Defendants' products, and Plaintiff's decedent would not have used said products had these facts been disclosed.

132.    The TikTok Defendants' unfair and deceptive acts and practices occurred in connection with their conduct of trade and commerce in the Commonwealth of Pennsylvania.

133.    The TikTok Defendants' unfair and deceptive acts and practices of the TikTok Defendants violated the UTPCPL.

134.    The TikTok Defendants committed these unfair and deceptive practices knowing they created a substantial risk of harm to those who used Defendants' products in the Commonwealth of Pennsylvania.

135.    As a direct and proximate result of the TikTok Defendants' violations of the UTPCPL, Plaintiff's decedent, Nylah Anderson, suffered grievous injury and died and Nylah Anderson and her estate and beneficiaries suffered all of the damages discussed and claimed herein.

**WHEREFORE**, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, claims of Defendants, TikTok Inc. and ByteDance Inc., jointly and severally, sums in excess of the jurisdictional threshold in damages recoverable under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, as well as, compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT IV – VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. § 1750, *et seq.*

### TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON v. TIKTOK INC. AND BYTEDANCE INC.

136.    Plaintiff hereby incorporates by reference each and every allegations contained in the preceding paragraphs the same as though fully set forth herein.

137.    As corporations or other business entities headquartered in and operating out of the State of California, the TikTok Defendants were required to comply with the California Consumer Legal Remedies Act, Cal. Civ. § 1750, *et seq.*

138.    At all times relevant hereto, the TikTok Defendants intended and expected that their products (the TikTok app and its algorithm) would be marketed, sold, downloaded, and/or used in the State of California.

139.    The TikTok Defendants designed, developed, programmed, manufactured, distributed, sold, supplied, and/or operated their products for sale and use in the U.S., including California.

140.    At all times relevant hereto, the TikTok Defendants were persons within the meaning of Cal. Civ. Code § 1761(c).

141.   At all times relevant hereto, Nylah Anderson was a consumer within the meaning of Cal. Civ. Code § 1761(d).

142.   The California Consumer Legal Remedies Act, Cal. Civ. § 1770(a)(5); (7), provides in pertinent part:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have [...] Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another.

143.   At all times relevant hereto, the TikTok Defendants had both constructive and actual knowledge that when Defendants' products were used in a manner that was intended or directed by or reasonably foreseeable to, and was known to or foreseen by, Defendants they were used by consumers, including children, to engage in risky and dangerous activities that were promoted and disseminated by Defendants' products which sought to encourage such engagement and it was likely that significant injuries, including death, would occur.

144.   At all times relevant hereto, the TikTok Defendants had both constructive and actual knowledge that Defendants app and algorithm were resulting in dangerous videos being shown to users, including children, and that the app and algorithm were encouraging users to engage in risky and dangerous activities that were likely to cause significant injuries, including death, despite these dangers being concealed from said consumers and despite the Defendants' products being marketed and sold as safe.

145.   From the first date on which the TikTok Defendants placed their products (the TikTok app and its algorithm) into the stream of commerce for use in California through the date of Nylah Anderson's death, Defendants engaged in unfair or deceptive acts or practices, in

35

violation of the California Consumer Legal Remedies Act, including but not limited to deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of material facts, in designing, developing, programming, manufacturing, selling, marketing, supplying, and/or distributing Defendants' products for use in California and elsewhere in the U.S., in that Defendants:

   a.   concealed, suppressed, or omitted to disclose that Defendants' products were designed and intended to urge and/or compel users to spend as much time as possible on the TikTok app;

   b.   concealed, suppressed, or omitted to disclose that Defendants' products would expose users to videos and challenges which encouraged, promoted, and/or prompted users, including children, to engage in risky and dangerous activities;

   c.   concealed, suppressed, or omitted to disclose that Defendants' products were not safe or suitable for use by children;

   d.   concealed, suppressed, or omitted to disclose that the risk and dangerous videos and challenges shown to users by Defendants' products would result in severe injury and/or death;

   e.   concealed, suppressed, or omitted to disclose that Defendants' products would reward users for engaging in risky and dangerous activities;

   f.   concealed, suppressed, or omitted to disclose that Defendants' products, namely the app's algorithm, had not been adequately developed, refined, and/or tested to ensure that dangerous and risky videos and challenges would not be disseminated or promoted on the app or otherwise shown to users;

   g.   concealed, suppressed, or omitted to disclose that Defendants' products, namely the app's algorithm, had not been adequately developed, refined, and/or tested to ensure that children and other vulnerable users were not shown videos or challenges which encouraged and/or prompted said users to engage in dangerous activities or which otherwise created a system which rewarded users for engaging in said dangerous activities; and

146.   These acts and practices of the TikTok Defendants and those with whom they were acting in concert in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S., were unfair because they offended public policy, were

immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers, including Plaintiff's decedent Nylah Anderson, her estate, and her beneficiaries.

147.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S., offended the clearly stated public policy of California.

148.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S., were immoral and unethical, as they served only to financially benefit Defendants at the expense of the health and safety of users of the Defendants' products, including Nylah Anderson.

149.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S., were likely to cause substantial injury and/or death to users, including Nylah Anderson, by exposing them to and encouraging them to engage in activities which posed unnecessary and unreasonable risks to their health and safety.

150.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S., were likely to cause, and did cause, substantial injury and/or death to users of Defendants' products, including Nylah Anderson, in that but for these acts and practices, Defendants' products would not have

been downloaded, purchased, and/or used in Pennsylvania and persons who used them, including Nylah Anderson, would not have been injured or killed by said use.

151.    These acts and practices of the TikTok Defendants in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S., committed these acts and engaged in these practices in conscious disregard of the safety of others and their users, including Nylah Anderson.

152.    The injuries caused by the TikTok Defendants' acts and practices in designing, developing, programming, manufacturing, distributing, selling, supplying, and/or operating their products (the TikTok app and its algorithm) for sale and use in California, and elsewhere in the U.S.—namely, users' injuries and damages (including monetary losses)—are not outweighed by any countervailing benefit to consumers or competition.

153.    The TikTok Defendants intended that purchasers and/or users of their products use them in reliance on these unfair and deceptive acts and practices.

154.    The facts that the TikTok Defendants concealed, suppressed, and/or omitted to disclose were material to the decisions to use Defendants' products, and Plaintiff's decedent would not have used said products had these facts been disclosed.

155.    The TikTok Defendants' unfair and deceptive acts and practices occurred in connection with their conduct of trade and commerce in California, and elsewhere in the U.S.

156.    The TikTok Defendants' unfair and deceptive acts and practices of the TikTok Defendants violated the California Consumer Legal Remedies Act.

157.    The TikTok Defendants committed these unfair and deceptive practices knowing they created a substantial risk of harm to those who used Defendants' products in California, and elsewhere in the U.S.

158.    As a direct and proximate result of the TikTok Defendants' violations of the California Consumer Legal Remedies Act, Plaintiff's decedent, Nylah Anderson, suffered grievous injury and died and Nylah Anderson and her estate and beneficiaries suffered all of the damages discussed and claimed herein.

**WHEREFORE**, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, claims of Defendants, TikTok Inc. and ByteDance Inc., jointly and severally, sums in excess of the jurisdictional threshold in damages recoverable under the California Consumer Legal Remedies Act, as well as, compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT V – WRONGFUL DEATH

### TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON v. TIKTOK INC. AND BYTEDANCE INC.

159.    Plaintiff hereby incorporates by reference each and every allegations contained in the preceding paragraphs the same as though fully set forth herein.

160.    Decedent, Nylah Anderson's known potential wrongful death beneficiaries are her mother, Plaintiff Tawainna Anderson, her brothers, Nakye Anderson and Kevin Freeman Lamarr Neal III, as well as potentially her biological father.

161.    By reason of the death of Nylah Anderson, her wrongful death beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including but not limited to, loss of companionship, loss of comfort, loss of society, loss of guidance, loss of solace, loss of protection, profound emotional loss, and profound psychological loss.

39

162.    As a direct and proximate result of the foregoing, decedent, Nylah Anderson's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and to incur various funeral, burial and estate and administration expenses for which Plaintiff is entitled to compensation in this proceeding.

163.    Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, brings this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and Pa.R.Civ.P. 2202, and claims all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law.

**WHEREFORE**, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, claims of Defendants, TikTok Inc. and ByteDance Inc., jointly and severally, sums in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## COUNT VI – SURVIVAL ACT

### TAWAINNA ANDERSON, Individually and as Administratrix of the ESTATE OF NYLAH ANDERSON v. TIKTOK INC. AND BYTEDANCE INC.

164.    Plaintiff hereby incorporates by reference each and every allegations contained in the preceding paragraphs the same as though fully set forth herein.

165.    Plaintiff claims on behalf of the Estate of Nylah Anderson all damages suffered by the Estate by reason of the death of Nylah Anderson, including without limiting the generality of the following: the severe injuries to Nylah Anderson, which resulted in death; the anxiety, horror, and fear of impending and certain death, mental disturbance, pain, suffering, and other intangible losses which Nylah Anderson suffered prior to death; the loss of future earning capacity suffered by Nylah Anderson from the date of her death until the time in the future decedent would have

lived had she not died as a result of the injuries sustained by reason of the strict liability, failure to warn, carelessness, negligence, gross negligence, recklessness, and willful and wanton conduct of the TikTok Defendants as laid out herein.

166. Plaintiff brings this action on behalf of the Estate of Nylah Anderson, by virtue of the Survival Act, 52 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of Nylah Anderson's Estate, and other persons entitled to recover under law.

**WHEREFORE**, Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, claims of Defendants, TikTok Inc. and ByteDance Inc., jointly and severally, sums in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages, interest and allowable costs of suit and brings this action to recover same.

## PLAINTIFF'S PRAYERS FOR RELIEF

Plaintiff, Tawainna Anderson, Individually and as Administratrix of the Estate of Nylah Anderson, a deceased minor, prays that this Court enter judgment in her favor and against Defendants, TikTok Inc. and ByteDance Inc., jointly and severally compensatory damages in an amount greater than the jurisdictional threshold plus costs of suit, severally as to each Defendant for punitive damages in an amount sufficient to punish it and encourage it and others from similar conduct, for delay damages, reasonable attorney's fees, and for such further relief as is just and appropriate under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

/s/ Robert J. Mongeluzzi
Robert J. Mongeluzzi

Jeffrey P. Goodman
Samuel B. Dordick
Rayna McCarthy
**SALTZ MONGELUZZI & BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com
rmccarthy@smbb.com

Mark A. DiCello
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Western Reserve
Law Building
Mentor, OH 44060
Tel: (440) 953-8888
madicello@dicellolevitt.com

***Counsel for Plaintiff***